**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| KELSEA HOLTON and LUIS MIRANDA, on behalf of themselves and others similarly situated,<br><br>    Plaintiffs,<br><br>v.<br><br>IGLOO PRODUCTS CORP., a Delaware corporation.<br><br>    Defendant. | :<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>: |

Case No. 1:25-cv-_____

**DEMAND FOR JURY TRIAL**

**DECLARATORY AND PERMANENT
INJUNCTIVE RELIEF AND
DAMAGES REQUESTED**

_____/

## CLASS ACTION COMPLAINT

Plaintiffs, Kelsea Holton and Luis Miranda ("Plaintiffs"), individually and on behalf of all others similarly situated, bring this action against Defendant, Igloo Products Corp. ("Defendant"). Plaintiffs' allegations as to Plaintiffs' own actions are based on personal knowledge. The other allegations are based on counsel's investigation, and information and belief.

## NATURE OF ACTION

1.    This case concerns a deceptively dangerous product and its manufacturer's inadequate recall efforts. After selling over a million units of its popular Igloo brand 90 QT Flip & Tow Rolling Coolers, Defendant announced a nationwide recall instructing its customers to stop using them due to **finger crushing and amputation hazards**. And yet, Defendant refuses to refund its customers a single cent. This is a case of protecting the bottom line at all costs.

2.    On February 13, 2025, Defendant and the U.S. Consumer Product Safety Commission ("CPSC") announced the recall of roughly 1,060,000 Igloo brand 90 QT Flip & Tow

Rolling Coolers (the "Products").[1]  Consumers were warned to "immediately stop using the recalled coolers" because the Products' "tow handle can pinch consumers' fingertips against the cooler, posing fingertip amputation and crushing hazards."  Defendant stated that it had received "reports of fingertip injuries, including fingertip amputations, bone fractures, and lacerations." The potential of the Products to cause such crushing, laceration, and amputation injuries is referred to herein as the "Defect."

3.      Defendant refuses to refund customers that purchased the Products.  Instead, Defendant implemented a deficient recall that allows it to *say* they are doing the right thing, when in fact the primary objective is to protect their bottom line.

4.      Any requests for refunds are denied.  Consumers only have one option: to stop using the Products, contact Defendant for a replacement handle, wait for the new handle to arrive, and then replace the defective handle with a new handle by themselves, despite the fact that the handle they are required to replace on their own may amputate or crush their fingers in the process – the very injury the Recall is purportedly intended to avoid.

5.      By design, the recall received very little publication, with the result that the response rate has been low. And, a refusal to offer refunds guarantees that customers who have lost faith in Defendant's products, or who do not want to risk having their fingers crushed or amputated by replacing the defective handle themselves, are left with no recourse.  This approach benefits Defendant by minimizing the cost and burden of the recall.

6.      Plaintiffs are filing this class action lawsuit to seek all available relief to consumers, to raise awareness that Defendant's Products are a hazard, and to "encourage companies to take greater care in avoiding the production [and sale] of hazardous products in the first place."

---

[1]   https://www.cpsc.gov/Recalls/2025/Igloo-Recalls-More-Than-One-Million-90-Quart-Rolling-Coolers-Due-to-Fingertip-Amputation-and-Crushing-Hazards

*Kaupelis v. Harbor Freight Tools USA, Inc.*, 2019 WL 6998661 at *10 (C.D. Cal. Oct. 9, 2019) (quoting *In re Mattel, Inc.*, 588 F. Supp. 2d 1111, 1115-16 (C.D. Cal. 2008)).

## PARTIES

7.      Plaintiff Kelsea Holton is a Hills, Iowa resident. Plaintiff Holton purchased a Maxcold Latitude 90 Roller that is part of the February 13, 2025 CPSC Recall from a BJ's in Fairless Hills, Pennsylvania in March 2022.  The cooler has a manufacture date of November 2021, based on the engraving on the bottom of the cooler.  Plaintiff Holton is referred to herein as the Pennsylvania Plaintiff.

8.      Plaintiff Luis Miranda is a San Bernardino, California resident.  Plaintiff Miranda purchased a Maxcold Latitude 90 Roller that is part of the February 13, 2025 CPSC Recall from a Costco located in Fontana, CA in the spring of 2023. The cooler has a manufacture date of December 2020, based on the engraving on the bottom of the cooler.  Plaintiff Miranda has experienced the defect, as the tow handle has pinched his fingers on several occasions, causing bruising and pain. Plaintiff Miranda is referred to herein as the California Plaintiff.

9.      Before purchasing the Products, each of the Plaintiffs reviewed the Products' packaging, item details, descriptions, product specifications and features.  Neither the Products' packaging, labeling, or any other information surrounding the Products disclosed or suggested in any way that the Products contained the Defect.  If the Products labeling or packaging had disclosed the Defect, then Plaintiffs would not have purchased the Products, or would not have purchased the Products on the same terms.

10.     Defendant Igloo Products Corp. is a Delaware corporation with its principal place of business and headquarters at 777 Igloo Road, Katy, Texas 77494.

## JURISDICTION AND VENUE

11.    This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(d)(2)(A) because this case is a class action where the aggregate claims of all members of the proposed class are in excess of $5,000,000.00, exclusive of interest and costs, and at least one member of the proposed class is citizen of a state different from Defendant.

12.    This Court has general jurisdiction over Defendant because it is incorporated in Delaware. Further, the Court has general jurisdiction over Defendant because Defendant conducts substantial business within Delaware such that Defendant has significant, continuous, and pervasive contacts with the State of Delaware.

13.    Venue is proper pursuant to 28 U.S.C. § 1391(b) because Defendant is incorporated in this District and is subject to the Court's personal jurisdiction with respect to this action.

## FACTUAL ALLEGATIONS

14.    **Product at issue:**  the Igloo 90 Qt. Flip & Tow Rolling Coolers at issue in this case were sold nationwide at major retailers like Costco, Target, Academy, Dick's, and other stores, and online at Amazon.com, Igloocoolers.com, and other websites from January 2019 through January 2025 for between $80 and $140.  There were approximately 1,060,000 units sold during this period in the United States.  A full specification sheet listing affected Model/SKU numbers, and dates of manufacture, are listed on the Recall webpage, which is incorporated herein.[2]

15.    **Defect at issue:**  As stated by Defendant: "The tow handle can pinch consumers' fingertips against the cooler, posing fingertip amputation and crushing hazards."

16.    The Defect affects all of the Products at issue. Defendant and the CPSC have stated that "[c]onsumers should immediately stop using the recalled coolers."

---

[2]    https://www.cpsc.gov/Recalls/2025/Igloo-Recalls-More-Than-One-Million-90-Quart-Rolling-Coolers-Due-to-Fingertip-Amputation-and-Crushing-Hazards

17.     The cause of the Defect is the same for all of the products at issue.

18.     **Relevant time period:** All of the omissions and misrepresentations at issue here were uniformly and consistently made at all times while the Products were sold between January 2019 and January 2025. There have been no material changes to the product packaging or other consumer facing materials during the relevant period.

19.     **The omissions and misrepresentations:** Defendant described the Products as large coolers that were meant to keep items cold for up to 5 days, with a volume of 90 Quarts. The Products come with a large, prominent tow handle, which consumers interpret can be safely used. However, Defendant failed to disclose that tow handle "can pinch consumers' fingertips against the cooler, posing fingertip amputation and crushing hazards." There is no warning of any kind anywhere on the Products' labels or the Products themselves.

20.     The omission pertains to an unreasonable safety hazard that reasonable consumers consider to be material.

21.     Plaintiffs and class members would not have bought the Products, or would not have bought them on the same terms, if the Defect had been disclosed. The materiality of the Defect also is demonstrated by the existence of the recall.

22.     Defendant did not disclose the Defect on the product packaging or labeling or any other customer-facing document or display. Retailers' sales personnel and customer service representatives did not disclose the Defect either.

23.     At the time of purchase, Plaintiffs and class members did not know and did not have reason to know that the Products were defective. Defendant had exclusive knowledge of that fact.

24.     Defendant made partial representations to Plaintiffs and class members, while suppressing the safety defect. Specifically, by displaying the Products and describing its functions and parts, the Products' packaging and web pages implied that they were suitable and safe to use as tow coolers, without disclosing that they had a critical safety-related defect related to the Products.

25.     **Defendant's Pre-sale Knowledge of the Defect**:  Defendant was aware of the defect at the time of sale.

26.     Before the products were first launched, Defendant knew about the defect as a result of pre-release testing.

27.     After launch, Defendant monitored a variety of sources of information to detect signs of defects. These sources of information include warranty claim data, customer complaints to Defendant, replacement part data, field reports, and CPSC correspondence. Defendant knew that for every complaint made, there is a statistical likelihood that there were many more unreported incidents, and Defendant made projections about the likely manifestation rate and future warranty claims based on the number of known complaints.

28.     Defendant also monitored and would have known about consumer complaints to the CPSC.  When a consumer posts a complaint on the CPSC website, all of the relevant information provided to the CPSC is automatically sent via email to the manufacturer and retailers. Monitoring complaints to the CPSC is standard industry practice that serves as an early warning mechanism to spot defects that cause safety hazards, and Defendant adheres to that practice.

29.     **No Adequate Remedy At Law:**

30.     Plaintiffs and members of the putative classes are entitled to equitable relief because no adequate remedy at law exists.

31.    Legal remedies are inadequate because they are not equally prompt and certain and in other ways efficient as equitable relief.

32.    Damages are not equally certain as restitution because the standard that governs restitution is different than the standard that governs damages. Hence, the Court may award restitution even if it determines that Plaintiffs fail to sufficiently adduce evidence to support an award of damages.

33.    Damages and restitution are not the same amount. Unlike damages, restitution is not limited to the amount of money Defendant wrongfully acquired plus the legal rate of interest. Equitable relief, including restitution, entitles a plaintiff to recover all profits from the wrongdoing, even where the original funds taken have grown far greater than the legal rate of interest would recognize. Plaintiffs seek non-restitutionary disgorgement of profits in connection with their unjust enrichment claims.

34.    Legal claims for damages are not equally certain as restitution because equitable claims entail few elements.

35.    In short, significant differences in proof and certainty establish that any potential legal claim cannot serve as an adequate remedy at law.

36.    **The Recall Does Not Render This Lawsuit Moot:**

37.    The recall does not render this lawsuit moot because it does not provide all of the same relief available in this lawsuit.

38.    Under the recall, Defendant is not providing any refunds to any class members. Instead, it is only providing a replacement handle for those class members that submit a request. These options are not viable for people like Plaintiffs who no longer trust the reliability of

Defendant's products and do not wish to continue to do business with them, or those that do not feel safe replacing a handle that Defendant has stated may crush or amputate their fingers.

39.    The CLRA provides that "in no case shall the total award of damages in a class action be less than one thousand dollars ($1,000)." Cal. Civ. Code § 1780(a)(1).  The Pennsylvania Unfair Trade Practices and Consumer Protection Law permits to recover "actual damages or one hundred dollars ($100), whichever is greater." 73 P.S. § 201-9.2  All of these are far greater than what is provided by the Recall, which is limited to a replacement of parts and no cash.

40.    The recall was only briefly publicized and in a very limited manner. Therefore, many eligible class members remain unaware of it, and the response rate has been low. The amount and reach of the publicity concerning the notice of recall was not comparable to the typical notice provided in a class action.

## FACTUAL ALLEGATIONS

41.    ***Class Definition***:  As authorized by Fed. R. Civ. P. 23(b)(2) or (b)(3),Plaintiffs bring this action on behalf all persons in the following classes and subclasses (collectively referred to as "Class Members"):

    a.   Nationwide Class: all people in the United States who purchased one of the Products.

    b.   Multi-State Implied Warranty Class: all persons who purchased a subject Product for personal, family, or household use: (1) in Alaska, Arkansas, California, Delaware, District of Columbia, Hawaii, Indiana, Kansas, Michigan, Minnesota, Montana, Nevada, New Hampshire, New Jersey, North Dakota, Oklahoma, Oregon, Pennsylvania, Rhode Island, South Carolina, South Dakota, Texas, Utah, Virginia, or Wyoming within the

applicable statute of limitations; or (2) in Colorado or Massachusetts within the applicable statute of limitations.

    c.   <u>Multi-State Consumer Protection Class</u>: all persons who purchased a subject Product for personal, family, or household use: (1) in the states of Michigan, Minnesota, or New Jersey within the applicable statute of limitations; (2) in the state Missouri within the applicable statute of limitations; (3) in the states of California, Florida, Massachusetts, or Washington within the applicable statute of limitations; or (4) in the states of Illinois and New York within the applicable statute of limitations.

    d.   <u>California Subclass</u>: all people who purchased a subject Product in California.

    e.   <u>Pennsylvania Subclass</u>: all people who purchased a subject Product in Pennsylvania.

42.    Each of the above class definitions is a placeholder that "may be altered or amended before final judgment." Fed. Civ. P. 23(c)(1)(C). Subject to additional information obtained through further investigation and discovery, the foregoing class definitions may be expanded or narrowed by amendment or in the motion for class certification, including through the use of multi-state subclasses to account for material differences in state law, if any.

43.    Excluded from the putative classes are Defendant and any entities in which Defendant has a controlling interest, Defendant's agents and employees, the judge to whom this action is assigned, members of the judge's staff, and the judge's immediate family. Also excluded are any claims for personal injury.

44.    *Numerosity.*  Members of the Classes are so numerous that their individual joinder herein is impracticable. On information and belief, each Class or Subclass includes thousands of consumers. The precise number of Class Members and their identities are unknown to the Plaintiffs at this time but may be determined through discovery. Class Members may be notified of the pendency of this action by mail and/or publication through the distribution records of Defendant, Costco, their agents, or other means.

45.    *Commonality and Predominance*. Common questions of law and fact exist as to all Class Members and predominate over questions affecting only individual Class Members. Common legal and factual questions include, but are not limited to:

        a.    whether Defendant knew or should have known of the Defect at issue in this case, and if so, when it discovered the Defect;

        b.    whether knowledge of the Defect at issue in this case would be important to a reasonable person, because, among other things, it poses an unreasonable safety hazard;

        c.    whether Defendant failed to disclose and concealed the existence of the Defect from potential customers; and

        d.    whether Defendant's conduct, as alleged herein, violates the consumer protection laws asserted here.

46.    *Typicality.* Plaintiffs' claims are typical of the claims of the Classes in that Plaintiffs and the Classes sustained damages as a result of Defendant's uniform wrongful conduct, based upon Defendant's failure to inform Plaintiffs and all others similarly situated that the products at issue here can be dangerous.

47.    *Adequacy of Representation*. Plaintiffs are members of the proposed classes and will fairly and adequately protect the interests of Class members. Plaintiffs have retained counsel

that is highly experienced in complex consumer class action litigation, and Plaintiffs intend to vigorously prosecute this action on behalf of the Classes. Plaintiffs have no interests that are antagonistic to those of the Classes. Plaintiffs have no past or present financial, employment, familial, or other relationship with any of the attorneys in this case that would create a conflict of interest with the proposed class members.

48.     ***Superiority***. A class action is superior to all other available methods for the fair and efficient adjudication of this controversy for, *inter alia*, the following reasons: prosecutions of individual actions are economically impractical for members of the Classes; the Classes are readily definable; prosecution as a class action avoids repetitious litigation and duplicative litigation costs, conserves judicial resources, and ensures uniformity of decisions; and prosecution as a class action permits claims to be handled in an orderly and expeditious manner.

49.     Without a class action, Defendant will continue a course of action that will result in further damages to the Plaintiffs and Members of the Classes and will likely retain the benefits of its wrongdoing.

### FIRST CAUSE OF ACTION
**Violations of California's Unfair Competition Law ("UCL")**
**Cal. Bus. & Prof. Code §§ 17200, *et seq.***

50.     Plaintiffs repeat their prior allegations of this Complaint from paragraphs 1-49 and incorporate them by reference herein.

51.     California Plaintiff brings this cause of action individually and on behalf all other class members in the California Subclass.

52.     California Business & Professions Code Section 17200 prohibits acts of "unfair competition," including any "unlawful, unfair or fraudulent business act or practice" and "unfair, deceptive, untrue or misleading advertising."

53.     Defendant acted with knowledge and intent.

54. California Plaintiff alleges a claim under all three prongs of the UCL.

55. As alleged above, Defendant engaged in fraudulent conduct that had the tendency or capacity to deceive or confuse reasonable consumers.

56. Defendant's conduct also constitutes "unfair" business acts and practices within the meaning of the UCL, in that its conduct was injurious to consumers, offended public policy, and was unethical and unscrupulous. Defendant's violation of consumer protection and unfair competition laws resulted in harm to consumers.

57. California Plaintiff also alleges a violation under the "unlawful" prong of the UCL because Defendant's conduct violated consumer protection laws and the common law as set forth herein.

58. As a direct and proximate result of Defendant's unfair and deceptive practices, California Plaintiff and the other members of the California Subclass have suffered out-of-pocket losses.

59. California Plaintiff and class members have suffered an injury in fact resulting in the loss of money and/or property as a proximate result of the violations of law and wrongful conduct of Defendant alleged herein, and they lack an adequate remedy at law to address the unfair conduct at issue here.

60. California Plaintiff seeks all relief available under the UCL.

## SECOND CAUSE OF ACTION
### Violations of California's Consumer Legal Remedies Act ("CLRA")
### Cal. Civ. Code §§ 1750, *et seq.*

61. Plaintiffs repeat their prior allegations of this Complaint from paragraphs 1-49 and incorporate them by reference herein.

62. California Plaintiff brings this cause of action individually and on behalf all other class members in the California Subclass.

12

63.    Defendant is a "person" as defined by California Civil Code § 1761(c).

64.    California Plaintiff and the other Class Members are "consumers" within the meaning of California Civil Code § 1761(d).

65.    For the reasons alleged above, Defendant violated California Civil Code § 1770(a)(5)(7) and (9).

66.    California Plaintiff provided pre-suit notice of the claims asserted under the CLRA, in compliance with all of the CLRA's requirements.

67.    Defendant's unfair and deceptive acts or practices occurred repeatedly in Defendant's trade or business.

68.    Defendant acted with knowledge and intent.

69.    Defendant engaged in conduct that had the tendency or capacity to deceive or confuse reasonable consumers.

70.    With respect to restitution under the CLRA claim, California Plaintiff alleges in the alternative that Plaintiff and Class Members lack an adequate remedy at law for the reasons already alleged above.

71.    As a result of Defendant's misconduct, California Plaintiff and other Class Members have suffered monetary harm.

72.    Plaintiff seeks all relief available under this cause of action, other than damages. Plaintiff may amend the Complaint in the future to add a damages claim.

### THIRD CAUSE OF ACTION
**Violation of Song-Beverly Consumer Warranty Act**
**Cal. Civ. Code § 1790, *et seq.***

73.    Plaintiffs repeat their prior allegations of this Complaint from paragraphs 1-49 and incorporate them by reference herein.

74.    California Plaintiff brings this cause of action individually and on behalf all other class members in the California Subclass.

75.    The Products are "consumer goods" and California Plaintiff and Class Members are "buyers" within the meaning of Cal. Civ. Code § 1791.

76.    Defendant is a "manufacturer," "distributor," and/or "retail seller" under Cal. Civ. Code § 1791.

77.    The implied warranty of merchantability included with the sale of each Product means that Defendant warranted that Product (a) would pass without objection in trade under the contract description; (b) was fit for the ordinary purposes for which the Product would be used; and (c) conformed to the promises or affirmations of fact made on the label or packaging.

78.    The Products would not pass without objection in the trade because they contain the above-described Defect, which also makes them unfit for the ordinary purpose for which they would be used.

79.    The Products are not adequately labeled because their labeling fails to disclose the Defect and does not advise class members of the existence of the danger prior to experiencing failure firsthand.

80.    The Products were not sold on an "as is" or "with all faults" basis.

81.    Any purported disclaimer of implied warranties was ineffective because it was not conspicuous and not made available to the purchaser before the sale of the Product.

82.    Defendant's actions have deprived California Plaintiff and Class Members of the benefit of their bargains and have caused the Products to be worth less than what California Plaintiff and other Class Members paid.

83.     As a direct and proximate result of the breach of implied warranty, Class Members received goods whose condition substantially impairs their value. Class Members have been damaged by the diminished value of their Products.

84.     Under Cal. Civ. Code §§ 1791.1(d) and 1794, California Plaintiff and Class Members are entitled to damages and other legal and equitable relief, including, at their election, the right to revoke acceptance of the Products or the overpayment or diminution in value of their Products. They are also entitled to all incidental and consequential damages resulting from the breach, as well as reasonable attorneys' fees and costs.

85.     California Plaintiff seeks all relief available under this cause of action.

## FOURTH CAUSE OF ACTION
**Violation of Pennsylvania Unfair Trade Practices and Consumer Protection Law**
**73 P.S. §§ 201-1, *et seq*.**

86.     Plaintiffs repeat their prior allegations of this Complaint from paragraphs 1-49 and incorporate them by reference herein.

87.     Pennsylvania Plaintiff brings this cause of action individually and on behalf all other class members in the Pennsylvania Subclass.

88.     Pennsylvania's Unfair Trade Practices and Consumer Protection Law prohibits unfair or deceptive acts or unfair methods of competition in the conduct of any business, trade, or commerce.

89.     In their sale of goods throughout the State of Pennsylvania, Defendant conducts business and trade within the meaning and intendment of New York's Unfair Trade Practices and Consumer Protection Law.

90.     Pennsylvania Plaintiff and members of the Pennsylvania Subclass are consumers who purchased the Products from Defendant for their personal use.

91.    By the acts and conduct alleged herein, Defendant engaged in deceptive, unfair, and misleading acts and practices, which include, without limitation, misrepresenting or omitting that the Products (a) would not contain a dangerous defect (b) are generally recognized as safe for use, and (3) could be used as tow coolers. Defendant intentionally concealed and omitted material facts regarding the true nature of the Products.

92.    The foregoing deceptive acts and practices were directed at consumers.

93.    The foregoing deceptive acts and practices are misleading in a material way because they fundamentally misrepresent the characteristics and quality of the Products to induce consumers to purchase the same.

94.    By reason of this conduct, Defendant engaged in deceptive conduct in violation of Pennsylvania's Unfair Trade Practices and Consumer Protection Law.

95.    Defendant's actions are the direct, foreseeable, and proximate cause of the damages Pennsylvania Plaintiff and members of the Pennsylvania Subclass have sustained from having paid for and used Defendant's Products.

96.    As a result of Defendant's violations, Pennsylvania Plaintiff and members of the Pennsylvania Subclass have suffered damages because: (a) they would not have purchased the Products on the same terms if they knew that the Products had a dangerous defect; (b) they paid price premium for the Products due to the undisclosed Defect; and (c) the Products do not have the characteristics, uses, benefits, or qualities as promised.

97.    On behalf of Plaintiff and other members of the Pennsylvania Subclass, Pennsylvania Plaintiff seeks to recover actual damages or one hundred dollars, whichever is greater, three times actual damages, reasonable attorney fees, and all other relief available under the Pennsylvania's Unfair Trade Practices and Consumer Protection Law.

## FIFTH CAUSE OF ACTION
### Breach of Implied Warranty

98.     Plaintiffs repeat their prior allegations of this Complaint from paragraphs 1-49 and incorporate them by reference herein.

99.     Plaintiffs bring this cause of action individually and on behalf all other Class Members.

100.     Defendant, as the designer, manufacturer, marketer, distributor, and/or seller of the Products at issue, impliedly warranted that they would pass without objection in trade under the contract description; were fit for the ordinary purpose for which the Products would be used; and conformed to the promises or affirmations of fact made on the labels and packaging.

101.     Defendant breached its implied warranty because the Products could not pass without objection in the trade under the contract description, they were not adequately labeled because there was no disclosure of the Defect at issue; and they are unfit for their ordinary purpose. As a result, Plaintiffs and members of the Classes did not receive the goods as impliedly warranted by Defendant to be merchantable.

102.     Plaintiffs and Class Members purchased the Products in reliance upon Defendant's skill and judgment and the implied warranties of fitness for the purpose.

103.     The Products were defective when they left the exclusive control of Defendant.

104.     Plaintiffs and Class Members did not receive the goods as warranted.

105.     The Products were not sold on an "as is" or "with all faults" basis.

106.     Any purported disclaimer of implied warranties was ineffective because it was not conspicuous and not made available to the purchaser before the sale of the product.

107.     As a direct and proximate cause of Defendant's breach of the implied warranty, Plaintiffs and Class Members have been injured and harmed because: (a) they would not have

purchased the Products on the same terms if they knew that the Products were dangerous and unlawful to be sold; and (b) the Products do not have the characteristics, uses, or benefits as promised by Defendant.

108.    Plaintiffs seek all relief available under this cause of action.

## SIXTH CAUSE OF ACTION
### Unjust Enrichment

109.    Plaintiffs repeat their prior allegations of this Complaint from paragraphs 1-49 and incorporate them by reference herein.

110.    Plaintiffs bring this cause of action individually and on behalf all other Class Members.

111.    To the extent required, Plaintiffs assert this cause of action in the alternative to legal claims, as permitted by Rule 8.

112.    The unjust enrichment claims are premised on Defendant's pre-sale activities and are unrelated to their post-sale obligations to provide repairs.

113.    Plaintiffs and the Class Members conferred a benefit on Defendant in the form of the gross revenues Defendant derived from the money Plaintiffs and Class Members paid to Defendant.

114.    Defendant knew of the benefit conferred on it by Plaintiffs and the Class Members.

115.    Defendant has been unjustly enriched in retaining the revenues derived from Plaintiffs' and the Class Members' purchases of the products, which retention of such revenues under these circumstances is unjust and inequitable because Defendant omitted that the Products were dangerous. This caused injuries to Plaintiffs and class members because they would not have purchased the Products or would have paid less for them if the true facts concerning the Products had been known.

116.    Defendant accepted and retained the benefit in the amount of the gross revenues it derived from sales of the Products.

117.    Defendant has profited by retaining the benefit under circumstances which would make it unjust for Defendant to retain the benefit.

118.    Plaintiffs and the Class Members are, therefore, entitled to restitution in the form of the revenues derived from Defendant's sale of the Products.

119.    As a direct and proximate result of Defendant's actions, Plaintiffs and Class Members have suffered in an amount to be proven at trial.

120.    Putative Class Members have suffered an injury in fact and have lost money as a result of Defendant's unjust conduct.

121.    Putative Class Members lack an adequate remedy at law with respect to this claim and are entitled to non-restitutionary disgorgement of the financial profits that Defendant obtained as a result of its unjust conduct.

**SEVENTH CAUSE OF ACTION**
**Fraud by Omission / Intentional Misrepresentation**

122.    Plaintiffs repeat their prior allegations of this Complaint from paragraphs 1-53 and incorporate them by reference herein.

123.    Plaintiffs bring this cause of action individually and on behalf all other Class Members.

124.    This claim is based on fraudulent omissions concerning the safety of consumers who use the Products. As discussed above, Defendant failed to disclose that the Products had a dangerous defect.

125.    The false and misleading omissions were made with knowledge of their falsehood. Defendant is a nationwide manufacturer and distributor, routinely undergoes product testing, and

must have known about the Defect prior to sale. Nonetheless, Defendant continued to sell its defective Products to unsuspecting consumers.

126.    The false and misleading omissions were made by Defendant, upon which Plaintiffs and Class Members reasonably and justifiably relied, and were intended to induce and actually induced Plaintiffs and Class Members to purchase the Products.

127.    The fraudulent actions of Defendant caused damage to Plaintiffs and Class Members, who are entitled to damages and punitive damages.

128.    Plaintiffs seek all relief available under this cause of action.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs, individually and on behalf of the proposed class, prays for the following relief:

A.    Certification of the proposed classes;

B.    Appointment of Plaintiffs as representative of the classes;

C.    Appointment of undersigned counsel as counsel for the classes;

D.    A declaration that Defendant's actions complained of herein violated the statutes referenced herein;

E.    For an order finding in favor of Plaintiffs and class members on all counts asserted herein;

F.    For an award of injunctive or other equitable relief as is necessary to protect the interests of Plaintiffs and the class members, including, inter alia, an order prohibiting Defendant from engaging in the unlawful acts described above;

G.    For actual, compensatory, statutory, nominal, and/or punitive damages in amounts to be determined by the Court and/or jury;

H.    For prejudgment interest on all amounts awarded;

I.      For an order of restitution and all other forms of equitable monetary relief;

J.      For an order awarding Plaintiffs and class members their reasonable attorney fees, expenses, and costs of suit.

K.      Orders granting such other and further relief as the Court deems necessary, just, and proper.

## JURY DEMAND

Pursuant to Fed. R. Civ. P. 38(b), Plaintiff requests a jury trial on all issues so triable.

Dated: March 11, 2025              Respectfully  submitted,

*/s/ R. Grant Dick IV*
R. Grant Dick IV (#5123)
Kevin D. Levitsky (#7228)
COOCH AND TAYLOR P.A.
1000 N. West Street, Suite 1500
Wilmington, DE 19801
Telephone: 302-984-3800
E-Mail:  gdick@coochtaylor.com
          klevitsky@coochtaylor.com

Yeremey O. Krivoshey (Cal. SBN 295032)
SMITH KRIVOSHEY, PC
(*pro hac vice* forthcoming)
166 Geary Str STE 1500-1507
San Francisco, CA 94108
Telephone: 415-839-7077
Facsimile: (888) 410-0415
E-Mail: yeremey@skclassactions.com

Joel D. Smith (Cal. SBN 95598)
SMITH KRIVOSHEY, PC
(*pro hac vice* forthcoming)
867 Boylston Street 5th Floor #1520
Boston, MA 02116
Telephone: 617-377-7404
Facsimile: (888) 410-0415
E-Mail: joel@skclassactions.com

*Attorneys for Plaintiffs*
*and the Proposed Class*

## CLRA Venue Declaration, Civil Code § 1780(c)

I, R. Grant Dick IV, declare as follows:

1.    I have personal knowledge to the facts stated herein and, if called upon to do so, could competently testify hereto.

2.    I am the attorney for Plaintiffs in the above-captioned action.

3.    I submit this declaration in support of the Class Action Complaint, which is based in part on violations of the Consumers Legal Remedies Act, California Civil Code § 1750 *et seq.*

4.    The Class Action Complaint has been filed in the proper place for trial of this action.

5.    It is my understanding that Defendant regularly transacts business in this District, and is incorporated in this District.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct to the best of my knowledge.  Executed on March 11, 2025 in Wilmington, Delaware.

By:   */s/ R. Grant Dick IV*
        R. Grant Dick IV