**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| IN RE IGLOO PRODUCTS COOLER RECALL LITIGATION | C.A. No. 25-cv-298-JLH CONSOLIDATED |
| KELSEA HOLTON, LUIS MIRANDA, and KRISTEN RIFFLE on behalf of themselves and others similarly situated,<br><br>　　　Plaintiffs,<br><br>v.<br><br>IGLOO PRODUCTS CORP., a Delaware company.<br><br>　　　Defendant. | **DEMAND FOR JURY TRIAL**<br><br>**CONSOLIDATED CLASS ACTION COMPLAINT** |

**CONSOLIDATED CLASS ACTION COMPLAINT**

Plaintiffs, Kelsea Holton, Luis Miranda, and Kristen Riffle ("Plaintiffs"), individually and on behalf of all others similarly situated, bring this class action against Defendant, Igloo Products Corp. ("Defendant"). Plaintiffs' allegations as to Plaintiffs' own actions are based on personal knowledge. The other allegations are based on counsel's investigation, as well as on information and belief.

**<u>NATURE OF ACTION</u>**

1.　　This case concerns a deceptively dangerous product and its manufacturer's inadequate recall efforts. After selling over a million units of its popular "Igloo"-brand 90 QT Flip & Tow Rolling Coolers, Defendant announced a nationwide recall instructing its customers to stop using them due to **finger crushing and amputation hazards**. And yet, Defendant refuses to refund its customers a single cent, protecting its bottom line at all costs.

2.      On February 13, 2025, Defendant and the U.S. Consumer Product Safety Commission ("CPSC") announced the recall of roughly 1,060,000 Igloo brand 90 QT Flip & Tow Rolling Coolers (the "Products").[1]  Consumers were warned to "immediately stop using the recalled coolers" because the Products' "tow handle can pinch consumers' fingertips against the cooler, posing fingertip amputation and crushing hazards."[2]  Defendant admitted that it had received "reports of fingertip injuries, including fingertip amputations, bone fractures, and lacerations."[3] The potential of the Products to cause such crushing, laceration, and amputation injuries is referred to herein as the "Defect."

3.      After this recall was live for three months, Defendant expanded the recall further, including an additional 130,000 units not previously included and for the same reason: devastating fingertip injuries.[4]

4.      Defendant refuses to refund customers that purchased the Products.  Instead, Defendant implemented a deficient recall that allows it to *say* it is doing the right thing, when in fact the primary objective is to protect its bottom line.

5.      Any requests for refunds are denied.  Consumers only have one option: to stop using the Products, contact Defendant for a replacement handle, wait for the new handle to arrive, and then replace the defective handle with a new handle by themselves, despite the fact that the handle they are required to replace on their own may amputate or crush their fingers in the process – the very injury the recall is purportedly intended to avoid.

---

[1]     https://www.cpsc.gov/Recalls/2025/Igloo-Recalls-More-Than-One-Million-90-Quart-Rolling-Coolers-Due-to-Fingertip-Amputation-and-Crushing-Hazards 9 (last accessed June 5, 2025).

[2] *Id*.

[3] *Id*.

[4]https://www.cpsc.gov/Recalls/2025/Igloo-Expands-Recall-of-90-Qt-Rolling-Coolers-Due-to-Fingertip-Amputation-and-Crushing-Hazards-Total-Recalled-Now-Nearly-1-2-Million (last accessed June 5, 2025).

6.    By design, the recall received very little publication, resulting in a low response rate. And, a refusal to offer refunds guarantees that customers who have lost faith in Defendant's products, or who do not want to risk having their fingers crushed or amputated by replacing the defective handle themselves, are left with no recourse.  This approach benefits Defendant by minimizing the cost and burden of the recall.

7.    Worse yet, the risk posed by these Products is unquestionably severe. In the original February 2025 notice, Defendant reported to the CPSC 12 fingertip injuries, including fingertip amputations, bone fractures, and lacerations.[5] Since then, updated in the expanded May 2025 notice, there are now 78 injuries, including 26 severe fingertip amputations, bone fractures, and lacerations.[6]

8.    Plaintiffs are filing this class action lawsuit to seek all available relief to consumers, to raise awareness that Defendant's Products are a hazard, and to "encourage companies to take greater care in avoiding the production [and sale] of hazardous products in the first place." *Kaupelis v. Harbor Freight Tools USA, Inc.*, 2019 WL 6998661 at *10 (C.D. Cal. Oct. 9, 2019) (quoting *In re Mattel, Inc.*, 588 F. Supp. 2d 1111, 1115-16 (C.D. Cal. 2008)).

## PARTIES

9.    Plaintiff Kelsea Holton is domiciled in Hills, Iowa. Plaintiff Holton purchased a Maxcold Latitude 90 Roller that is part of the February 13, 2025 CPSC Recall from a BJ's in Fairless Hills, Pennsylvania in March 2022.  The cooler has a manufacture date of November 2021, based on the engraving on the bottom of the cooler.  Plaintiff Holton is referred to herein as the Pennsylvania Plaintiff.

---

[5]    https://www.cpsc.gov/Recalls/2025/Igloo-Recalls-More-Than-One-Million-90-Quart-Rolling-Coolers-Due-to-Fingertip-Amputation-and-Crushing-Hazards (last accessed June 5, 2025).
[6]    https://www.cpsc.gov/Recalls/2025/Igloo-Expands-Recall-of-90-Qt-Rolling-Coolers-Due-to-Fingertip-Amputation-and-Crushing-Hazards-Total-Recalled-Now-Nearly-1-2-Million (last accessed June 5, 2025).

00677953 2

10.     Plaintiff Luis Miranda is domiciled in San Bernardino, California. Plaintiff Miranda purchased a Maxcold Latitude 90 Roller that is part of the February 13, 2025 CPSC Recall from a Costco located in Fontana, CA in the spring of 2023. The cooler has a manufacture date of December 2020, based on the engraving on the bottom of the cooler. Plaintiff Miranda has experienced the defect, as the tow handle has pinched his fingers on several occasions, causing bruising and pain. Plaintiff Miranda is referred to herein as the California Plaintiff.

11.     Plaintiff Kristen Riffle is domiciled in Byron, Illinois. Plaintiff Riffle purchased the Igloo Latitude 90 Quart Rolling Cooler that is part of the February 13, 2025 CPSC Recall online from Dick's Sporting Goods around July of 2022. Plaintiff Riffle is referred to herein as the Illinois Plaintiff.

12.     Before purchasing the Products, each of the Plaintiffs reviewed the Products' packaging, item details, descriptions, product specifications and features. Neither the Products' packaging, labeling, or any other information surrounding the Products disclosed or suggested in any way that the Products contained the Defect. If the Products labeling or packaging had disclosed the Defect, then Plaintiffs would not have purchased the Products, or would not have purchased the Products on the same terms.

13.     Defendant Igloo Products Corp. is a Delaware corporation with its principal place of business and headquarters at 777 Igloo Road, Katy, Texas 77494.

## JURISDICTION AND VENUE

14.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(d)(2)(A) because this case is a class action where the aggregate claims of all members of the proposed class are in excess of $5,000,000.00, exclusive of interest and costs, and at least one member of the proposed class is citizen of a state different from Defendant.

00677953 2

15.     This Court has general jurisdiction over Defendant because it is incorporated in Delaware. Further, the Court has general jurisdiction over Defendant because Defendant conducts substantial business within Delaware such that Defendant has significant, continuous, and pervasive contacts with the State of Delaware.

16.     Venue is proper pursuant to 28 U.S.C. § 1391(b) because Defendant is incorporated in this District and is subject to the Court's personal jurisdiction with respect to this action.

## FACTUAL ALLEGATIONS

17.     **Product at issue:**  the Igloo 90 Qt. Flip & Tow Rolling Coolers at issue in this case were sold nationwide at major retailers like Costco, Target, Academy, Dick's, and other stores, and online at Amazon.com, Igloocoolers.com, and other websites from January 2019 through January 2025 for between $80 and $140.  There were approximately 1,360,000 units sold during this period in the United States.  A full specification sheet listing affected Model/SKU numbers, and dates of manufacture, are listed on the Recall webpage, which is incorporated herein.[7]

18.     **Defect at issue:**  As stated by Defendant: "The tow handle can pinch consumers' fingertips against the cooler, posing fingertip amputation and crushing hazards."

19.     The Defect affects all of the Products at issue. Defendant and the CPSC have stated that "[c]onsumers should immediately stop using the recalled coolers."

20.     The cause of the Defect is the same for all of the products at issue.

21.     **Relevant time period:**  All of the omissions and misrepresentations at issue here were uniformly and consistently made at all times while the Products were sold between January

---

[7]     https://www.cpsc.gov/Recalls/2025/Igloo-Recalls-More-Than-One-Million-90-Quart-Rolling-Coolers-Due-to-Fingertip-Amputation-and-Crushing-Hazards; *see also* https://www.cpsc.gov/Recalls/2025/Igloo-Expands-Recall-of-90-Qt-Rolling-Coolers-Due-to-Fingertip-Amputation-and-Crushing-Hazards-Total-Recalled-Now-Nearly-1-2-Million

00677953 2

2019 and January 2025. There have been no material changes to the product packaging or other consumer-facing materials during the relevant period.

22. **The omissions and misrepresentations:** Defendant described the Products as large coolers that were meant to keep items cold for up to 5 days, with a volume of 90 Quarts. The Products come with a large, prominent tow handle, which consumers interpret can be safely used. However, Defendant failed to disclose that tow handle "can pinch consumers' fingertips against the cooler, posing fingertip amputation and crushing hazards." There is no warning of any kind anywhere on the Products' labels or the Products themselves.

23. The omission pertains to an unreasonable safety hazard that reasonable consumers consider to be material.

24. Plaintiffs and class members would not have bought the Products, or would not have bought them on the same terms, if the Defect had been disclosed. The materiality of the Defect also is demonstrated by the existence of the recall and the severe injuries reported before and after the notice had been disseminated.

25. Defendant did not disclose the Defect on the product packaging or labeling or any other customer-facing document or display. Retailers' sales personnel and customer service representatives did not disclose the Defect either.

26. At the time of purchase, Plaintiffs and class members did not know and did not have reason to know that the Products were defective. Defendant had exclusive knowledge of that fact.

27. Defendant made partial representations to Plaintiffs and class members, while suppressing the safety defect. Specifically, by displaying the Products and describing its functions and parts, the Products' packaging and web pages implied that they were suitable and safe to use

as tow coolers, without disclosing that they had a critical safety-related defect related to the Products.

28.    **Defendant's Pre-sale Knowledge of the Defect**:  Defendant was aware of the Defect at the time of sale.

29.    Before the products were first launched, Defendant had reason to know about the Defect as a result of pre-release testing.

30.    After launch, Defendant monitored a variety of sources of information to detect signs of defects. These sources of information include warranty claim data, customer complaints to Defendant, replacement part data, field reports, and CPSC correspondence. Defendant knew that for every complaint made, there is a statistical likelihood that there were many more unreported incidents, and Defendant made projections about the likely manifestation rate and future warranty claims based on the number of known complaints.

31.    Defendant also monitored and would have known about consumer complaints to the CPSC.  When a consumer posts a complaint on the CPSC website, all of the relevant information provided to the CPSC is automatically sent via email to the manufacturer and retailers. Monitoring complaints to the CPSC is standard industry practice that serve as an early warning mechanism to spot defects that cause safety hazards, and Defendant, as a well-known and highly visible consumer goods manufacturer, upon information and belief, adheres to that practice

32.    The number of complaints were unusually high relative to the total population of Products sold. The fact that so many customers made similar complaints indicated that the complaints were not the result of user error or anomalous incidents, but instead a systemic problem with the Products.  The reports and complaints from consumers were similar enough to put Defendant on notice that the incidents described were the result of a defect.

33.  **No Adequate Remedy At Law:**  Plaintiffs and members of the putative classes are entitled to equitable relief because no adequate remedy at law exists.

34.  Legal remedies are inadequate because they are not equally prompt and certain and in other ways efficient as equitable relief.

35.  Damages are not equally certain as restitution because the standard that governs restitution is different than the standard that governs damages. Hence, the Court may award restitution even if it determines that Plaintiffs fail to sufficiently adduce evidence to support an award of damages.

36.  Damages and restitution are not the same amount. Unlike damages, restitution is not limited to the amount of money Defendant wrongfully acquired plus the legal rate of interest. Equitable relief, including restitution, entitles a plaintiff to recover all profits from the wrongdoing, even where the original funds taken have grown far greater than the legal rate of interest would recognize. Plaintiffs seek non-restitutionary disgorgement of profits in connection with their unjust enrichment claims.

37.  Legal claims for damages are not equally certain as restitution because equitable claims entail few elements.

38.  In short, significant differences in proof and certainty establish that any potential legal claim cannot serve as an adequate remedy at law.

39.  **The Recall Does Not Render This Lawsuit Moot:**  The recall does not render this lawsuit moot because it does not provide all of the same relief available in this lawsuit.

40.  Under the recall, Defendant is not providing any refunds to any class members. Instead, it is only providing a replacement handle for those class members that submit a request. These options are not viable for people like Plaintiffs who no longer trust the reliability of

Defendant's products and do not wish to continue to do business with them, or those that do not feel safe replacing a handle that Defendant has stated may crush or amputate their fingers.

41.     The recall was only briefly publicized and in a very limited manner, in both the February Notice and the May Notice expanding the class of Products. Therefore, even after the expanded notice, many eligible class members remain unaware of it, and the response rate has been low. The amount and reach of the publicity concerning the notice of recall was not comparable to the typical notice provided in a class action.

## FACTUAL ALLEGATIONS

42.     ***Class Definition***: Plaintiffs bring this action on behalf all people in the following classes and subclasses (collectively referred to as "Class Members"):

a.   <u>Nationwide Class</u>: all people in the United States who purchased one of the Products.

b.   <u>California Subclass</u>: all persons who purchased a Product in California.

c.   <u>Pennsylvania Subclass</u>: all persons who purchased a Product in Pennsylvania.

d.   <u>Illinois Subclass</u>: all persons who purchased a Product in Illinois.

43.     Each of the above class definitions is a placeholder that "may be altered or amended before final judgment." Fed. Civ. P. 23(c)(1)(C). Subject to additional information obtained through further investigation and discovery, the foregoing class definitions may be expanded or narrowed by amendment or in the motion for class certification, including through the use of multi-state subclasses to account for material differences in state law, if any.

44.     Excluded from the putative classes are Defendant and any entities in which Defendant has a controlling interest, Defendant's agents and employees, the judge to whom this

action is assigned, members of the judge's staff, and the judge's immediate family. Also excluded are any claims for personal injury.

45.     *Numerosity.*  Members of the Classes are so numerous that their individual joinder herein is impracticable. On information and belief, each Class or Subclass includes thousands of consumers. The precise number of Class Members and their identities are unknown to the Plaintiffs at this time but may be determined through discovery. Class Members may be notified of the pendency of this action by mail and/or publication through the distribution records of Defendant, Igloo, their agents, or other means.

46.     *Commonality and Predominance*. Common questions of law and fact exist as to all Class Members and predominate over questions affecting only individual Class Members. Common legal and factual questions include, but are not limited to:

a.   Whether Defendant knew or should have known of the Defect at issue in this case, and if so, when it discovered the Defect;

b.   Whether knowledge of the Defect at issue in this case would be important to a reasonable person, because, among other things, it poses an unreasonable safety hazard;

c.   Whether Defendant failed to disclose and concealed the existence of the Defect from potential customers;

d.   Whether Defendant's conduct, as alleged herein, violates the consumer protection laws asserted here;

47.     *Typicality.* Plaintiffs' claims are typical of the claims of the Classes in that Plaintiffs and the Classes sustained damages as a result of Defendant's uniform wrongful conduct, based upon Defendant's failure to inform Plaintiffs and all others similarly situated that the products at issue here can be dangerous.

00677953 2

48.     *Adequacy*. Plaintiffs will fairly and adequately protect the interests of Class members. Plaintiffs have retained counsel that is highly experienced in complex consumer class action litigation, and Plaintiffs intend to vigorously prosecute this action on behalf of the Classes. Plaintiffs have no interests that are antagonistic to those of the Classes. Plaintiffs have no past or present financial, employment, familial, or other relationship with any of the attorneys in this case that would create a conflict of interest with the proposed class members.

49.     *Superiority*. A class action is superior to all other available methods for the fair and efficient adjudication of this controversy for, *inter alia*, the following reasons: prosecutions of individual actions are economically impractical for members of the Classes; the Classes are readily definable; prosecution as a class action avoids repetitious litigation and duplicative litigation costs, conserves judicial resources, and ensures uniformity of decisions; and prosecution as a class action permits claims to be handled in an orderly and expeditious manner.

50.     Without a class action, Defendant will continue a course of action that will result in further damages to the Plaintiffs and Members of the Classes and will likely retain the benefits of its wrongdoing.

## CAUSES OF ACTION

### COUNT I
### Violations of California's Unfair Competition Law ("UCL")
### Cal. Bus. & Prof. Code §§ 17200, *et seq.*
### (On behalf of Plaintiff Miranda and the California Subclass)

51.     Plaintiffs repeat their prior allegations of this Complaint and incorporate them by reference herein.

52.     Plaintiff Miranda brings this cause of action individually and on behalf all other class members in the California Subclass.

53.     California Business & Professions Code Section 17200 prohibits acts of "unfair competition," including any "unlawful, unfair or fraudulent business act or practice" and "unfair, deceptive, untrue or misleading advertising."

54.     Defendant acted with knowledge and intent.

55.     Plaintiff Miranda alleges a claim under all three prongs of the UCL.

56.     As alleged above, Defendant engaged in fraudulent conduct that had the tendency or capacity to deceive or confuse reasonable consumers.

57.     Defendant's conduct also constitutes "unfair" business acts and practices within the meaning of the UCL, in that its conduct was injurious to consumers, offended public policy, and was unethical and unscrupulous. Defendant's violation of consumer protection and unfair competition laws resulted in harm to consumers.

58.     Plaintiff Miranda also alleges a violation under the "unlawful" prong of the UCL because Defendant's conduct violated consumer protection laws and the common law as set forth herein.

59.     As a direct and proximate result of Defendant's unfair and deceptive practices, Plaintiff Miranda and the other members of the California Subclass have suffered out-of-pocket losses.

60.     Plaintiff Miranda and California Subclass members have suffered an injury in fact resulting in the loss of money and/or property as a proximate result of the violations of law and wrongful conduct of Defendant alleged herein, and they lack an adequate remedy at law to address the unfair conduct at issue here.

61.     Plaintiff Miranda seeks all relief available under the UCL.

### COUNT II
**Violations of California's Consumer Legal Remedies Act ("CLRA")**

**Cal. Civ. Code §§ 1750,** *et seq.*
**(On Behalf of Plaintiff Miranda and the California Subclass)**

62.     Plaintiffs repeat their prior allegations of this Complaint and incorporate them by reference herein.

63.     Plaintiff Miranda brings this cause of action individually and on behalf all other class members in the California Subclass.

64.     Defendant is a "person" as defined by California Civil Code § 1761(c).

65.     Plaintiff Miranda and the other Class Members are "consumers" within the meaning of California Civil Code § 1761(d).

66.     For the reasons alleged above, Defendant violated California Civil Code § 1770(a)(5)(7) and (9).

67.     On March 7, 2025, Plaintiff Miranda provided pre-suit notice of the claims asserted under the CLRA, in compliance with all of the CLRA's requirements.

68.     Defendant's unfair and deceptive acts or practices occurred repeatedly in Defendant's trade or business.

69.     Defendant acted with knowledge and intent.

70.     Defendant engaged in conduct that had the tendency or capacity to deceive or confuse reasonable consumers.

71.     With respect to restitution under the CLRA claim, Plaintiff Miranda alleges in the alternative that Plaintiff Miranda and California Subclass Members lack an adequate remedy at law for the reasons already alleged above.

72.     As a result of Defendant's misconduct, Plaintiff Miranda and other California Subclass Members have suffered monetary harm.

73.    Plaintiff Miranda seeks all relief available under this cause of action, including monetary damages.

**COUNT III**
**Violation of Song-Beverly Consumer Warranty Act**
**Cal. Civ. Code § 1790, *et seq.***
**(On Behalf of Plaintiff Miranda and the California Subclass)**

74.    Plaintiffs repeat their prior allegations of this Complaint and incorporate them by reference herein.

75.    Plaintiff Miranda brings this cause of action individually and on behalf all other class members in the California Subclass.

76.    The Products are "consumer goods" and Plaintiff Miranda and California Subclass Members are "buyers" within the meaning of Cal. Civ. Code § 1791.

77.    Defendant is a "manufacturer," "distributor," and/or "retail seller" under Cal. Civ. Code § 1791.

78.    The implied warranty of merchantability included with the sale of each Product means that Defendant warranted that Product (a) would pass without objection in trade under the contract description; (b) was fit for the ordinary purposes for which the Product would be used; and (c) conformed to the promises or affirmations of fact made on the label or packaging.

79.    The Products would not pass without objection in the trade because they contain the above-described Defect, which also makes them unfit for the ordinary purpose for which they would be used.

80.    The Products are not adequately labeled because their labeling fails to disclose the Defect and does not advise class members of the existence of the danger prior to experiencing failure firsthand.

81.    The Products were not sold on an "as is" or "with all faults" basis.

14

82.    Any purported disclaimer of implied warranties was ineffective because it was not conspicuous and not made available to the purchaser before the sale of the Product.

83.    Defendant's actions have deprived Plaintiff Miranda and California Subclass Members of the benefit of their bargains and have caused the Products to be worth less than what Plaintiff Miranda and other California Subclass Members paid.

84.    As a direct and proximate result of the breach of implied warranty, Plaintiff Mirand and California Subclass Members received goods whose condition substantially impairs their value. Plaintiff Miranda and California Subclass Members have been damaged by the diminished value of their Products.

85.    Under Cal. Civ. Code §§ 1791.1(d) and 1794, Plaintiff Miranda and California Subclass Members are entitled to damages and other legal and equitable relief, including, at their election, the right to revoke acceptance of the Products or the overpayment or diminution in value of their Products. They are also entitled to all incidental and consequential damages resulting from the breach, as well as reasonable attorneys' fees and costs.

86.    Plaintiff Miranda seeks all relief available under this cause of action.

<u>**COUNT IV**</u>
**VIOLATION OF CALIFORNIA'S FALSE ADVERTISING LAW ("FAL")**
**Cal. Bus. & Prof. Code § 17500**
**(On Behalf of Plaintiff Miranda and the California Sub-Class)**

87.    Plaintiff Miranda repeats and re-alleges all proceeding factual allegations above as if fully set forth herein.

88.    Plaintiff Miranda brings this cause of action individually and on behalf of all other class members in the California Subclass.

89.    The FAL provides that "[i]t is unlawful for any person, firm, corporation or association, or any employee thereof with intent directly or indirectly to dispose of real or personal

00677953 2

property or to perform services" to disseminate any statement "which is untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading." Cal. Bus. & Prof. Code § 17500.

90.    It is also unlawful under the FAL to disseminate statements concerning property or services that are "untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading." *Id.*

91.    As alleged herein, Defendant's advertisements, labeling, policies, acts, and practices relating to the Products misled consumers acting reasonably as to the safety of the Products' ability to be used safely as intended.

92.    Plaintiff Miranda suffered injury due to Defendant's actions as set forth herein because he purchased the Products in reliance on Defendant's failure to disclose that the Products were unreasonably dangerous.

93.    Defendant's business practices, as alleged herein, constitute deceptive, untrue, and misleading advertising pursuant to the FAL because Defendant has advertised the Products in a manner that is misleading and omitted material information from its advertising.

94.    Defendant's omissions were material because they were likely to deceive reasonable consumers into inducing them to purchase and use the Products without being aware that there is a severe amputation, fracture, or laceration hazard, and therefore the Products themselves were unsafe. As a direct and proximate result of Defendant's unfair and deceptive acts or practices, Plaintiff Miranda and the California Subclass suffered damages by purchasing the Products because they would not have purchased or used the Products had they known the truth, and they received a product that was worthless because it poses such a dangerous hazard to one's fingers.

00677953 2

95.    Defendant profited from selling the falsely and deceptively advertised Products to consumers.

96.    As a result, Plaintiff Miranda, the California Subclass members, and the general public are entitled to injunctive relief, restitution, and an order to disgorge the funds by which Defendant was unjustly enriched.

97.    Pursuant to Cal. Bus. & Prof. Code § 17535, Plaintiff Miranda, on behalf of himself and the California Subclass, seeks an order enjoining Defendant from continuing to engage in deceptive business practices, false advertising, and any other act prohibited by law, including those set forth in this Complaint.

## COUNT V
### Violation of Pennsylvania Unfair Trade Practices and Consumer Protection Law
### 73 P.S. §§ 201-1, *et seq*.
### (On Behalf of Plaintiff Holton and the Pennsylvania Subclass)

98.    Plaintiffs repeat their prior allegations of this Complaint and incorporate them by reference herein.

99.    Plaintiff Holton brings this cause of action individually and on behalf all other class members in the Pennsylvania Subclass.

100.    Pennsylvania's Unfair Trade Practices and Consumer Protection Law prohibits unfair or deceptive acts or unfair methods of competition in the conduct of any business, trade, or commerce.

101.    In their sale of goods throughout the State of Pennsylvania, Defendant conducts business and trade within the meaning and intendment of Pennsylvania's Unfair Trade Practices and Consumer Protection Law.

102.    Plaintiff Holton and members of the Pennsylvania Subclass are consumers who purchased the Products from Defendant for their personal use.

103.    By the acts and conduct alleged herein, Defendant engaged in deceptive, unfair, and misleading acts and practices, which include, without limitation, misrepresenting or omitting that the Products (a) would not contain a dangerous defect (b) are generally recognized as safe for use, and (3) could be used as tow coolers. Defendant intentionally concealed and omitted material facts regarding the true nature of the Products.

104.    The foregoing deceptive acts and practices were directed at consumers.

105.    The foregoing deceptive acts and practices are misleading in a material way because they fundamentally misrepresent the characteristics and quality of the Products to induce consumers to purchase the same.

106.    By reason of this conduct, Defendant engaged in deceptive conduct in violation of Pennsylvania's Unfair Trade Practices and Consumer Protection Law.

107.    Defendant's actions are the direct, foreseeable, and proximate cause of the damages Plaintiff Holton and members of the Pennsylvania Subclass have sustained from having paid for and used Defendant's Products.

108.    As a result of Defendant's violations, Plaintiff Holton and members of the Pennsylvania Subclass have suffered damages because: (a) they would not have purchased the Products on the same terms if they knew that the Products had a dangerous defect; (b) they paid price premium for the Products due to the undisclosed Defect; and (c) the Products do not have the characteristics, uses, benefits, or qualities as promised.

109.    On behalf of Plaintiff Holton and other members of the Pennsylvania Subclass, Plaintiff Holton seeks to recover actual damages or one hundred dollars, whichever is greater, three

times actual damages, reasonable attorney fees, and all other relief available under the Pennsylvania's Unfair Trade Practices and Consumer Protection Law.

<u>COUNT VI</u>
**Breach of Implied Warranty**
**(On Behalf of Plaintiffs and the Nationwide Class)**

110.    Plaintiffs repeat their prior allegations of this Complaint and incorporate them by reference herein.

111.    Plaintiffs bring this cause of action individually and on behalf all other Class Members.

112.    Defendant, as the designer, manufacturer, marketer, distributor, and/or seller of the Products at issue, impliedly warranted that they would pass without objection in trade under the contract description; were fit for the ordinary purpose for which the Products would be used; and conformed to the promises or affirmations of fact made on the labels and packaging.

113.    Defendant breached its implied warranty because the Products could not pass without objection in the trade under the contract description, they were not adequately labeled because there was no disclosure of the Defect at issue; and they are unfit for their ordinary purpose. As a result, Plaintiffs and members of the Classes did not receive the goods as impliedly warranted by Defendant to be merchantable.

114.    Plaintiffs and Class Members purchased the Products in reliance upon Defendant's skill and judgment and the implied warranties of fitness for the purpose.

115.    The Products were defective when they left the exclusive control of Defendant. The defect is substantially certain to manifest in the future, including within the warranty period.

116.    Plaintiffs and Class Members did not receive the goods as warranted.

117.    The Products were not sold on an "as is" or "with all faults" basis.

00677953 2

118.    Any purported disclaimer of implied warranties was ineffective because it was not conspicuous and not made available to the purchaser before the sale of the Products.

119.    BJ's, Costco, and Dick's Sporting Goods are all authorized dealers of the Products. Plaintiffs and class members were the intended end-users of the Products, not the retailers.  The implied warranty was intended to benefit the consumer, not the retailer/authorized dealers. Accordingly, Plaintiffs and class members are third party beneficiaries of the implied warranty.

120.    Defendant also was aware of remote customers' requirements that products work safely and was aware that remote customers generally expected the Products to meet minimum standards.

121.    As a direct and proximate cause of Defendant's breach of the implied warranty, Plaintiffs and Class Members have been injured and harmed because: (a) they would not have purchased the Products on the same terms if they knew that the Products were dangerous and unlawful to be sold; and (b) the Products do not have the characteristics, uses, or benefits as promised by Defendant.

122.    Plaintiffs seek all relief available under this cause of action.

<u>COUNT VII</u>
**Violation of the Illinois Consumer Fraud and Deceptive Practices Act**
**815 ILCS § 505-1, et seq. ("ICFA")**
**(On Behalf of Plaintiff Kristen Riffle and the Illinois Subclass)**

123.    Plaintiffs their prior allegations of this Complaint and incorporate them by reference herein.

124.    Plaintiff Kristen Riffle brings this cause of action on behalf of herself and the Illinois Subclass against Defendant.

125.    Plaintiff Riffle and other Illinois Subclass Members are persons within the context of the Illinois Consumer Fraud and Deceptive Trade Practices Act ("ICFA"), 815 ILCS § 505/1(e).

00677953 2

126.    Defendant is a person within the context of the ICFA, 815 ILCS § 505/1(c).

127.    At all times relevant hereto, Defendant was engaged in trade or commerce as defined under the ICFA, 815 ILCS § 505/1(f).

128.    Plaintiff Riffle and the proposed Illinois Subclass members are "consumers" who purchased the Products for personal, family, or household use within the meaning of the ICFA, 815 ILCS § 505/1(e).

129.    The ICFA prohibits engaging in "unfair or deceptive acts or practices … in the conduct of any trade or commerce…." ICFA, 815 ILCS § 505/2.

130.    The ICFA prohibits any deceptive, unlawful, unfair, or fraudulent business acts or practices, including using deception, fraud, false pretenses, false promises, false advertising, misrepresentation, or the concealment, suppression, or omission of any material fact, or the use or employment of any practice described in Section 2 of the Uniform Deceptive Trade Practices Act ("UDTPA"). 815 ILCS § 505/2.

131.    Plaintiff Riffle and the other Illinois Subclass Members reasonably relied upon Defendant's misrepresentations and omissions alleged herein regarding the Products.

132.    Defendant's conduct, as described herein, took place within the State of Illinois and constitutes unfair or deceptive acts or practices in the course of trade and commerce, in violation of 815 ICFA § 505/1, *et seq*.

133.    Defendant violated the ICFA by representing that the Products have characteristics or benefits that they do not have. 815 ILCS § 505/2; 815 ILCS § 510/2(7).

134.    Defendant advertised the Products with the intent not to sell them as advertised, in violation of 815 ILCS § 505/2 and 815 ILCS § 510/2(9).

135.    Defendant engaged in fraudulent and/or deceptive conduct, which creates a likelihood of confusion or misunderstanding in violation of 815 ILCS § 505/2; 815 ILCS § 510/2(3).

136.    Before placing the Products into the stream of commerce and into the hands of consumers, including Plaintiffs and reasonable consumers, Defendant knew or should have known that the Products had a serious defect, and were otherwise not able to safely or reliably function as intended and created a serious risk to injury of the user, but Defendant omitted and concealed this material fact to consumers, including Plaintiff Riffle and Illinois Subclass members, by continuing to place the Products into the stream of commerce without any notice or disclosure of the material defect.

137.    Defendant chose to market the Products in this way to impact consumer choices and gain market share. They are aware that all consumers who purchased the Products were exposed to and would be affected by its misrepresentations and omissions and would reasonably believe that the Products safely and reliably functioned and were safe for use by the user, and that Defendant's marketing materials, including representations and omissions, were otherwise accurate. However, Defendant's representations are false and misleading because the Products contain a material defect, are not safe for use by its user, and do not function safely or reliably.

138.    Defendant then chose to remedy this material defect by providing consumers with a replacement handle that consumers have to install themselves in order to purportedly be able to use the cooler safely.

139.    Defendant intended that Plaintiff Riffle and each of the other Illinois Subclass members would reasonably rely upon the representations, misleading characterizations, and material omissions concerning the true nature of the Products.

140.     Defendant's representations, concealment, omissions, and other deceptive conduct were likely to deceive and cause misunderstanding and/or cause Plaintiff Riffle and the other Illinois Subclass members to be deceived about the true nature of the Products.

141.     Plaintiff Riffle and the Subclass Members have been damaged as a proximate result of Defendant's violations of the ICFA. They have suffered damages as a direct and proximate result of purchasing the Products.

142.     As a direct and proximate result of Defendant's violations of the ICFA, as set forth above, Plaintiff Riffle and the Illinois Subclass members have suffered ascertainable losses of money caused by Defendant's representations and material omissions regarding the ability of the Products to function as intended.

143.     Had they been aware of the true nature of the Products, Plaintiff Riffle and Illinois Subclass Members would have paid less for the Products or would not have purchased them.

144.     Based on Defendant's unfair and/or deceptive acts or practices, Plaintiff and the Illinois Subclass members are entitled to relief, including restitution, actual damages, treble damages, punitive damages, costs, and attorney's fees, under 815 ILCS § 505/10a. Plaintiff and Illinois Subclass members are also entitled to injunctive relief, seeking an order enjoining Defendant's unfair and/or deceptive acts or practices.

<u>COUNT VIII</u>
**Unjust Enrichment**
**(On Behalf of Plaintiffs and the Nationwide Class)**

145.     Plaintiffs repeat their prior allegations of this Complaint and incorporate them by reference herein.

146.     Plaintiffs bring this cause of action individually and on behalf all other Class Members.

147.    To the extent required, Plaintiffs assert this cause of action in the alternative to legal claims, as permitted by Rule 8 of the Federal Rules of Civil Procedure.

148.    The unjust enrichment claims are premised on Defendant's pre-sale activities and are unrelated to their post-sale obligations to provide repairs.

149.    Plaintiffs and the Class Members conferred a benefit on Defendant in the form of the gross revenues Defendant derived from the money Plaintiffs and Class Members paid to Defendant.

150.    Defendant knew of the benefit conferred on it by Plaintiffs and the Class Members.

151.    Defendant has been unjustly enriched in retaining the revenues derived from Plaintiffs' and the Class Members' purchases of the products, which retention of such revenues under these circumstances is unjust and inequitable because Defendant omitted that the Products were dangerous. This caused injuries to Plaintiffs and class members because they would not have purchased the Products or would have paid less for them if the true facts concerning the Products had been known.

152.    Defendant accepted and retained the benefit in the amount of the gross revenues it derived from sales of the Products.

153.    Defendant has profited by retaining the benefit under circumstances which would make it unjust for Defendant to retain the benefit.

154.    Plaintiffs and the Class Members are, therefore, entitled to restitution in the form of the revenues derived from Defendant's sale of the Products.

155.    As a direct and proximate result of Defendant's actions, Plaintiffs and Class Members have suffered in an amount to be proven at trial.

156.    Putative Class Members have suffered an injury in fact and have lost money as a result of Defendant's unjust conduct.

157.    Putative Class Members lack an adequate remedy at law with respect to this claim and are entitled to non-restitutionary disgorgement of the financial profits that Defendant obtained as a result of its unjust conduct.

### COUNT IX
### Fraud by Omission / Intentional Misrepresentation
### (On Behalf of the Plaintiffs and the Nationwide Class)

158.    Plaintiffs repeat their prior allegations of this Complaint and incorporate them by reference herein.

159.    Plaintiffs bring this cause of action individually and on behalf all other Class Members.

160.    This claim is based on fraudulent omissions concerning the safety of consumers who use the Products. As discussed above, Defendant failed to disclose that the Products had a dangerous Defect.

161.    The false and misleading omissions were made with knowledge of their falsehood. Defendant is a nationwide manufacturer and distributor, routinely undergoes product testing, and must have known about the Defect prior to sale. Nonetheless, Defendant continued to sell its defective Products to unsuspecting consumers.

162.    The false and misleading omissions were made by Defendant, upon which Plaintiffs and Class Members reasonably and justifiably relied, and were intended to induce and actually induced Plaintiffs and Class Members to purchase the Products.

163.    The fraudulent actions of Defendant caused damage to Plaintiffs and Class Members, who are entitled to damages and punitive damages.

164.    Plaintiffs seek all relief available under this cause of action.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs, individually and on behalf of the proposed classes, prays for the following relief:

A.    Certification of the proposed classes;

B.    Appointment of Plaintiffs as representative of the classes;

C.    Appointment of undersigned counsel as counsel for the classes;

D.    A declaration that Defendant's actions complained of herein violated the statutes referenced herein;

E.    For an order finding in favor of Plaintiffs and class members on all counts asserted herein;

F.    For an award of injunctive or other equitable relief as is necessary to protect the interests of Plaintiffs and the class members, including, inter alia, an order prohibiting Defendant from engaging in the unlawful acts described above;

G.    For actual, compensatory, statutory, nominal, and/or punitive damages in amounts to be determined by the Court and/or jury;

H.    For prejudgment interest on all amounts awarded;

I.    For an order of restitution and all other forms of equitable monetary relief;

J.    For an order awarding Plaintiffs and class members their reasonable attorney fees, expenses, and costs of suit.

K.    Orders granting such other and further relief as the Court deems necessary, just, and proper.

## JURY DEMAND

Pursuant to Fed. R. Civ. P. 38(b), Plaintiff requests a jury trial on all issues so triable.

00677953 2

Dated: June 6, 2025                    Respectfully submitted,

                                 **COOCH AND TAYLOR P.A.**

                                 */s/ R. Grant Dick IV*
                                 R. Grant Dick IV (No. 5123)
                                 1000 N. West Street, Suite 1500
                                 Wilmington, DE 19801
                                 Telephone: 302-984-3800
                                 E-Mail: gdick@coochtaylor.com

                                 Yeremey O. Krivoshey
                                 **SMITH KRIVOSHEY, PC** (admitted *pro hac vice*)
                                 166 Geary Str STE 1500-1507
                                 San Francisco, CA 94108
                                 Telephone: 415-839-7077
                                 E-Mail: yeremey@skclassactions.com

                                 Joel D. Smith
                                 **SMITH KRIVOSHEY, PC** (admitted *pro hac vice*)
                                 867 Boylston Street 5th Floor #1520
                                 Boston, MA 02116
                                 Telephone: 617-377-7404
                                 E-Mail: joel@skclassactions.com

                                 Kevin Laukaitis
                                 Daniel Tomascik
                                 **LAUKAITIS LAW LLC**
                                 954 Avenida Ponce De Leon
                                 Suite 205, #10518
                                 San Juan, Puerto Rico 00907
                                 Phone: (215) 789-4462
                                 klaukaitis@laukaitislaw.com
                                 dtomascik@laukaitislaw.com

                                 Mason A. Barney
                                 Leslie L. Pescia
                                 **SIRI | GLIMSTAD LLP**
                                 745 Fifth Avenue, Suite 500
                                 New York, NY 10151
                                 Main: 212-532-1091
                                 mbarney@sirillp.com
                                 lpescia@sirillp.com

                                 *Attorneys for Plaintiffs and the Proposed Class*

## <u>CLRA Venue Declaration, Civil Code § 1780(c)</u>

I, R. Grant Dick IV, declare as follows:

1.      I have personal knowledge to the facts stated herein and, if called upon to do so, could competently testify hereto.

2.      I am the attorney for Plaintiffs in the above-captioned action.

3.      I submit this declaration in support of the Class Action Complaint, which is based in part on violations of the Consumers Legal Remedies Act, California Civil Code § 1750 *et seq.*

4.      The Class Action Complaint has been filed in the proper place for trial of this action.

5.      It is my understanding that Defendant regularly transacts business in this District, and is incorporated in this District.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct to the best of my knowledge.  Executed on June 6, 2025 in Wilmington, Delaware.

By:   /s/ *R. Grant Dick IV*
                R. Grant Dick IV

00677953 2