IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| IN RE IGLOO PRODUCTS COOLER RECALL LITIGATION | C.A. No. 1:25-cv-00298-JLH CONSOLIDATED |

**DEFENDANT'S NOTICE IN SUPPORT OF *ZANNETTINO* PLAINTIFFS' MOTION FOR APPOINTMENT OF INTERIM LEAD COUNSEL**

Defendant Igloo Products Corp. ("Igloo") hereby submits this Notice in support of the Motion for Appointment of Interim Lead Counsel filed by Plaintiffs Anthony Zannettino, Kathryn Trainor, Robert Castellan, and Vy Nguyen (the "*Zannettino* Plaintiffs") [ECF No. 37-38] and in opposition to the Motion for Appointment of Interim Lead Counsel filed by Plaintiffs Kelsea Holton, Luis Miranda, and Kristen Riffle (the "*Holton* Plaintiffs") [ECF No. 34-35].

The *Zannettino* Plaintiffs indisputably filed their complaint before the *Holton* Plaintiffs. Their counsel then worked cooperatively and in good faith with Igloo's counsel, engaging in productive and professional conferrals, taking procedural positions that were justified by the law, and even voluntarily agreeing to transfer their action to this jurisdiction so as to serve the convenience of the parties and the interests of justice. In marked contrast, counsel for the *Holton* Plaintiffs has done the opposite. They have been uncooperative during the parties' conferrals. They have failed to confer with *Zannettino's* counsel on issues that undeniably implicate the *Zannettino* Plaintiffs. They have taken legal positions that are unsupported and even contradicted by their own cited authority. And they have made factual accusations that are unjustified. In light of these stark differences, which demonstrate far more cooperation and candor on the part of *Zannettino's* counsel, Igloo supports the appointment of *Zannettino's* counsel as interim lead counsel in this action.

**FACTUAL BACKGROUND**

Igloo manufactures and sells a wide variety of coolers, including coolers known as the 90 QT Flip & Tow Rolling Coolers (the "90 QT Coolers"). On February 13, 2025, Igloo instituted a widely publicized voluntary recall relating to certain of the 90 Qt Coolers (the "Recall"). Shortly thereafter, on February 21, 2025, Plaintiff Kathryn Trainor filed the first of six putative class actions relating to the Recall in the Eastern District of Pennsylvania. *See Trainor v. Igloo Prods. Corp.*, No. 2:25-cv-00941 (E.D. Pa.), at ECF No. 1 ("*Trainor*"). On March 5, 2025, Plaintiff Anthony Zannettino filed the second putative class action relating to the Recall in the Central District of California. *See Zannettino v. Igloo Prods. Corp.*, No. 2:25-cv-01917 (C.D. Cal.) ("*Zannettino*"), ECF No. 11, ¶¶ 28-30 (the "*Zannettino* Complaint").[1] After the *Zannettino* action was filed, Plaintiff Trainor voluntarily dismissed her complaint and joined the *Zannettino* action.

On March 11, 2025—two weeks after *Trainor* was filed and six days after *Zannettino* was filed—Plaintiffs Kelsea Holton and Luis Miranda filed this virtually identical putative class action relating to the Recall. *See Holton et al. v. Igloo Prods. Corp.*, No. 1:25-cv-00298 (D. Del.) ("*Holton*"), at ECF No. 1 (the "*Holton* Complaint"). Subsequently, several other putative class actions were also filed against Igloo relating to the Recall:

- *Riffle v. Igloo Products Corporation*, 3:25-cv-50131 (N.D. Ill.) was filed on March 24, 2025 ("*Riffle*") in the Northern District of Illinois. It was then transferred to the District of Delaware on April 24, 2025 and consolidated with *Holton* on May 16, 2025.

- *Castellano v. Igloo Products Corporation*, 2:25-cv-02733-MWF-JC (C.D. Cal.) was filed on March 28, 2025 ("*Castellano*") in the Central District of California. It was then consolidated with *Zannettino* on May 22, 2025.

---

[1] On March 11, 2025, the *Zannettino* court struck the *Zannettino* Complaint due to a ministerial error with the civil cover sheet. Plaintiff *Zannettino* then re-filed the *Zannettino* Complaint two days later, on March 13, 2025. The *Zannettino* Complaint remained publicly available on the docket from the time it was filed on March 6, 2025, and no new matter or docket was created when the *Zannettino* Complaint was re-filed on March 13, 2025.

- *Nguyen v. Igloo Products Corporation,* 8:25-cv-00716-MWF-JC (C.D. Cal.) was filed on April 8, 2025 ("*Nguyen*") in the Central District of California. It was also consolidated with *Zannettino* on May 22, 2025.

Despite the fact that *Trainor* and *Zannettino* were filed before *Holton*, counsel for the *Holton* Plaintiffs filed a Motion for Appointment of Interim Co-Lead Counsel with this Court on May 15, 2025. ECF No. 15 (the "First *Holton* Motion for Appointment"). In the First *Holton* Motion for Appointment, counsel for the *Holton* Plaintiffs asked this Court to appoint them as interim co-lead counsel for all putative class actions relating to the Recall in *any* jurisdiction, including as to the multiple other putative class actions then pending in the Central District of California. *Id.* Notwithstanding that the First *Holton* Motion for Appointment sought to cover the class claims in *Zannettino*, *Castellano*, and *Nguyen*, counsel for the *Holton* Plaintiffs filed the Motion without conferring with counsel for any of the Plaintiffs in any of these other actions (which were then separately pending). ECF No. 39, ¶ 5.

Following the filing of the First *Holton* Motion for Appointment, on May 21, 2025, counsel for the *Zannettino*, *Castellano*, and *Nguyen* Plaintiffs jointly filed a Stipulation to Consolidate Cases and Appoint Interim Co-Lead Counsel. *Zannettino*, ECF No. 29 (the "First *Zannettino* Motion for Appointment"). Unlike the First *Holton* Motion for Appointment, the First *Zannettino* Motion for Appointment only sought appointment as co-lead counsel for cases filed in the Central District of California. *Id.* at 2, n.1. The *Zannettino* court entered the Stipulation on May 22, 2025, consolidating *Zannettino*, *Nguyen*, and *Castellano* (collectively referred to as the "Consolidated *Zannettino* Action") and appointing certain of the Plaintiffs' attorneys in the Consolidated *Zannettino* Action as interim co-lead counsel in the Central District of California—namely, Christina Tusan of Tusan Law and Matthew George of Kaplan Fox. *Zannettino*, ECF No. 30 ("*Zannettino* Order Appointing Lead Counsel").

On May 28, 2025, counsel for the *Zannettino* Plaintiffs informed counsel for the *Holton* Plaintiffs of their appointment in the Central District of California and of their intent to file an opposition to the First *Holton* Motion for Appointment because it would infringe on the rights of the parties in the Central District of California. ECF No. 39, ¶ 5. In response, and before discussing the possibility of avoiding unnecessary motion practice, counsel for the *Holton* Plaintiffs filed a motion in the Consolidated *Zannettino* Action seeking to intervene in the action, to vacate the *Zannettino* Order Appointing Lead Counsel, and to transfer the Consolidated *Zannettino* Action to this Court. *Id.*; *Zannettino*, ECF No. 31 ("Motion to Intervene").

Counsel for Igloo and the Plaintiffs in the Consolidated *Zannettino* Action subsequently engaged in a series of meet and confers regarding Igloo's intent to move to transfer the Consolidated *Zannettino* Action to this Court. These discussions were highly productive, and counsel for Plaintiffs in the Consolidated *Zannettino* Action ultimately agreed to voluntarily transfer the Consolidated *Zannettino* Action to this Court for the convenience of the parties and in the interests of justice. *Zannettino*. *See Zannettino*, ECF No. 32 at 3. Following transfer, all interested parties agreed to consolidate the Consolidated *Zannettino* Action with this action. *See* ECF No. 29. Counsel for the *Zannettino* and *Holton* Plaintiffs then filed their respective motions for appointment of interim lead counsel. *See* ECF Nos. 34-39 (respectively, the "*Holton* Motion for Appointment" and the "*Zannettino* Motion for Appointment"). The *Holton* Motion for Appointment requests that the Court appoint the law firms of Smith Krivoshey, PC and Laukaitis Law, LLC (collectively referred to as "*Holton's* Counsel"). *See* ECF No. 34. The *Zannettino* Motion for Appointment requests that the Court appoint Christina Tusan of Tusan Law, P.C. and Matthew George of Kaplan Fox & Kilsheimer LLP (collectively referred to as "*Zannettino's*

Counsel"). *See* ECF No. 37. For the reasons stated below, Igloo supports the appointment of *Zannettino's* Counsel over the appointment of *Holton's* Counsel.

## ARGUMENT

It is well established that a key factor bearing on the appointment of lead counsel is "the attorneys' ability to command the respect of their colleagues and work cooperatively with opposing counsel and the court." *In re Parking Heaters Memorandum Antitrust Litig.*, 310 F.R.D. 54, 57 (E.D.N.Y. 2015) (citing Ann. Manual Complex Lit. § 10.224 (4th ed.)). In fact, courts have held that when facing competing motions for the appointment of lead counsel, "[u]ltimately, the ability to cooperate is the most important distinction." *Nelson v. Connexin Software Inc.*, 2023 WL 2721657, at *2 (E.D. Pa. Mar. 30, 2023) (adopting the "proposal that shows the most cooperative spirit"); *see also Riggs v. Tristar Ins. Grp., Inc.*, 2024 WL 5454556, at *2 (C.D. Cal. Sept. 6, 2024) (appointing lead counsel in part based on the fact that they "demonstrated an ability to work cooperatively with others"). In this vein, courts have considered a defendant's "insight into the present acrimony in th[e] case to date" in assessing which law firm will advance the litigation "in a more coordinated, expedited, and cooperative manner." *Calhoun v. Invention Submission Corp.*, 2020 WL 5016942, at *5 (W.D. Pa. Aug. 25, 2020).

Here, based on what has occurred to date, *Zannettino's* Counsel has demonstrated that they will litigate this action in a more cooperative and good faith manner. By way of example, *Zannettino's* Counsel readily agreed to the extension of time that Igloo's counsel requested at the onset of the litigation due to personal and professional conflicts. *Zannettino's* Counsel properly sought their appointment as lead counsel only as to cases filed in the Central District of California when *Zannettino* was pending there. And, most tellingly, *Zannettino's* Counsel voluntarily agreed to transfer the Consolidated *Zannettino* Action to this court—a concession that required the Plaintiffs in the *Zannettino* Consolidated Action to leave their chosen forum so that all of the

related actions could be litigated in the same forum, thereby furthering judicial economy and conserving party resources. *Zannettino*, ECF No. 32 at 3. In so doing, *Zannettino's* Counsel demonstrated that they are not only willing to cooperate with Igloo's counsel—they are willing to take procedural steps that serve the interests of justice at large.

In stark contrast, *Holton's* Counsel has taken a markedly different approach—demonstrating that they are non-cooperative, highly litigious, and willing to take legal positions that are unsupported and even contrary to established law. First, at the onset of the litigation, *Holton's* Counsel refused to accommodate the extension of time that Igloo's counsel had requested due to personal and professional conflicts. *See* Declaration of E. Rutner (Ex. A) ¶ 3. In fact, *Holton's* Counsel Yeremy Krivoshey raised his voice to opposing counsel during the very first meet and confer in this action in connection with Igloo's request—claiming he has "never" given any party more than 30 days to respond and that he was not going to start now. *Id*. At the parties' second meet and confer, requested by *Holton's* Counsel simply to "chat about the case," *Holton's* Counsel ambushed Igloo's counsel with accusations that Igloo's counsel acted inappropriately by failing to inform *Holton's* Counsel of the filings made by *Zannettino's* Counsel and demanding that Igloo file a motion to transfer in the Consolidated *Zannettino* Action without waiting for the *Zannettino* Plaintiffs to file a consolidated complaint. *Id.* ¶ 4. Igloo is highly concerned that future meet and confers led by *Holton's* Counsel will be all the more contentious given that these initial conferrals did not deal with any substantive issues.

Next, despite knowing that the *Zannettino* action was then pending and despite failing to even confer with *Zannettino's* Counsel on the issue, *Holton's* Counsel moved to be appointed lead counsel over the putative class claims pending in both this and *other* jurisdictions—claiming the cases then pending in the Central District of California did not "add anything meaningful to this

6

litigation" and that they were in a "far better position to lead this action" than the attorneys in either *Zannettino*, *Castellano*, or *Nguyen*. ECF No. 15 at 15-1C. In so doing, *Holton's* Counsel did not cite any authority permitting a court to appoint lead counsel over cases or claims pending in other jurisdictions.

Beyond this, *Holton's* Counsel also wrongly claimed that they should be appointed lead counsel because they were the first-filed action in a court of "general jurisdiction." *Id.* at 13. *Holton's* Counsel did not cite a single case that being first-filed in a court of "general jurisdiction" has any bearing whatsoever—much less that it supports the appointment of lead counsel. To the contrary, *Holton's* Counsel cited cases establishing the precise opposite of what they claimed—namely, that counsel in the actual first-filed action (irrespective of where the action is filed) should be appointed lead counsel. *Id.* at 13-14.[2] Further, *Holton's* Counsel made incredulous accusations against *Zannettino's* Counsel—such as the fact that they purportedly did "a more thorough investigation and work-up of the case" than *Zannettino's* Counsel. *Id.* at 17. Absent knowing the inner workings of the investigation performed by *Zannettino's* Counsel, Igloo is baffled at how *Holton's* Counsel could possibly take such a position. Igloo is highly concerned that *Holton's* Counsel will continue to take such disingenuous positions in this litigation.

Finally, *Holton's* Counsel brazenly filed a Motion to Intervene in the Consolidated *Zannettino* Action—claiming, *inter alia*, they had a right to demand that the *Zannettino* court vacate its own order on the appointment of lead counsel in the Central District of California. Again, *Holton's* Counsel did not cite any legal authority that would permit them to intervene under the circumstances—much less authority that would permit them to demand that a court in a *different*

---

[2] Indeed, the case law cited in the First *Holton* Motion for Appointment only serves to demonstrate that *Zannettino's* Counsel—not *Holton's* Counsel—should be appointed lead counsel because it is undisputed that *Zannettino's* Counsel filed their claims before *Holton's* Counsel.

7

*jurisdiction* vacate an order appointing lead counsel in that jurisdiction. *Zannettino*, at ECF No. 31. Worse, *Holton's* Counsel did not even bother conferring with *Zannettino's* counsel before filing the Motion. ECF No. 39 at 3. Had they made an effort to substantively discuss their demands with *Zannettino's* Counsel prior to filing their motion, they may have been able to resolve the issues without unnecessary motion practice—as evidenced by the fact that *Zannettino's* Counsel later stipulated to transfer the Consolidated *Zannettino* Action to this Court, which mooted the relief demanded in the Motion to Intervene. Again, Igloo is highly concerned that Holton's counsel will continue to take such unsupported and premature positions in this litigation.

In light of the above, there are evident differences in how *Zannettino's* Counsel and *Holton's* Counsel will conduct themselves in this litigation. On the one hand, *Holton's* Counsel has demonstrated that they are inclined to file motions without properly conferring and to seek relief that lacks any legal or factual support. *Holton's* Counsel has also demonstrated that they have no interest in working cooperatively with *either* Igloo's counsel or *Zannettino*'s Counsel. In stark contrast, *Zannettino's* Counsel has shown good faith efforts to resolve issues cooperatively and without court involvement. *Zannettino's* Counsel has also demonstrated a regard for both judicial resources and the good faith nature of their positions. As such, Igloo supports the appointment of *Zannetino's* Counsel as lead counsel in this action.[3]

---

[3] Igloo notes that it has not engaged in any settlement discussions with either *Holton's* Counsel or *Zannettino's* Counsel. Thus, outside of the considerations raised herein, Igloo has no "skin in the game" with respect to the appointment of lead counsel.

DATED: July 23, 2025                    Respectfully submitted,

**COZEN O'CONNOR**

*/s/ Kaan Ekiner*
Kaan Ekiner (#5607)
Nathan Barillo (#5863)
1201 North Market St., Ste. 1001
Wilmington, DE 19801
302-295-2046
kekiner@cozen.com
nbarillo@cozen.com

Erica Rutner (*pro hac vice*)
Michael Puretz (*pro hac vice*)
1801 N Military Trail, Suite 200
Boca Raton, Florida 33431
561-245-6120
erutner@cozen.com
mpuretz@cozen.com

John A. Bertino (*pro hac vice*)
2001 M Street NW, Suite 500
Washington, DC 20036
202-912-4881
jbertino@cozen.com

*Attorneys for Defendant*
*Igloo Products Corp.*

### CERTIFICATE OF SERVICE

I hereby certify that on July 23, 2025, I electronically filed the foregoing document with the Clerk of the Court using the Court's CM/ECF system, which will send a notice of electronic filing to all CM/ECF participants.