**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| **IN RE IGLOO PRODUCTS COOLER RECALL LITIGATION** | C.A. No. 1:25-cv-00298-JLH<br>CONSOLIDATED<br><br>**DEMAND FOR JURY TRIAL**<br><br>**DAMAGES, DECLARATORY AND PERMANENT INJUNCTIVE RELIEF, AND RESTITUTION REQUESTED** |

## <u>CONSOLIDATED CLASS ACTION COMPLAINT</u>

Plaintiffs Anthony Zannettino, Kathryn Trainor, Robert Castellano, Vy Nguyen, Jose Barragan, and Kristen Riffle ("Plaintiffs"), on behalf of themselves and all others similarly situated, bring this action against Defendant Igloo Products Corporation ("Igloo" or "Defendant"), and allege based upon personal knowledge of the allegations pertaining to themselves and upon information, belief, and the investigation of counsel as to all other allegations:

### INTRODUCTION

1.      Defendant Igloo is perhaps the most instantly-recognizable brand name for ice chests, coolers, food and drink containers, and similar products in the nation. Igloo claims that one out of every three households in the United States has an Igloo product in their garage.[1]

2.      One of the products invented by Igloo, in or about 1994, was the wheeled cooler.

---

[1] *See* https://www.igloocoolers.com/blogs/news/cheers-to-75-years (*last accessed* October 20, 2025).

4934-5840-7284, v. 1

3.     Igloo continues to design, manufacture, and sell wheeled or rolling coolers (the "Rolling Cooler" or "Rolling Coolers")[2] for approximately $80-$140[3] at retailers such as Costco, Target, Dicks, Amazon, and directly from Igloo via their online store. As depicted below, the Rolling Coolers have wheels and a tow handle that, if it functioned as advertised, consumers could use to easily and safely transport their full Rolling Cooler to the picnic, beach, or other destination of their choice. The sole value of the wheels is that, in combination with the tow handle, they make the cooler convenient to tow or pull.

4.     Unfortunately for consumers, the Rolling Coolers do not meet minimum standards of operating with the necessary level of safety. In fact, Igloo designed and sold approximately 1.2 million Igloo Flip & Tow 90 Quart Coolers between January 2019 and January 2025 with a dangerously defective tow handle that can "pinch consumers' fingertips against the cooler, posing fingertip amputation and crushing hazards" (the "Defect").[4]

5.     As a result of this dangerous defect, Defendant and the U.S. Consumer Product Safety Commission ("CPSC") announced on February 13, 2025, a recall of approximately 1,060,000 Igloo Flip & Tow 90 Quart Coolers manufactured prior to January 2024 and sold in the United States (the "Recall").[5]

---

[2] The Rolling 90 Quart Cooler product line includes several substantially similar models identified by the following Model/SKU numbers: 34143, 27019, 34202, 34241, 34389, 34424, 34488, 34506, 34527, 34547, 34553, 34577, 34578, 34591, 34608, 34619, 34608, 34619, 34624, 34689, 34724, 34734, 34750, 34752, 34775, 34776, 34789, 34799, 34800, 34818, 34841, 34844, 34869, 34993, 34999, 35003, 35019, 35044, 35045, 35052, 35053, 35054, 35365, 49870, 49928, 49937, 49938, 50680, 34692, 34785, 34790.

[3] https://www.cpsc.gov/Recalls/2025/Igloo-Recalls-More-Than-One-Million-90-Quart-Rolling-Coolers-Due-to-Fingertip-Amputation-and-Crushing-Hazards ("CPSC Initial Cooler Recall Page"), *last accessed* October 20, 2025.

[4] *Id*.; *see also* https://www.cpsc.gov/Recalls/2025/Igloo-Expands-Recall-of-90-Qt-Rolling-Coolers-Due-to-Fingertip-Amputation-and-Crushing-Hazards-Total-Recalled-Now-Nearly-1-2-Million ("CPSC Expanded Cooler Recall Page"), *last accessed* October 20, 2025.

[5] *Id*.

6. On May 8, 2025, shortly after the filings of initial complaints in this case, Igloo expanded its Recall to cover a total of 1.2 million dangerously defective Rolling Coolers.[6]

7. As part of the Recall, consumers have been advised to "immediately stop using the recalled coolers and contact Igloo for a free replacement handle."[7]

8. The CPSC's urgency is merited, Igloo initially "received 12 reports of fingertip injuries, including fingertip amputations, bone fractures, and lacerations" caused by the defective Rolling Coolers.[8] However, the CPSC now reports that "Igloo has received 78 fingertip injuries from the cooler's tow handle, 26 of which led to finger amputations, bone fractures, and cuts."[9]

9. Defendant specifically advertises the tow handle—which it calls a "comfort-grip swing-up rear handle"—and boasts that it "reduces towing force by up to 50% for easy pulling."[10]

10. Consumers looking for a reliable, portable, and easy-to-use rolling cooler were instead sold, for a premium price of $80-$140, a dangerously defective and difficult-to-use Rolling Cooler that poses an inherent and unforeseeable risk to them and their children. Indeed, multiple Plaintiffs have personally experienced pinching of their fingers during normal use of the Rolling Cooler and, even prior to the Recall, had limited or stopped use of the Rolling Cooler for this reason.

---

[6] *Id.*

[7] *Id*.

[8] *Id.*

[9] https://www.cpsc.gov/Recalls/2025/Igloo-Expands-Recall-of-90-Qt-Rolling-Coolers-Due-to-Fingertip-Amputation-and-Crushing-Hazards-Total-Recalled-Now-Nearly-1-2-Million, l*ast accessed* October 20, 2025.

[10] *See* https://www.igloocoolers.com/products/ecocool-90-qt-roller-cooler?srsltid=AfmBOoq_FmHxzUw0f6YvKyqBWa3nafWGyRNq6goBHMumjHUiLDxz47X8 ("ECOCOOL Promotional Page") (advertising the "ECOCOOL Latitude 90 Qt Roller Cooler," model number 34776), *last accessed* October 20, 2025.

4934-5840-7284, v. 1

11.    Moreover, the Recall itself is entirely inadequate. As an initial matter, it provides no monetary remedy whatsoever. Rather than actually recalling and refunding or replacing the unsafe Rolling Coolers, Defendant instead offers only to send a replacement handle kit ("Replacement Handle Kit") to consumers with instructions on how to remove the "recalled tow handle" and replace it with the "new tow handle."

12.    Defendant's Recall process requires consumers to contact Defendant to request the promised Replacement Handle Kit, but does not inform consumers when they can expect their Replacement Handle Kit to arrive. It also remains to be seen whether the Replacement Handle Kit will fully remedy the defect because the Rolling Coolers will continue to be used for many years.

13.    Despite acknowledging that the Rolling Coolers are unsafe and that consumers should stop using them immediately, Igloo estimates that the process for registration and receipt of a replacement handle kit will take between two and four weeks. Thus, the Recall process does not offer a timely remedy.

14.    Further, the Recall process requires consumers to register for and request remediation – which, as described above, they must attempt to install themselves even if they lack the dexterity and skills to do so. Given the danger of injury, including potential amputation associated with the tow handles, a remedy that requires consumers to remove the dangerous tow handles and then try to follow instructions regarding how they can themselves try to install replacement handles is inadequate—and potentially dangerous.

15.    In addition to the Recall process being unduly burdensome on consumers and offering an inadequate remedy, the notice element of the Recall is also inadequate. There is a significant likelihood that the majority of consumers who purchased or who currently own a Rolling Cooler will never learn of the Recall from Igloo—as was the case for multiple Plaintiffs.

- 4 -

4934-5840-7284, v. 1

16.    This is a dangerous Defect which Defendant knew of and should have known and warned customers about, and which has been experienced and reported by disappointed consumers firsthand after the point of sale. No reasonable consumer would purchase an expensive Rolling Cooler—a product intended for fun, leisurely outings—that has a serious safety Defect that could amputate a finger.

17.    That Igloo knew of the dangerous Defect is evidenced both by consumer complaints to Igloo and by its implementation of a re-designed tow handle in January 2024, as described in its Recall Notice. It would have taken Igloo years to develop, design, test, and manufacture the redesigned handle and notably, yet Igloo failed to warn over 1 million consumers of the Defect until February 2025—more than a year after the re-designed tow handle was implemented.

18.    Additionally, while there is a significant resale market for used outdoor equipment such as coolers, the defective, recalled Igloo Rolling Coolers in this case, which can be resold, have experienced a significant loss in value and useful life because of these issues. Indeed, several Plaintiffs have stopped or limited use of their Rolling Coolers due to the Defect even before the Recall was announced.

19.    For these and the additional reasons described herein, the utility of Defendant's conduct in designing, manufacturing, and selling the Rolling Coolers is outweighed by the gravity of the consequences to Plaintiffs and Class Members. Moreover, Defendant's conduct as described in this Complaint is immoral, unethical, oppressive, unscrupulous or substantially injurious to Plaintiffs and Class Members.

20.    Through this suit, Plaintiffs request a full refund and/or applicable damages on these dangerous Rolling Coolers, as well as all other appropriate relief.

4934-5840-7284, v. 1

## PARTIES

21.    **Plaintiff Anthony Zannettino** is a citizen of California, residing in the city of Eastvale, in Riverside County, California. In or about September 2023, Plaintiff Zannettino purchased a Rolling Cooler, which was manufactured by Defendant and is subject to the Recall, from a Costco location in California.

22.    **Plaintiff Robert Castellano** resides in the state of California in Los Angeles County. Plaintiff Castellano purchased a Rolling Cooler (MaxCold Latitude 90 Roller Cooler, model no.: 34202) which was manufactured by Defendant and is subject to the Recall, from a Costco in Los Angeles County on or around October 22, 2022.

23.    **Plaintiff Vy Nguyen** resides in the State of California in Orange County. Plaintiff Nguyen purchased a Rolling Cooler (model no.: 34841) which was manufactured by Defendant and is subject to the Recall, from a Walmart in Orange County in approximately October of 2022.

24.    **Plaintiff Jose Barragan** resides in the state of California in Los Angeles County. Plaintiff Barragan purchased a Rolling Cooler (Latitude 90 qt Roller Cooler**,** SKU no.: 20676037) which was manufactured by Defendant and is subject to the Recall, from a Dick's Sporting Goods in Los Angeles County on July 4, 2023.

25.    **Plaintiff Kathryn Trainor** resides in Taunton, Massachusetts. In or about July 2023, Plaintiff Trainor bought a Rolling Cooler (Latitude 90 Roller White Cooler, model no.: 34506), which was manufactured by Defendant and is subject to the Recall, in Kansas City, Missouri.

26.    **Plaintiff Kristen Riffle** resides in the state of Illinois in Ogle County. In or about July 2023, Plaintiff Riffle purchased her Rolling Cooler, which was manufactured by Defendant

- 6 -

and is subject to the Recall, online at Dick's Sporting Goods, for approximately $119.99, and had it shipped to her home in Ogle County.

27. **Defendant Igloo Products Corp.** is a Delaware corporation. Igloo's principal place of business is 777 Igloo Road, Katy, Texas 77494.

28. Defendant Igloo Products Corp. designs, manufactures, distributes, markets, advertises, labels, and sells coolers, ice chests, drink containers, and various supporting accessories, including the Rolling Cooler.

## JURISDICTION

29. This Court has personal and general jurisdiction over Defendant because it is incorporated in Delaware. Further, this Court has personal and general jurisdiction over Defendant because it conducts substantial business within Delaware such that Defendant has significant, continuous, and pervasive contacts with Delaware.

30. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1332(d) because the amount in controversy exceeds $5,000,000.00, exclusive of interest and costs, this case is a class action in which some members of the Class are citizens of different states than Defendant. *See* 28 U.S.C. § 1332(d)(2)(A). This Court has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.

31. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b) because Defendant is incorporated in this District and is subject to the Court's personal and general jurisdiction with respect to this action.

- 7 -

4934-5840-7284, v. 1

## FACTUAL ALLEGATIONS

### A.    Igloo's Rolling Coolers and Representations

32.    Igloo manufactures, advertises, markets, and sells a variety of coolers, ice chests, and other products throughout the United States of America.

33.    The Rolling Coolers at issue in this lawsuit are sold at various retailers. For example, Defendant sells one now-recalled Rolling Cooler for $139.00 on its website.[11] Costco sells a slightly different, but still recalled, Rolling Cooler for $99.99[12], and Lowes sells yet another recalled Rolling Cooler for $119.00.[13]

34.    Igloo proclaims itself the "go-to-brand for consumers who work hard and play harder" and as "the most recognizable brand of ice chests in the USA!"[14]

35.    Defendant markets the Rolling Coolers at issue as a convenient accompaniment to leisurely outdoor gatherings and meals. Defendant's promotional images are full of active, fun-loving people hiking or picnicking with the Rolling Coolers, or eating summer snacks out of a Rolling Cooler in the bed of a truck.

Promotional images[15]

Promotional image[16]

---

[11] ECOCOOL Promotional Page.

[12] https://www.costco.com/igloo-90-quart-maxcold-latitude-flip-and-tow-wheeled-cooler.product.100893167.html.

[13] https://www.lowes.com/pd/Igloo-Carb-wht-a-sea-blk-90-Quart-Wheeled-Insulated-Chest-Cooler/5015531019?gStoreCode=1019&gQT=1&gRefinements=MEASURE:60%20%E2%80%93%2090%20quarts.

[14] https://www.igloocoolers.com/pages/about-igloo, *last accessed* October 20, 2025.

[15] ECOCOOL Promotional Page.

[16] https://www.igloocoolers.com.

4934-5840-7284, v. 1

36.     Defendant also advertises its Rolling Coolers as suitable for use in other outdoor settings, noting features such as a "fish ruler" on the lid allowing users to measure their catch and "oversized wheels" which "provide all-terrain mobility."

37.     On its website, Defendant describes the tow handle as a "[c]omfort-grip swing-up rear handle for easy lifting & loading" and claims that the "[f]lip-up tow handle reduces towing force by up to 50% for easy pulling."[17] Igloo further claims that the Rolling Coolers have "[h]ybrid latches [that] have a stainless steel hinge for added durability & secure lid closure" and "[o]versized, durable hinges with stay-open detent helping to avoid the lid accidentally shutting closed."[18]

### B.     The Rolling Cooler Defect and Recall

38.     Missing from Defendant's fun-loving promotional images and highly marketable features, however, is the image of a lacerated or severed finger.

39.     Following a dozen reports of finger injuries, including amputations, bone fractures, and lacerations, Defendant and the CPSC announced a Recall of approximately 1,060,000 Rolling Coolers designed and sold between January 2019 and January 2025 with a dangerously defective tow handle that can "pinch consumers' fingertips against the cooler, posing fingertip amputation and crushing hazards."[19]

40.     On May 8, 2025, shortly after the filings of initial complaints in this case, Igloo expanded its Recall to cover a total of 1.2 million dangerously defective Rolling Coolers.[20]

---

[17] ECOCOOL Promotional Page.

[18] *Id*.

[19] CPSC Initial Cooler Recall Page.

[20] *Id*.; *see also* CPSC Expanded Cooler Recall Page

41. The Recall advises consumers to "immediately stop using the recalled coolers and contact Igloo for a free replacement handle."[21]

42. Put differently, despite Defendant's representations and images of reliable, convenient, and transportable coolers, the Rolling Coolers in question do not meet the bare minimum standards of operating with the usual and expected level of safety due to the Defect in the Rolling Coolers' design that can crush, lacerate, break, or even amputate consumers' fingertips.

43. This is an extremely dangerous Defect. As consumers experienced, the Rolling Coolers regularly pinch or trap fingers while in normal use, and consumers now know what serious consequences those pinches can have.

44. The Defect is present in all Igloo Rolling Coolers.

45. The Rolling Coolers do not display any warning of the dangers posed by the Defect. Nor did Defendant disclose the Defect in any other customer-facing communication.

46. The Defect renders the Rolling Coolers unfit for the ordinary purpose for which they are used: a safe and reliable method for storing and transporting chilled food, beverages, and items because it exposes consumers to the risk of significant physical harm while in regular use.

47. Plaintiffs and Class Members would not have bought the Rolling Coolers, or would have paid less and/or not have bought them on the same terms, if the Defect had been disclosed.

48. Accordingly, Plaintiffs and Class Members suffered an economic loss at the moment of their purchase of the defective Rolling Coolers in the form of overpayment and diminution in value.

49. The Recall does not make Plaintiffs whole as it fails to cure this economic loss stemming from the Defective Rolling Cooler. Plaintiffs and Class Members would not have

---

[21] *Id.*

purchased a $80-$140 cooler they knew could crush, lacerate, or amputate their fingertip while in ordinary use.

50.    Further, the Recall does not compensate for the diminished value, including resale value, or loss of use of the Rolling Cooler. Indeed, Defendant's Recall notice states that "[c]onsumers should immediately stop using the recalled coolers and register for a free tow replacement handle."[22] The CPSC further warns consumers that it is "unlawful to offer recalled products for sale under Section 19 of the Consumer Product Safety Act (15 U.S.C. § 2068)."[23] Thus, if a consumer attempted to sell a recalled Rolling Cooler they could be subject to civil and criminal penalties. 15 U.S.C. §§ 2068, 2069. Instead, the Recall offers only a Replacement Handle Kit to consumers with instructions on how consumers must remove the "recalled tow handle" and replace it with the "new tow handle."

51.    In the Warning that accompanies the replacement handle, Defendant states: "DO NOT USE COOLER UNTIL YOU REPLACE HANDLE.  MOVING PARTS CAN CRUSH OR EVEN AMPUTATE FINGERTIPS." The Warning continues:

> A redesigned tow handle ("New Tow Handle") was implemented by Igloo in 2024.  The New Tow Handle addresses both pinch point risks.  The New Tow Handle contains increased space near the hinge along with enhanced plastic ribbing. . . .
>
> IF YOU HAVE A 90 QT COOLER WITH A RECALLED TOW HANDLE, YOU MUST REPLACE THE RECALLED TOW HANDLE WITH THE NEW TOW HANDLE PER THE INSTRUCTIONS ON THE FOLLOWING PAGE.

---

[22] *Id.*

[23] https://www.cpsc.gov/Business--Manufacturing/Business-Education/ResaleThrift-Stores-Information-Center/Stop-Online-Sale-of-Recalled-Products, *last accessed* October 20, 2025.

4934-5840-7284, v. 1

52.     Defendant's Recall process requires consumers to contact Defendant to request the promised Replacement Handle Kit, but does not inform consumers when they can expect their Replacement Handle Kit to arrive.

53.     And when the Replacement Handle Kit does arrive, consumers must attempt to install it themselves, even if they lack the required tools or skills. Given the nature of the Defect, including potential laceration or amputation associated with the tow handles, a remedy that requires consumers to remove the dangerous tow handles and then try to follow instructions to install replacement handles themselves is wholly inadequate and potentially dangerous. Further, it remains to be seen whether the Replacement Kit will remedy the problem given that the Rolling Coolers are meant to be used for many more years. Given this uncertainty, consumers, and particularly those with young children, are less likely to use the Rolling Coolers, diminishing their value and useful life.

54.     Igloo knew, yet concealed, that the Rolling Coolers were defective for many years due to consumers' complaints and reports of injuries. As of May 8, 2025, the CPSC alone reported that "Igloo has received 78 fingertip injuries from the cooler's tow handle, 26 of which led to finger amputations, bone fractures, and cuts."[24]

55.     Complaints and injuries reported from consumers to Igloo over the course of many years caused Igloo to implement the re-designed tow handle in January 2024 as described in its Recall Notice. It would have taken Igloo years to develop, design, test, and manufacture the redesigned handle and notably, Igloo failed to warn over 1 million consumers about their defective Rolling Coolers for more than *another* year until February 2025.

---

[24] https://www.cpsc.gov/Recalls/2025/Igloo-Expands-Recall-of-90-Qt-Rolling-Coolers-Due-to-Fingertip-Amputation-and-Crushing-Hazards-Total-Recalled-Now-Nearly-1-2-Million , *last accessed* October 20, 2025.

4934-5840-7284, v. 1

56.    Igloo also knew or should have known the Rolling Coolers were dangerously defective through adequate pre-market testing, but Igloo either recklessly did not conduct thorough testing or concealed that information from the public.

57.    Igloo sold the Defective Rolling Coolers to unwitting consumers—many of whom were using the Rolling Coolers at family picnics and soccer games replete with children grabbing their favorite refreshment—knowing that the Rolling Coolers could lacerate their fingers and potentially lead to life changing amputations. While Igloo was continuing to sell over 1 million defective Rolling Coolers, it was secretly designing a purported fix to apply to later models, and still waited another full year before conducting a recall—likely only doing so because of regulator involvement. Igloo's conduct was reckless and dangerous to the American public and resulted in consumers being deceived at the point of sale, and injured by buying or overpaying for an unsafe, defective product that they otherwise would never have purchased.

58.    Through this suit, Plaintiffs request a full refund and/or applicable damages on these dangerous Rolling Coolers, as well as all other appropriate relief.

## PLAINTIFFS' EXPERIENCES

59.    **Plaintiff Anthony Zannettino** resides in the state of California in Riverside County.

60.    Plaintiff Zannettino purchased his Rolling Cooler from a Costco in Riverside County in or about September 2023.

61.    Plaintiff Zannettino wanted to purchase a safe, reliable, quality cooler from a well-known and recognizable brand.

62.    Notably, Plaintiff Zannettino never received formal notice from Igloo of the Recall. Thus, had he not been fortunate enough to happen to hear of this Recall in a notice provided to

4934-5840-7284, v. 1

him by Costco, he likely would never have learned of the Defect and inherent dangers of the Rolling Cooler.

63.     The remedy Igloo has offered through the Recall—that is, providing a Replacement Handle Kit—is illusory, and, in any event, entirely insufficient. The purported remedy, even if actually provided, does not actually address the Defect or make the Rolling Cooler safe, and it certainly does not remedy the false representations and omissions Igloo has made regarding the Rolling Cooler, which enticed Plaintiff Zannettino to purchase (and overpay) in the first place. It does not make Plaintiff Zannettino whole.

64.     Plaintiff Zannettino would not have purchased the Rolling Cooler, or would have paid less and/or sought materially different terms, had he known these Coolers were defective and not as safe as Defendant represented. Defendant's misrepresentations and omissions were substantial factors in Plaintiff's decision to purchase the Rolling Cooler.

65.     **Plaintiff Robert Castellano** resides in the state of California in Los Angeles County.

66.     Plaintiff Castellano purchased his Rolling Cooler from a Costco in Los Angeles County on or about October 22, 2022.

67.     Plaintiff Castellano wanted to purchase a safe, reliable, quality cooler from a well-known and recognizable brand.

68.     Plaintiff Castellano began experiencing pinching issues with his Rolling Cooler while on a camping trip with his minor son.

69.     While his son was moving the Rolling Cooler, the handle suddenly snapped back and pinched his fingers. Fortunately, Plaintiff Castellano's son did not suffer any lasting injury, but, concerned about the safety of the Rolling Cooler, Plaintiff Castellano limited his use of the

- 14 -

Rolling Cooler specifically to avoid being pinched to ensure that he and his child were not injured by it.

70.     Several months later, Plaintiff Castellano received notice of the Recall, for which he applied.

71.     Plaintiff Castellano received the replacement handle. He is, however, hesitant to avail himself of the Replacement Handle Kit provided as a part of the Recall as he does not feel confident that he can "fix" the Cooler to prevent any injuries—especially as the Warning states that "MOVING PARTS CAN CRUSH OR EVEN AMPUTATE FINGERTIPS."

72.     The remedy Igloo has offered through the Recall—that is, providing a Replacement Handle Kit—is illusory, and, in any event, entirely insufficient. The purported remedy, even if actually provided, does not actually address the Defect or make the Rolling Cooler safe, and it certainly does not remedy the false representations and omissions Igloo has made regarding the Rolling Cooler, which enticed Plaintiff Castellano to purchase (and overpay) in the first place. It does not make Plaintiff Castellano whole.

73.     Plaintiff Castellano would not have purchased a Rolling Cooler, or would have paid less and/or sought materially different terms, had he known these Rolling Coolers were defective and not as safe as Defendant represented. Defendant's misrepresentations and omissions were substantial factors in Plaintiff's decision to purchase the Rolling Cooler.

74.     **Plaintiff Vy Nguyen** resides in the state of California in the County of Orange.

75.     Plaintiff Nguyen purchased her Rolling Cooler on sale at Walmart in Orange County in late 2022 for approximately $100.00.

76.     Plaintiff Nguyen wanted to purchase a safe, reliable, quality cooler from a well-known and recognizable brand.

- 15 -

4934-5840-7284, v. 1

77. Plaintiff Nguyen began experiencing pinching issues with her Rolling Cooler almost immediately after purchasing it, with the Defective handle catching and pinching her fingertips during regular use.

78. The pinching happened so frequently that Plaintiff Nguyen limited her use of the Rolling Cooler specifically to avoid being pinched to ensure that she and her child were not injured by it.

79. Notably, Plaintiff Nguyen never received formal notice from Igloo of the Recall. Thus, had she not been fortunate enough to happen to hear of this Recall via social media, she likely would never have learned of the Defect and inherent dangers of the Rolling Cooler.

80. The remedy Igloo has offered through the Recall—that is, providing a Replacement Handle Kit—is illusory, and, in any event, entirely insufficient. The purported remedy, even if actually provided, does not actually address the Defect or make the Rolling Cooler safe, and it certainly does not remedy the false representations and omissions Igloo has made regarding the Rolling Cooler, which enticed Plaintiff Nguyen to purchase (and overpay) in the first place. It does not make Plaintiff Nguyen whole.

81. Plaintiff Nguyen would not have purchased a Rolling Cooler, or would have paid less and/or sought materially different terms, had she known these Rolling Coolers were defective and not as safe as Defendant represented. Defendant's misrepresentations and omissions were substantial factors in Plaintiff's decision to purchase her Rolling Cooler.

82. **Plaintiff Jose Barragan** resides in the state of California in Los Angeles County.

83. Plaintiff Barragan purchased his Rolling Cooler on at a Dick's Sporting Goods in Los Angeles County on July 4, 2023 for approximately $109.49.

- 16 -

4934-5840-7284, v. 1

84.     Plaintiff Barragan wanted to purchase a safe, reliable, quality cooler from a well-known and recognizable brand.

85.     Plaintiff Barragan began experiencing pinching issues with his Rolling Cooler almost immediately after purchasing it, with the Defective handle catching and pinching his fingertips during regular use.

86.     Notably, Plaintiff Barragan never received formal notice from Igloo of the Recall. Thus, had he not been fortunate enough to happen to hear of this Recall via social media, he likely would never have learned of the Defect and inherent dangers of the Rolling Cooler.  Since the Recall, Plaintiff Barragan has discontinued use of the Rolling Cooler due to the safety risk associated with the Defect.

87.     The remedy Igloo has offered through the Recall—that is, providing a Replacement Handle Kit—is illusory, and, in any event, entirely insufficient. The purported remedy, even if actually provided, does not actually address the Defect or make the Rolling Cooler safe, and it certainly does not remedy the false representations and omissions Igloo has made regarding the Rolling Cooler, which enticed Plaintiff Barragan to purchase (and overpay) in the first place. It does not make Plaintiff Barragan whole.

88.     Plaintiff Barragan would not have purchased a Rolling Cooler, or would have paid less and/or sought materially different terms, had he known these Rolling Coolers were defective and not as safe as Defendant represented. Defendant's misrepresentations and omissions were substantial factors in Plaintiff's decision to purchase his Rolling Cooler.

89.     **Plaintiff Kathryn Trainor** resides in the state of Massachusetts in Bristol County.

- 17 -

90.     Plaintiff Trainor purchased her Rolling Cooler from a Target in Kansas City, Missouri in or about July 2023. She brought the Rolling Cooler to her residence in Massachusetts, and used it in Massachusetts.

91.     Plaintiff Trainor wanted to purchase a safe, reliable, quality cooler from a well-known and recognizable brand.

92.     Notably, Plaintiff Trainor never received formal notice from Igloo of the Recall. Thus, had she not been fortunate enough to happen to hear of this Recall via social media, she likely would never have learned of the Defect and inherent dangers of the Rolling Cooler. Plaintiff was residing in Massachusetts when she learned of the Recall.

93.     The remedy Igloo has offered through the Recall—that is, providing a Replacement Handle Kit—is illusory, and, in any event, entirely insufficient. The purported remedy, even if actually provided, does not actually address the Defect or make the Rolling Cooler safe, and it certainly does not remedy the false representations and omissions Igloo has made regarding the Rolling Cooler, which enticed Plaintiff Trainor to purchase (and overpay) in the first place. It does not make Plaintiff Trainor whole.

94.     Plaintiff Trainor would not have purchased the Rolling Cooler, or would have paid less and/or sought materially different terms, had she known these Rolling Coolers were defective and not as safe as Defendant represented. Defendant's misrepresentations and omissions were substantial factors in Plaintiff's decision to purchase the Rolling Cooler.

95.     **Plaintiff Kristen Riffle** resides in the state of Illinois in Ogle County.

96.     In or about July 2023, Plaintiff Riffle purchased her Rolling Cooler online at Dick's Sporting Goods, for approximately $119.99, and had it shipped to her home in Ogle County.

- 18 -

4934-5840-7284, v. 1

97.     Plaintiff Riffle wanted to purchase a safe, reliable, quality cooler from a well-known and recognizable brand.

98.     Notably, Plaintiff Riffle never received formal notice from Igloo of the Recall. Thus, had she not been fortunate enough to happen to hear of this Recall via social media, she likely would never have learned of the Defect and inherent dangers of the Rolling Cooler.

99.     The remedy Igloo has offered through the Recall—that is, providing a Replacement Handle Kit—is illusory, and, in any event, entirely insufficient. The purported remedy, even if actually provided, does not actually address the Defect or make the Rolling Cooler safe, and it certainly does not remedy the false representations and omissions Igloo has made regarding the Rolling Cooler, which enticed Plaintiff Riffle to purchase (and overpay) in the first place. It does not make Plaintiff Riffle whole.

100.    Plaintiff Riffle would not have purchased a Rolling Cooler, or would have paid less and/or sought materially different terms, had she known these Rolling Coolers were defective and not as safe as Defendant represented. Defendant's misrepresentations and omissions were substantial factors in Plaintiff's decision to purchase her Rolling Cooler.

## TOLLING

### A.     Continuing Act Tolling

101.    As the creator, designer, manufacturer, and seller of the Rolling Cooler, Igloo has had actual knowledge likely for years, and certainly since consumers began complaining of the Defect to Igloo and the CPSC, that the Rolling Cooler is defectively designed and exposes consumers to risk of injury. Igloo even started redesigning the defective handles to implement with later models while continuing to sell the defective Rolling Coolers to the public.

4934-5840-7284, v. 1

102.    Nonetheless, Igloo issued the Recall only on February 13, 2025. Igloo expanded the Recall on May 8, 2025.

103.    Thus, at all relevant times, Igloo possessed continuous knowledge of the material dangers posed by the Rolling Cooler, and yet Igloo knowingly continued to allow the sale of the Rolling Cooler. Plaintiffs' and Class Members' claims are not time barred.

104.    Moreover, even after the Recall was initiated, there is no evidence that Igloo's Recall Notice has reached all owners of the Rolling Coolers.

105.    Plaintiffs and Class Members could not have reasonably discovered and could not have known of these facts, which Igloo publicly disclosed for the first time mere months ago. Indeed, until it issued the Recall, Igloo knowingly failed to disclose material information regarding the existence of the Defect in all Rolling Coolers. Accordingly, no potentially relevant statute of limitations should apply.

### B.    Fraudulent Concealment Tolling

106.    Any applicable statutes of limitations have been tolled or have not run for the additional reason that Igloo knowingly, actively, and fraudulently concealed the facts as alleged herein. Igloo had actual and constructive knowledge of the dangerous Defect in the Rolling Cooler since consumers began complaining of injuries to Igloo and the CPSC.

107.    Plaintiffs and Class Members have been kept in ignorance of information essential to the pursuit of their claims, and their safety, without any fault or lack of diligence on their part. Igloo's concealment of the Defect in the Rolling Cooler before, during, and after the purchases of Plaintiffs' Rolling Coolers prevented them from being on notice of any facts or information that would have required them to inquire whether Igloo fulfilled its duties under the law and, if not, whether Plaintiffs and Class Members had legal recourse.

4934-5840-7284, v. 1

108.    At all times prior to, during, and since the purchase of Plaintiffs' and Class Members' Rolling Coolers, Igloo has been under a continuing duty to disclose the true facts regarding the safety Defect in the Rolling Cooler. Because of Igloo's willful concealment of material information concerning the Rolling Cooler over a period of years, Igloo is estopped from relying on any statute of limitations defense as to the claims of Plaintiffs and Class Members.

### C.    Discovery Rule Tolling

109.    Plaintiffs and Class Members could not have discovered through the exercise of reasonable diligence that their Rolling Coolers were unsafe and defective within the time period of any applicable statutes of limitation because, as described herein, only Igloo had that information, and Igloo was concealing that information from the public.

110.    Indeed, Plaintiffs only recently became aware of the Rolling Cooler's dangerous Defect, through no fault of their own.

111.    Plaintiffs and other Class Members could not have reasonably discovered, and could not have known of facts that would have caused a reasonable person to suspect, that Igloo was manufacturing and marketing the Rolling Cooler despite being aware it contained a dangerous Defect.

112.    As such, no potentially relevant statute of limitations should be applied.

### D.    Estoppel

113.    Igloo was under a continuous duty to disclose to Plaintiffs and other Class Members the fact that Igloo knew about the dangerously defective nature of the Rolling Coolers.

114.    Igloo knowingly, affirmatively, and actively concealed the true nature, quality, and character of the Rolling Coolers from Plaintiffs and Class Members.

- 21 -

4934-5840-7284, v. 1

115. Igloo also knowingly made representations about the quality and safety of the Rolling Coolers.

116. Plaintiffs and other Class Members reasonably relied upon Defendant's knowing and affirmative representations and/or active concealment of the facts regarding the hazardous and defective nature of the Rolling Coolers.

117. Accordingly, Igloo is estopped from relying on any statutes of limitations in defense of this Action.

## CLASS ACTION ALLEGATIONS

118. Plaintiffs bring this action, on behalf of themselves and all others similarly situated, as a class action pursuant to Federal Rules of Civil Procedure, Rule 23 ("Rule 23").

119. Pursuant to Rule 23, Plaintiffs seek to represent classes composed of and defined as:

 a. **The Nationwide Class**: During the fullest period allowed by law, all persons who purchased or owned a Rolling Cooler in the United States.

 b. **The California Class:** During the fullest period allowed by law, all persons who purchased or owned a Rolling Cooler in California.

 c. **The Massachusetts Class: During** the fullest period allowed by law, all persons who purchased or owned a Rolling Cooler in Massachusetts.

 d. **The Missouri Class:** During the fullest period **allowed** by law, all persons who purchased or owned a Rolling Cooler in Missouri.

 e. **The Illinois Class:** During the fullest period **allowed** by law, all persons who purchased or owned a Rolling Cooler in Illinois.

120.    Excluded from the Classes are Defendant and its officers, directors, management, employees, subsidiaries, and affiliates. Also excluded from the Classes are any district judge or magistrate judge to whom this case is assigned, as well as those judges' immediate family members, judicial officers and their personnel, and all governmental entities.

121.    Plaintiffs reserve the right to revise or amend the above definitions and to add additional Classes or Subclasses based on the discovery of new information.

122.    This action has been brought and may be properly maintained as a class action under Federal Rule 23 because there is a well-defined community of interest in the litigation for each proposed Class, the proposed Classes are each easily ascertainable, and Plaintiffs are proper representatives of the Classes:

123.    **Numerosity (Rule 23(a)(1))**: The potential members of each of the proposed Classes, as defined and identified herein, are more than ten thousand, and so numerous that joinder of all members of any Class is impracticable.

124.    **Typicality (Rule 23(a)(3))**: Plaintiffs' claims are typical of the Classes as they purchased one of the defective Rolling Coolers.

125.    **Commonality (Rule 23(a)(2))**: Common questions of fact and law exist as to all members of each Class and predominate over the questions affecting only individual members of each Class. These common questions include but are not limited to:

    a.    Whether the Rolling Coolers suffered from a dangerous Defect;

    b.    Whether the Rolling Coolers were defectively designed and/or manufactured and were not suitable for their intended uses;

    c.    Whether Defendant concealed from and failed to disclose to Plaintiffs and Class Members the defective and hazardous nature of the Rolling Coolers;

- 23 -

d.  Whether Defendant unjustly benefited from selling defective and unsafe Rolling Coolers whose value was artificially inflated;

e.  Whether Plaintiffs, and other Class Members, paid a higher price for the Rolling Coolers than they would have paid had they known of the Defects in those Rolling Coolers;

f.  Whether Defendant breached its express warranties with Plaintiffs and Class Members;

g.  Whether Defendant breached its implied warranties with Plaintiffs and Class Members;

h.  Whether Defendant's breaches or warranty violated state and federal warranty statutes, such as the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301, *et seq.*;

i.  Whether Igloo's acts and practices were unfair, deceptive, fraudulent, or unlawful in violation of state consumer protection statutes;

j.  Whether Plaintiffs and Class Members are entitled to an injunction and equitable relief, including but not limited to, restitution and disgorgement; and

k.  Whether Plaintiffs and Class Members are entitled to damages and other monetary relief, and if so, what is the appropriate amount of damages or other monetary relief.

126.  **Adequacy of Representation (Rule 23(a)(4))**: Plaintiffs will fairly and adequately protect the interests of the Classes respectively. Plaintiffs' interests do not conflict with those of Class Members, including members of the respective Classes they seek to represent. They have no

- 24 -

4934-5840-7284, v. 1

conflict of interest with other Class Members, are not subject to any unique defenses, and have retained competent and experienced counsel that has experience in complex consumer protection class action and cases, as well as sufficient financial and legal resources to prosecute this case on behalf of the class. Plaintiffs and counsel have no interest that is in conflict with or otherwise antagonistic to the interests of other Class Members. Plaintiffs and counsel are committed to vigorously prosecuting this action on behalf of the members of the Classes. Plaintiffs and counsel anticipate no difficulty in managing the litigation of this case as a class action.

127.    **Predominance and Superiority (Rule 23(b)(3))**: In addition to satisfying the prerequisites of Rule 23(a), Plaintiffs satisfy the requirements for maintaining a class action under Rule 23(b)(3). Questions of law and fact common to each Class predominate over any questions affecting only individual members of that Class, and a class action is superior to individual litigation and all other available methods for the fair and efficient adjudication of this controversy. Here, common issues predominate because liability can be determined on a class-wide basis even if some individualized damages determination may be required. Individualized litigation also presents a potential for inconsistent or contradictory judgments, and increases the delay and expense presented by complex legal and factual issues of the case to all parties and the court system. Furthermore, the expense and burden of individual litigation make it impossible for Class Members to individually redress the wrongs done to them and individual Class Members do not have a significant interest in controlling the prosecution of separate actions. By contrast, the class action device presents far fewer management difficulties and provides the benefits of a single adjudication, economy of scale, and comprehensive supervision by a single court. If this action is not certified as a class action, it will be impossible as a practical matter for many or most Class Members to bring individual actions to recover money from Defendant, due to the relatively small

4934-5840-7284, v. 1

amounts of such individual recoveries relative to the costs and burdens of litigation. Plaintiffs anticipate no difficulty in the management of this action which would preclude its maintenance as a class action.

128.    Plaintiffs reserve the right to add representatives for each of the Classes, provided Defendant is afforded an opportunity to conduct discovery as to those representatives.

## CLAIMS FOR RELIEF

### COUNT I
### Violation of the Magnuson-Moss Warranty Act (15 U.S.C. § 2301 *et seq.*)
### (On behalf of all Plaintiffs and the Nationwide Class)

129.    Plaintiffs repeat and re-allege each and every allegation contained in all preceding paragraphs as though fully set forth herein.

130.    Plaintiffs bring this cause of action on behalf of themselves and the Nationwide Class.

131.    This Court has jurisdiction to decide claims brought under 15 U.S.C. § 2301 by virtue of 28 U.S.C. §§ 1332 (a) and (d).

132.    Plaintiffs and Class Members are "consumers" within the meaning of the Magnuson-Moss Warranty Act ("MMWA"), 15 U.S.C. § 2301(3).

133.    Igloo is a "supplier" and "warrantor" within the meaning of the MMWA, 15 U.S.C. §§ 2301(4)-(5).

134.    The Rolling Coolers are "consumer products" within the meaning of the MMWA, 15 U.S.C. § 2301(1).

135.    The MMWA, 15 U.S.C. § 2301, et seq., imposes civil liability on any "warrantor" for failing to comply with any obligation under written and implied warranties. 15 U.S.C. § 2310(d)(1).

4934-5840-7284, v. 1

136. Defendant's implied warranty is an "implied warranty" within the meaning of 15 U.S.C. § 2301(7).

137. Defendant's express warranty is a "written warranty" within the meaning of 15 U.S.C. § 2301(6).

138. With respect to Class Members' purchases of the Rolling Coolers, the terms of Igloo's written warranties and implied warranty became part of the basis of the bargain between Defendant and Plaintiffs and members of the Nationwide Class.

139. Igloo's breaches of its warranties deprived Plaintiffs and other Class Members of the benefit of the bargain.

140. In its express written warranties, Igloo expressly warranted that it would repair or replace defects in material or workmanship free of charge if those defects become apparent during the warranty period.

141. Defendant failed to conduct a repair of or to replace the defective Rolling Coolers bought by Plaintiffs and Class Members and, in this respect and otherwise, failed to comply with the terms of its express warranties.

142. Defendant breached the implied warranty of merchantability. Without limitation, the Rolling Coolers have a tow handle that fails, as described above, which renders the Rolling Coolers unmerchantable.

143. Defendant also breached its warranty obligations by failing to provide a product that conformed to the promises and affirmations Igloo made about the Rolling Coolers in which Igloo falsely advertised and warranted that the Rolling Coolers were free of defects, safe, and fit for their intended purpose.

4934-5840-7284, v. 1

144. At the time of sale of each Rolling Cooler and/or at the time each Rolling Cooler left Igloo's control, Igloo knew, should have known, or was reckless in not knowing of the Rolling Coolers' inability to perform as warranted because of the Defect, but nonetheless failed to rectify the situation and/or disclose the Defect.

145. The Rolling Coolers were not altered by Plaintiffs or Class Members.

146. Igloo's conduct has rendered the warranties null and caused them to fail in their essential purposes.

147. The amounts in controversy of Plaintiffs' respective individual claims exceed the sum of $25. The amount in controversy in this action exceeds the sum of $50,000, exclusive of costs and interest, computed on the basis of all claims to be determined in this lawsuit.

148. Plaintiff Zannettino, on behalf of himself and other Class Members, nationwide, provided notice to Igloo on March 11, 2025, informing Igloo of Plaintiffs' intention to bring a class action claim under the MMWA based on Igloo's failures to comply with its obligations under its written warranties and implied warranties with respect to Rolling Coolers purchased nationwide by Class Members. This notice is attached as **Exhibit A**.

149. The notice described how Igloo breached its warranty obligations by:

    a. failing to provide a product that conformed to the promises and affirmations Igloo made about the Rolling Coolers;

    b. falsely advertising and warranting that the Rolling Coolers were free of defects and safe;

    c. failing to provide Rolling Coolers that were, in fact, safe, free of defects, and fit for their intended purpose; and

    d. by failing to repair or replace Rolling Coolers (at no cost to consumers).

4934-5840-7284, v. 1

150. Enclosed with the notice, provided to Igloo, was a copy of the initial Complaint filed in *Zannettino v. Igloo Products Corp.*, No. 2:25-cv-01917-MAA (C.D. Cal.).

151. The notice provided Igloo with a reasonable opportunity to correct its business practices and cure its breach of warranties under the MMWA.

152. As a direct and proximate result of Igloo's warranty breaches, Plaintiffs and members of the Nationwide Class sustained damages and other losses to be determined at trial because they would not have purchased the Rolling Coolers if they had known the truth about them, or would have paid substantially less for them, and because the Rolling Coolers have experienced diminution in value, including resale value, and loss of useful life as a result of Igloo's conduct. Indeed, several Plaintiffs stopped or limited use of their Rolling Coolers due to the Defect even before the Recall was announced.

153. Accordingly, Igloo's conduct damaged Plaintiffs and Class Members who are entitled to recover damages, specific performance, costs, attorneys' fees, and other appropriate relief.

154. Plaintiffs, individually and on behalf of the Class members, seek all damages permitted by law in an amount to be proven at trial.

## COUNT TWO
### Violation of the Delaware Consumer Fraud Act, 6 Del. Code §§ 2511, *et seq.*
### (On behalf of all Plaintiffs and the Nationwide Class)

155. Plaintiffs repeat and re-allege each and every allegation contained in all preceding paragraphs as though fully set forth herein.

156. Plaintiffs bring this cause of action on behalf of themselves and the Nationwide Class.

- 29 -

4934-5840-7284, v. 1

157.   Igloo is a "person" that is involved in the "sale" of "merchandise," as defined by 6 Del. Code § 2511(7), (8), and (6).

158.   Igloo advertised, offered, or sold goods or services, including the Rolling Coolers, both in and outside of Delaware and engaged in trade or commerce directly or indirectly affecting the people of Delaware and throughout the United States.

159.   Igloo is incorporated in Delaware and chose to conduct substantial business here, including business activities related to the marketing, sale, and eventual recall of the Rolling Coolers to Class Members in Delaware and throughout the United States. Igloo has directed and availed itself of Delaware's business friendly environment and laws, and in doing so obtained the benefits of Delaware law that impact its business both in Delaware and throughout the United States.

160.   Igloo specifically requested that claims pertaining to the deceptive acts and practices alleged in this specific case be litigated in Delaware and intended to file motions to obtain the transfer of the claims alleged herein to Delaware.

161.   Igloo used and employed deception, fraud, false pretense, false promise, misrepresentation, and the concealment, suppression, and omission of material facts with intent that others rely upon such concealment, suppression and omission, in connection with the sale and advertisement of merchandise, in violation of 6 Del. Code § 2513(a).

162.   Igloo's representations and omissions were material because they were likely to, and indeed did, deceive reasonable consumers.

163.   Igloo acted intentionally, knowingly, and maliciously to violate Delaware's Consumer Fraud Act, and recklessly disregarded Plaintiffs' and Class Members' rights.

4934-5840-7284, v. 1

164. Igloo misrepresented the safety and efficacy of the Rolling Coolers, omitted material information regarding the Defect, and was otherwise engaged in deceptive, common business practices. Igloo represented that its Rolling Coolers were fit for their intended purposes of safely serving as wheeled and towable or pullable coolers. Plaintiffs and the Class Members acted reasonably in relying on Igloo's misrepresentations and omissions, the truth of which they could not have discovered.

165. Igloo's unlawful trade practices were gross, oppressive, and aggravated, and Igloo breached the trust of Plaintiffs and the Class Members. Igloo's deceptive acts and omissions as alleged herein resulted in the purchase of Rolling Coolers both in and outside of Delaware.

166. As a direct and proximate result of Igloo's unlawful acts and practices, Plaintiffs and Class members have suffered and will continue to suffer injury, ascertainable losses of money or property, and monetary and non-monetary damages, including from not receiving the benefit of their bargain in purchasing the Rolling Coolers. Further, the Rolling Coolers have experienced diminution in value, including resale value, and loss of useful life as a result of Igloo's conduct. Indeed, several Plaintiffs stopped or limited use of their Rolling Coolers due to the Defect even before the Recall was announced.

167. Plaintiffs and Class members seek all monetary and non-monetary relief allowed by law, including damages under 6 Del. Code § 2525 for injury resulting from the direct and natural consequences of Igloo's unlawful conduct; injunctive relief; and reasonable attorneys' fees and costs.

**COUNT THREE**
**Breach of Express Warranty**
**(On behalf of Plaintiffs and the Proposed California, Massachusetts, Missouri, and Illinois Classes)**

- 31 -

4934-5840-7284, v. 1

168. Plaintiffs repeat and re-allege each and every allegation contained in all preceding paragraphs as though fully set forth herein.

169. Plaintiffs Castellano, Nguyen, Barragan, and Zannettino bring this cause of action on behalf of themselves and the California Class against Defendant. Plaintiff Trainor brings this cause of action on behalf of herself and the Massachusetts and Missouri Classes. Plaintiff Riffle brings this cause of action on behalf of herself and the Illinois Class.

170. Defendant was at all relevant times a merchant involved in the manufacturing, distributing, warranting, and/or selling of the Rolling Coolers.

171. Plaintiffs and other Class Members formed a contract with Defendant at the time they purchased the Rolling Coolers. The terms of that contract included the promise and affirmation that the Rolling Coolers would be "free from defects in material or workmanship under normal use and service."[25] This express warranty became part of the basis of the bargain and is part of a standardized contract between Plaintiffs and the other Class Members on the one hand, and Defendant on the other.

172. All conditions precedent to Defendant's liability under this contract have been performed by Plaintiffs and other Class Members.

173. Defendant breached the terms of this contract, including the express warranty, with Plaintiffs and the Class by not providing a Rolling Cooler that could provide the benefits described above (being free from defects).

174. As a result of Defendant's breach of its express warranty, Plaintiffs and the Class have been damaged in the amount of the costs associated with repairing the defects described

---

[25] https://www.igloocoolers.com/pages/warranty-service (This is a link to Igloo's warranty contained on its website, which states that it was last updated on March 18, 2021).

above, the costs associated with replacing the defective Rolling Coolers, as well as their Rolling Coolers' diminished value and loss of useful life as a result of the Defect.

175. As explained above, the limited warranty fails in its essential purpose because:

    a.    The Defect in the Rolling Coolers existed at the time the Rolling Coolers left Igloo's control, and;

    b.    Igloo, despite its knowledge of the Defect and its knowledge that the Rolling Coolers should be covered by the express limited warranty, failed to disclose – either through concealment or omission – the existence of the Defect in the Rolling Coolers at the point of sale (or following sale).

176. Plaintiffs and Class Members were not required to notify Igloo of the breaches of the express warranty because affording Igloo a reasonable opportunity to cure its breach of written warranty would have been futile given the Recall process set up by Defendant. Defendant's Recall process is entirely inconsistent with the terms of Defendant's express warranty. Nonetheless, Plaintiffs did provide Igloo with notice of their claims. *See* Exhibits A, B, C, D.

177. On information and belief, at all relevant times, Defendant's express warranty provided that "Igloo shall either repair the product free of charge or provide you with a replacement product if the product proves defective under the terms of this warranty." Yet, pursuant to the Recall process, Defendant is refusing to repair the product itself and is refusing to provide a replacement, non-defective Rolling Cooler.

178. On information and belief, at all relevant times, Defendant's express warranty provided that "If you have issues with your Igloo product that was purchased at a retail store, please return it to the retailer if it is within the retailers [sic] returns policy." Yet, pursuant to the

- 33 -

4934-5840-7284, v. 1

Recall process, Defendant instructs consumers who have purchased a Rolling Cooler not to try and take the cooler back to the store from which they bought it to seek a refund.[26]

179.    Plaintiffs, on behalf of themselves and other Class Members, seek an order requiring Igloo to provide legal and equitable relief, including damages, specific performance, attorneys' fees, costs of suit, and other relief as appropriate.

<u>**COUNT FOUR**</u>
**Breach of Implied Warranties**
<u>**(On behalf of Plaintiffs and the Proposed California, Massachusetts,**</u>
<u>**Missouri, and Illinois Classes)**</u>

180.    Plaintiffs repeat and re-allege each and every allegation contained in all preceding paragraphs as though fully set forth herein.

181.    Plaintiffs Castellano, Nguyen, Barragan, and Zannettino bring this cause of action on behalf of themselves and the California Class against Defendant. Plaintiff Trainor brings this cause of action on behalf of herself and the Massachusetts and Missouri Classes. Plaintiff Riffle brings this cause of action on behalf of herself and the Illinois Class.

182.    Defendant was and is at all relevant times a merchant involved in the manufacture, distribution, warranting, and/or selling of the Rolling Coolers.

183.    The Rolling Coolers were and are, at all relevant times, a "good(s)" within the relevant laws. Igloo knew or had reason to know of the specific uses for which the Rolling Coolers, as goods, were purchased.

184.    Igloo entered into agreements with retailers, suppliers, and/or contractors to sell its Rolling Coolers to be used by Plaintiffs and other Class Members.

---

[26] *See* https://igloo90qtrecall.expertinquiry.com/us-faq?lang=en (*last accessed* October 20, 2025) (Q. Can I take my cooler back to the store/place where I purchased it from to get a refund? A. No, please do not return your cooler to the store. Handle replacement kits will be sent by Igloo after registration is completed. To register, please fill out the recall registration form via the website www.igloo90qtrecall.expertinquiry.com.").

- 34 -

4934-5840-7284, v. 1

185.    Igloo provided Plaintiffs and Class Members with implied warranties that the Rolling Coolers were merchantable and fit for the ordinary purposes for which the Rolling Coolers were used and sold and were not otherwise injurious to consumers, that the Rolling Coolers would pass without objection in the trade, be of fair and average quality, and conform to the promises and affirmations of fact made by Igloo. These implied warranties became part of the basis of the bargain between Plaintiffs and other Class Members, on the one hand, and Igloo on the other hand.

186.    These implied warranties included, among other things: (i) a warranty that the Rolling Coolers manufactured, supplied, distributed, and/or sold by Igloo were safe and suitable for use as pullable or towable wheeled or rolling coolers; (ii) a warranty that the Rolling Coolers would be fit for their intended uses while the Rolling Coolers were being used; and (iii) a warranty that the Rolling Coolers would conform to all of the promises and affirmations of fact in the Rolling Coolers' advertising and marketing materials.

187.    Plaintiffs and Class Members purchased the Rolling Coolers relying on Defendant's skill and judgment in properly packaging and labeling the Rolling Coolers.

188.    Igloo breached the implied warranties because the Rolling Coolers were sold with the Defects, which prevents the Rolling Coolers from meeting even the most basic degree of fitness for ordinary use as a reliable and safe cooler product.

189.    Specifically, as alleged herein, the Rolling Coolers are not fit for their ordinary purpose of providing a reasonably safe product that is suitable for use as a towable and pullable Rolling Cooler because, inter alia, the Rolling Coolers' tow handles are Defective, rendering the Rolling Coolers unsafe and unreasonably dangerous. Put differently, these Rolling Coolers contained a fundamental Defect that rendered them unfit for their ordinary purpose, that diminished their value, including resale value, and that decreased their useful life. Indeed, several

- 35 -

4934-5840-7284, v. 1

Plaintiffs stopped or limited use of their Rolling Coolers due to the Defect even before the Recall was announced.

190. Igloo failed to adequately warn Plaintiffs and Class Members that the Rolling Coolers contained the Defects, were not safe for use as pullable or towable wheeled or rolling coolers, and could cause serious injuries to users' fingers.

191. Plaintiffs and Class Members were forced to completely discontinue their use of the Rolling Coolers either when they discovered the Defect or when Igloo ultimately revealed the existence of the Defect and admitted that the Rolling Coolers present an ongoing, serious safety risk. As conceded by Igloo in its Recall Notice, the Rolling Coolers are not safe or suitable for their intended uses, and therefore, there is a breach of the implied warranty of merchantability.

192. Moreover, due to the inadequate and unfair nature of the Recall, it is not required and would be futile for Plaintiffs to provide Igloo with a further opportunity to cure its breach. Nonetheless, Plaintiffs did provide Igloo with notice of the claims. *See* Exhibits A, B, C, D.

193. The Rolling Coolers were not altered by Plaintiffs or other Class Members.

194. The Rolling Coolers were defective when they left the exclusive control of Defendant.

195. Plaintiffs and other Class Members have had sufficient direct dealings with either Igloo or one of their authorized retailers, representatives, and agents to establish privity of contract between Igloo, on the one hand, and Plaintiffs and each Class Member, on the other hand.

196. Alternatively, privity is not required because Plaintiffs and each of the Class Members are the intended beneficiaries of Igloo's warranties and its sale through retailers. The retailers were not intended to be the ultimate consumers of the Rolling Coolers and have no rights under the warranties provided by Igloo. Igloo's warranties were designed for and intended to

4934-5840-7284, v. 1

benefit the consumer only, and Plaintiffs and Class Members were the intended beneficiaries of the Rolling Coolers.

197.    More specifically, Igloo's manifest intent was that their warranties apply to Plaintiffs and other Class Members as third-party beneficiaries. Likewise, it was reasonably foreseeable that Plaintiffs and other Class Members would be the intended beneficiaries of the Rolling Coolers and the warranties.

198.    Igloo's attempt to limit or disclaim any implied warranties is unconscionable and, therefore, unenforceable.

199.    Plaintiffs' complete inability to use the Rolling Coolers for their intended purpose, resulting from the fact that the Rolling Coolers did not meet the most basic degree of fitness for providing a reliable and safe cooler product, renders any attempts to limit or disclaim damages substantively unconscionable.

200.    Igloo's failure to adequately repair or replace the dangerous Rolling Coolers caused the warranty to fail in its essential purpose.

201.    As a direct and proximate result of the foregoing, Plaintiffs and Class Members suffered, and continue to suffer, financial damage and injury, and are entitled to all damages, in addition to costs, interest and fees, including attorneys' fees, as allowed by law.

### COUNT FIVE
**Unjust Enrichment**
**(On behalf of Plaintiffs and the Proposed California, Massachusetts, Missouri, and Illinois Classes)**

202.    Plaintiffs repeat and re-allege each and every allegation contained in all preceding paragraphs as though fully set forth herein.

203.    Plaintiffs Castellano, Nguyen, Barragan, and Zannettino bring this cause of action on behalf of themselves and the California Class against Defendant. Plaintiff Trainor brings this

cause of action on behalf of herself and the Massachusetts and Missouri Classes. Plaintiff Riffle brings this cause of action on behalf of herself and the Illinois Class.

204. To the extent required by law, this cause of action is alleged in the alternative to legal claims, as permitted under Fed. R. Civ. P. 8.

205. Moreover, Plaintiffs and the Classes are entitled to equitable relief as no adequate remedy at law exists.

206. Plaintiffs and Class Members conferred benefits on Defendant by purchasing Rolling Coolers.

207. Defendant has benefited from selling defective and unsafe Rolling Coolers whose value was artificially inflated by Defendant's concealment of the Defects in the Rolling Coolers, and Plaintiffs and other Class Members have overpaid for the Rolling Coolers.

208. As a result of its wrongful acts, concealments, and omissions of the defects in the Rolling Coolers, as described above, Defendant charged higher prices for their Rolling Coolers than the Rolling Coolers' true value. Plaintiffs and Class Members paid a higher price for the Rolling Coolers than they would have paid had they known of the defects in those coolers.

209. Plaintiffs and Class Members were not aware of the true facts about the Rolling Coolers and did not benefit from Defendant's conduct.

210. Defendant knowingly accepted the benefits of its unjust conduct.

211. It is inequitable for Defendant to retain these benefits.

212. As a result of Defendant's unjust enrichment, Plaintiffs and Class Members have suffered harm.

4934-5840-7284, v. 1

213.    Because Defendant's retention of the non-gratuitous benefits conferred on it by Plaintiffs and Class Members is unjust and inequitable, Defendant must pay restitution to Plaintiffs and Class Members for its unjust enrichment, as ordered by the Court.

214.    Plaintiffs, on behalf of themselves and other Class Members, seek an order requiring Igloo to make restitution and ordering that Igloo be disgorged of all profits arising out of the sale of the Rolling Coolers.

**COUNT SIX**
**Violation of the Song-Beverly Consumer Warranty Act**
**(Cal. Civ. Code § 1790, *et seq.*)**
**(On behalf of Plaintiffs Castellano, Nguyen, Barragan, and Zannettino and the Proposed California Class)**

215.    Plaintiffs repeat and re-allege each and every allegation contained in all preceding paragraphs as though fully set forth herein.

216.    Plaintiffs Castellano, Nguyen, Barragan, and Zannettino bring this cause of action on behalf of themselves and the California Class against Defendant.

217.    At all relevant times, Defendant was the manufacturer, distributor, warrantor, and/or seller of the Rolling Coolers. Defendant knew or should have known the specific uses for which the Rolling Coolers were purchased.

218.    Plaintiffs Castellano, Nguyen, Barragan, and Zannettino and California Class Members are "buyers" as that term is defined in Cal. Civil Code § 1791(b).

219.    The Rolling Coolers are "consumer goods" as that term is defined in Cal. Civil Code § 1791(a).

220.    Igloo provided Plaintiffs Castellano, Nguyen, Barragan, and Zannettino and other California Class Members with express warranties that the Rolling Coolers would be "free from defects in material or workmanship under normal use and service."

4934-5840-7284, v. 1

221. As detailed above, Igloo breached its warranty obligations by failing to provide a product that conformed to the promises and affirmations Igloo made about the Rolling Coolers, and by warranting and advertising that the Rolling Coolers were safe, free of defect, and fit for their intended purpose when they were, in fact, not. The Defects in the Rolling Coolers existed at the time the Rolling Coolers left Igloo's control and, yet, Igloo failed to disclose the existence of the defects either prior to, at the point of, or following sale of the Rolling Coolers until, at the earliest, February 13, 2025.

222. Moreover, Igloo warranted that "Igloo shall either repair the product free of charge or provide you with a replacement product if the product proves defective under the terms of this warranty," and that "If you have issues with your igloo product that was purchased at a retail store, please return it to the retailer if it is within the retailers [sic] returns policy." Yet, pursuant to the Recall process, Defendant is refusing to repair the product itself, is instructing affected consumers, including Plaintiffs Castellano, Nguyen, Barragan, and Zannettino and other California Class Members, not to return the defective Rolling Coolers to their retailers from whom they were purchased, and is refusing to provide a replacement Rolling Cooler.

223. Plaintiff Zannettino, on behalf of himself and other California Class Members, provided notice to Igloo on March 11, 2025, describing the defects found in the Rolling Coolers, and informing Igloo of Plaintiff Zannettino's intention to bring a class action claim under the Song-Beverly Consumer Warranty Act with respect to Igloo's express warranties. *See* Exhibit A.

224. Defendant has had a reasonable opportunity to cure the Defects found in the Rolling Coolers and has failed to do so.

225. Defendant provided Plaintiffs Castellano, Nguyen, Barragan, and Zannettino and other California Class Members with an implied warranty that the Rolling Coolers, and all parts

- 40 -

4934-5840-7284, v. 1

thereof, were merchantable and fit for the ordinary purposes for which they were sold. The Rolling Coolers, however, are not fit for their ordinary purposes because, inter alia, the tow handles contained an inherent Defect at the time of sale, which meant that they could cause significant injuries to users, including lacerations, crushed fingertips, and amputated fingertips.

226. Contrary to the applicable implied warranties, the Rolling Coolers at the time of sale and thereafter were not fit for their ordinary and intended purpose. Instead, the Rolling Coolers were defective.

227. Defendant's actions, as described herein, breached the implied warranty that the Rolling Coolers were of merchantable quality and fit for such use in violation of California Civil Code §§ 1792 and 1791.1.

228. Plaintiffs Castellano, Nguyen, Barragan, and Zannettino and other California Class Members have been harmed as a result of Defendant's breaches of its implied and express warranties and its violations of the Song-Beverly Consumer Warranty Act.

229. Plaintiffs Zannettino, Castellano, Nguyen, and Barragan, on behalf of themselves and other California Class Members, seek damages, civil penalties, and other legal and equitable relief pursuant to Cal. Civil Code § 1794.

**COUNT SEVEN**
**Violation of the California Consumers Legal Remedies Act ("CLRA"),**
**Cal. Civ. Code § 1750, *et seq.***
**(On behalf of Plaintiffs Castellano, Nguyen, Barragan, and Zannettino**
**and the Proposed California Class)**

230. Plaintiffs repeat and re-allege each and every allegation contained in all preceding paragraphs as though fully set forth herein.

231. Plaintiffs Castellano, Nguyen, Barragan, and Zannettino (for purposes of this claim, "California Plaintiffs") bring this cause of action on behalf of themselves and the California Class against Defendant.

- 41 -

232. California Plaintiffs and Class Members are "consumers" as defined by Cal. Civil Code § 1761(d) because they are individuals who sought or acquired by purchase Defendant's goods for personal, family, or household purposes.

233. California Plaintiffs purchased "goods" in the form of Rolling Coolers within the meaning of Cal. Civil Code § 1761(a).

234. Defendant is a "person" as defined by Cal. Civil Code § 1761(c).

235. California Plaintiffs' and Class Members' purchases of the Rolling Coolers are "transactions" as defined by Cal. Civil Code § 1761(e), as they are part of an agreement between a consumer and another person, whether or not the agreement is a contract enforceable by action, including the making of, and the performance pursuant to, that agreement.

236. The CLRA prohibits any person, including Defendant, from engaging in deceptive acts or practices undertaken in a transaction intended to result or resulting in the sale or lease of goods or services to any consumer.

237. Defendant's false and misleading policies, acts, and practices were intended by Defendant to result in the sale of Rolling Coolers to California Plaintiffs and Class Members. Through such conduct, Igloo violated the following sections of the CLRA:

      a.     Section 1770(a)(5): Representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities which they do not have;

      b.     Section 1770(a)(7): Representing that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another;

- 42 -

    c.      Section 1770(a)(9): Advertising goods or services with intent not to sell them as advertised;

    d.      Section 1770(a)(14): Representing that a transaction confers or involves rights, remedies, or obligations which it does not have or involve, or which are prohibited by law; and

    e.      Section 1770(a)(16): Representing that the subject of a transaction has been supplied in accordance with a previous representation when it has not.

238.    Igloo's unfair or deceptive acts or practice occurred repeatedly in Igloo's trade or business and were capable of deceiving, and did deceive, a substantial portion of the purchasing public.

239.    Throughout the relevant period, Igloo knew or reasonably should have known that the Rolling Coolers included the Defects described above which made them unsafe and unfit for their intended purpose.

240.    Igloo was under a duty to California Plaintiffs and Class Members to disclose the true nature of the Rolling Coolers because:

    a.      Igloo was in a superior position to know the true state of facts about the defects in the Rolling Coolers and the unsafe nature of the Rolling Coolers and their unfitness for their intended purpose;

    b.      Plaintiffs and California Class Members could not reasonably have been expected to learn or discover the defects or defective nature of the Rolling Coolers and thus that the Rolling Coolers were not in accordance with Igloo's representations;

- 43 -

4934-5840-7284, v. 1

c. Igloo knew that Plaintiffs and California Class Members could not reasonably have been expected to learn or discover the true state of facts about the defects or defective nature of the Rolling Coolers; and

d. Igloo actively concealed and failed to disclose the existence of the defects in the Rolling Coolers to Plaintiffs and the California Class.

241. Igloo knew or should have known about the existence of the defects in the Rolling Coolers that rendered them unsafe. Igloo's knowledge is evidenced both by consumer complaints to Igloo and the CPSC and by the re-designed tow handle implemented in January 2024. In failing to disclose the existence of the Defect in the Rolling Coolers, Igloo has knowingly and intentionally misrepresented material facts and breached its duty not to do so.

242. The Rolling Coolers' quality (including purportedly being free of defects) and safety are material to the average, reasonable consumer.

243. The misrepresented facts concerning the Rolling Coolers are also material because they concern one of the central attributes and functions of a rolling or wheeled cooler: its ability to be towed or pulled by a handle.

244. A reasonable consumer would not have purchased a Rolling Cooler if they knew that it could not safely be used because the tow handle, if used for its intended purpose of pulling the Rolling Cooler, was completely unsafe and hazardous.

245. Had Igloo disclosed the existence of the Defects in the Rolling Coolers in its advertising and marketing, California Plaintiffs and Class Members would have learned of the true nature of the Rolling Coolers and would have acted differently, including by not purchasing the Rolling Coolers or paying substantially less for them.

- 44 -

4934-5840-7284, v. 1

246.    Accordingly, California Plaintiffs and Class Members overpaid for their Rolling Coolers and did not receive the benefit of their bargain.

247.    Pursuant to Cal. Civil Code § 1780, California Plaintiffs and Class Members seek damages, restitution, injunctive relief, reasonable attorneys' fees and costs, and any other relief that the Court deems proper as described herein.

248.    Pursuant to the provisions of Cal. Civil Code § 1782(a), on March 11, 2025, Plaintiff Zannettino, through counsel, sent a letter to Defendant with notice of the alleged violations of the CLRA, demanding that Defendant correct such violations on behalf of himself and all similarly affected persons, and providing it with the opportunity to correct its business practices. *See* Exhibit A. That letter was sent to Defendant via certified mail, return receipt requested, and was received by Igloo on March 14, 2025. That letter was also personally served on Defendant's registered corporate agent in California on March 11, 2025.

249.    Pursuant to the provisions of § 1782(a), on April 1, 2025, Plaintiff Castellano, through counsel, sent a letter to Counsel for Defendant with notice of alleged violations of the CLRA, demanding that Defendant correct such violations on behalf of himself and all similarly affected persons, and providing Defendant the opportunity to correct its business practices. This notice is attached as **Exhibit B**. Plaintiff Castellano's letter was sent via email and certified mail.

250.    Pursuant to the provisions of § 1782(a), on April 8, 2025, Plaintiff Nguyen, through counsel, sent a letter to Defendant with notice of the alleged violations of the CLRA, demanding that Defendant correct such violations on behalf of herself and all similarly affected persons, and providing it with the opportunity to correct its business practices. This notice is attached as **Exhibit C**. That letter was sent to Defendant via certified mail.

4934-5840-7284, v. 1

251. Defendant made no response within thirty days of its receipt of the notices from Plaintiffs Zannettino, Castellano, or Nguyen. Thus, California Plaintiffs and Class Members also seek damages under the CLRA in an amount to be proven at trial.

252. Defendant's conduct described herein was malicious, fraudulent, and wanton in that Defendant intentionally and knowingly provided misleading information to California Plaintiffs and Class members and omitted material facts from them. California Plaintiffs and the California Class, thus, are entitled to, and seek, exemplary damages.

253. Plaintiffs also seek attorneys' fees and costs.

254. Pursuant to Cal. Civil Code § 1780(d), attached hereto as **Exhibit D**, is a declaration showing that this action has been commenced in the proper forum. Plaintiffs Castellano, Nguyen, and Zannettino previously filed suit in the Central District of California before stipulating to transfer this action to this Court.

**COUNT EIGHT**
**Violation of the False Advertising Law ("FAL")**
**Cal. Bus. & Prof. Code §§ 17500, *et seq.***
**(On behalf of Plaintiffs Zannettino, Castellano, Nguyen, and Barragan**
**and the Proposed California Class)**

255. Plaintiffs repeat and re-allege each and every allegation contained in all preceding paragraphs as though fully set forth herein.

256. Plaintiffs Zannettino, Castellano, Nguyen, and Barragan (for purposes of this claim, (California Plaintiffs") bring this cause of action on behalf of themselves and the California Class against Defendant.

257. California's False Advertising Law, Bus. & Prof. Code § 17500 *et seq*. provides that it is unlawful for any person, firm, corporation or association, or employee thereof, to "make or disseminate or cause to be made or disseminated before the public in this state , . . . any statement, concerning that real or personal property . . ., or concerning any circumstance or matter

- 46 -

of fact connected with the . . . disposition thereof, which is untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading[.]" "Any violation of the provisions of this section is a misdemeanor punishable by . . . a fine not exceeding two thousand five hundred dollars ($2,500) . . . ."

258.   Igloo's conduct alleged herein, including its failures to disclose and its misrepresentations regarding the nature, quality, and character of the Rolling Coolers, occurred in the course of Igloo's business and constitutes deceptive or false advertising in violation of the FAL.

259.   Such misrepresentations were disseminated to and made before the public of the state of California.

260.   Igloo marketed, advertised, and represented the Rolling Coolers as merchantable and fit for the ordinary purposes for which they were used and sold, and otherwise not injurious or hazardous to consumers.

261.   Igloo misrepresented the true nature, quality, and hazardous and defective character of the Rolling Coolers by failing to disclose the existence of the Defects described above and by misrepresenting that the Rolling Coolers were fit for their intended purposes of safely serving as wheeled and towable or pullable coolers.

262.   To the contrary, the Rolling Coolers were manufactured and/or designed with a dangerously Defective tow handle, as described herein.

263.   This Defect was unknown to and could not have been discovered by California Plaintiffs and the California Class prior to purchase.

264.   At the time it made the misrepresentations and of its omissions, Igloo either knew or should have known about the existence of the Defects in the Rolling Coolers, which rendered

- 47 -

them unsafe. That Igloo knew of the dangerous Defect is evidenced both by consumer complaints to Igloo and by its implementation of a re-designed tow handle in January 2024, as described in its Recall Notice. Igloo concealed, omitted, and failed to disclose this information to California Plaintiffs and Class Members.

265. Igloo has violated the FAL because its misrepresentations and omissions regarding the Rolling Coolers as set forth herein were material and likely to deceive a reasonable consumer.

266. The misrepresented facts concerning the Rolling Coolers were also material because they concern central functions of the Rolling Coolers—namely, that the Rolling Coolers are safe, free of defect, and can be pulled safely by their towing handles.

267. California Plaintiffs relied on Igloo's packaging, advertising, representations, and marketing materials regarding the Rolling Coolers when selecting and purchasing a Rolling Cooler, none of which disclosed the Defect or any safety issue with the Rolling Coolers. California Plaintiffs and Class Members have suffered an injury in fact, including the losses of money or property, as a result of Igloo's unfair, unlawful, and/or deceptive practices.

268. In reliance on the statements made in Igloo's advertising and marketing materials and Igloo's omissions and concealment of material facts regarding the quality and use of the Rolling Coolers, Plaintiffs Castellano, Nguyen, Barragan, and Zannettino and other California Class Members purchased the Rolling Coolers.

269. Had Igloo disclosed the existence of the defects in the Rolling Coolers, California Plaintiffs and Class Members would have learned of the true nature of the Rolling Coolers and would have acted differently, including by not purchasing the Rolling Coolers, or paying substantially less for them. Accordingly, California Plaintiffs and Class Members overpaid for their Rolling Coolers and did not receive the benefit of their bargain.

4934-5840-7284, v. 1

270.     As a direct and proximate result of Igloo's conduct as set forth herein, Igloo has obtained ill-gotten gains and/or profits, including but not limited to money from California Plaintiffs and Class Members who paid for the Rolling Coolers, which contained the defects.

271.     California Plaintiffs, on behalf of themselves and California Class Members, seek to enjoin further unlawful, unfair and/or fraudulent acts or practices by Igloo, to obtain restitution, attorneys' fees and costs, and all other relief allowed under California law.

**COUNT NINE**
**Violation of the Unfair Competition Law ("UCL"),**
**Cal. Bus. & Prof. Code §§ 17200, *et seq.***
**(On behalf of Plaintiffs Castellano, Nguyen, Barragan, and Zannettino**
**and the Proposed California Class)**

272.     Plaintiffs repeat and re-allege each and every allegation contained in all preceding paragraphs as though fully set forth herein.

273.     Plaintiffs Castellano, Nguyen, Barragan, and Zannettino (for purposes of this claim, "California Plaintiffs") bring this cause of action on behalf of themselves and the California Class against Defendant.

274.     To the extent required by law, this cause of action is alleged in the alternative to legal claims, as permitted under Fed. R. Civ. P. 8.

275.     Moreover, California Plaintiffs and the California Class are entitled to equitable relief as no adequate remedy at law exists.

276.     California's Unfair Competition Law (Cal. Bus. & Prof. Code §§ 17200, *et seq*., "UCL") is designed to protect consumers from unlawful, unfair, or fraudulent business acts or practices, including the use of any deception, fraud, false pretense, misrepresentation, or the concealment, suppression, or omission of any material fact.

277.     Accordingly, the UCL prohibits acts of "unfair competition," including any "unlawful, unfair or fraudulent business act or practice" and "unfair, deceptive, untrue or

- 49 -

misleading advertising." Cal. Bus. & Prof. Code § 17200.

278.    Igloo committed an unlawful business act or practice in violation of the UCL by systematically breaching its warranties, both express and implied, by violating the MMWA, by violating the Song-Beverly Consumer Warranty Act, and by violating the CLRA and other state consumer protection laws as alleged throughout the Complaint.

279.    Igloo has committed unfair business acts and practices in violation of the UCL because the acts and practice described herein, including but not limited to designing, marketing, and selling Rolling Coolers with a dangerous Defect that severely maimed and injured consumers that Defendant knew or should have known were unsafe to use for their intended purpose, as well as Defendant's failure to provide an adequate remedy or compensation, were immoral, unethical, oppressive, unconscionable and/or substantially injurious to California Plaintiffs and Class Members.

280.    Defendant's acts and practices were additionally unfair because the harm to California Plaintiffs and Class Members is and was substantial and not outweighed by any countervailing benefits to consumers or competition. Further, Defendant's acts and practices were unfair because they were contrary to legislatively declared or public policy.

281.    Defendant committed fraudulent business acts and practices in violation of the UCL when it concealed the existence and nature of the Defect affecting the Rolling Coolers. Defendant's representations, omissions, and active concealments about the Defect were likely to mislead the public with regard to the true hazardous and defective nature of the Rolling Coolers.

282.    Defendant's unfair, deceptive, unlawful, and fraudulent acts or practices occurred repeatedly in the course of Defendant's business and were likely to mislead a substantial portion of the purchasing public.

- 50 -

4934-5840-7284, v. 1

283.    California Plaintiffs relied on Defendant's representations, omissions, and nondisclosures, and would not have purchased, or would have paid less for, the Rolling Coolers had they known the truth.

284.    As a direct and proximate result of Defendant's unfair, unlawful, and fraudulent practices, California Plaintiffs have lost money.

285.    California Plaintiffs would consider purchasing a wheeled or rolling cooler from Defendant in the future if they could rely on Defendant's representations regarding those products. However, due to Defendant's history of concealing the dangerous Defect from the public, Plaintiffs are unable to rely on Defendant's representations without Court intervention.

286.    California Plaintiffs and Class Members seek an order enjoining Defendant from committing such unlawful, unfair, and fraudulent business practices, and seek restitution pursuant to Cal. Bus. & Prof. Code § 17203.  Plaintiffs also seek attorneys' fees and costs.

**COUNT TEN**
**Violation of the Massachusetts Consumer Protection Act, Mass. Gen. Laws Ann. Ch. 93A, §§ 1, *et seq.***
**(On behalf of Plaintiff Trainor and the Proposed Massachusetts Class)**

287.    Plaintiff Trainor individually and on behalf of the Massachusetts Class, repeats and re-alleges each and every allegation contained in all preceding paragraphs as though fully set forth herein.

288.    Igloo, Plaintiff Trainor, and Massachusetts Class members are "persons" as meant by Mass. Gen. Laws. Ann. Ch. 93A, § 1(a).

289.    Igloo operates in "trade or commerce" as meant by Mass. Gen. Laws Ann. Ch. 93A, § 1(b).

- 51 -

4934-5840-7284, v. 1

290. Igloo advertised, offered, or sold goods or services in Massachusetts and engaged in trade or commerce directly or indirectly affecting the people of Massachusetts, as defined by Mass. Gen. Laws Ann. Ch. 93A, § 1(b).

291. Demand for relief in a form substantially similar to that required by Mass. Gen. Laws Ann. Ch. 93A § 9(3) was sent to Igloo on or about June 13, 2025, via Certified Mail (attached as **Exhibit E**); however, Igloo did not remedy its unfair and deceptive acts and practices, nor did it offer relief to the Class members by way of settlement or judgment. Any additional demand is and would be futile. *See* Exhibits A, B, C.

292. Igloo engaged in unfair methods of competition and unfair and deceptive acts and practices in the conduct of trade or commerce, in violation of Mass. Gen. Laws Ann. Ch. 93A, § 2(a).

293. Igloo's acts and practices were "unfair" because they fall within the penumbra of common law, statutory, and established concepts of unfairness, given that Igloo solely held the true facts about its defective Rolling Coolers.

294. Consumers could not have reasonably avoided injury because Igloo's business acts and practices unreasonably created or took advantage of an obstacle to the free exercise of consumer decision-making. By withholding important information from consumers about the Defect in its Rolling Coolers, Igloo created an asymmetry of information between it and consumers that precluded consumers from taking action to avoid or mitigate injury.

295. Igloo's practices, omissions, and misrepresentations had no countervailing benefit to consumers or to competition.

- 52 -

296. Igloo intended to mislead Plaintiff Trainor and Massachusetts Class members and induce them to rely on its misrepresentations and omissions. Igloo's representations and omissions were material because they were likely to, and in fact did, deceive reasonable consumers.

297. Igloo acted intentionally, knowingly, and maliciously to violate Massachusetts's Consumer Protection Act, and recklessly disregarded Plaintiff and Massachusetts Class Members' rights. Igloo's knowledge of the Rolling Coolers' Defects put it on notice that the Rolling Coolers were not safe, fit for their intended purposes, or sold as advertised.

298. As a direct and proximate result of Igloo's unfair and deceptive practices, Plaintiff Trainor and Massachusetts Class Members have suffered and will continue to suffer injury, ascertainable losses of money or property, and monetary and non-monetary damages, including from not receiving the benefit of their bargain in purchasing the Rolling Coolers, loss of useful life of the Rolling Coolers, and increased time and expense in dealing with Rolling Cooler Defect.

299. Plaintiff and Massachusetts Class Members seek all monetary and non-monetary relief allowed by law, including actual damages, double or treble damages, injunctive or other equitable relief, and attorneys' fees and costs.

### COUNT ELEVEN
**Violation of Missouri Merchandise Practices Act, Mo. Rev. Stat. §§ 407.010, _et seq._**
**(On behalf of Plaintiff Trainor and the Proposed Missouri Class)**

300. Plaintiff Trainor individually and on behalf of the Missouri Class, repeats and re-alleges each and every allegation contained in all preceding paragraphs as though fully set forth herein.

301. Igloo is a "person" as defined by Mo. Rev. Stat. § 407.010(5).

302. Igloo advertised, offered, or sold goods or services in Missouri and engaged in trade or commerce directly or indirectly affecting the people of Missouri, as defined by Mo. Rev. Stat. § 407.010(4), (6) and (7).

303.   Plaintiff Trainor and Missouri Class members purchased goods in the form of the Rolling Coolers primarily for personal, family, or household purposes.

304.   Igloo engaged in unlawful, unfair, and deceptive acts and practices, in connection with the sale or advertisement of merchandise in trade or commerce, in violation of Mo. Rev. Stat. § 407.020(1), as described herein.

305.   Igloo's representations and omissions were material because they were likely to deceive reasonable consumers.

306.   Igloo intended to mislead Plaintiff Trainor and Missouri Class Members and induce them to rely on its misrepresentations and omissions.

307.   Igloo acted intentionally, knowingly, and maliciously to violate Missouri's Merchandise Practices Act, and recklessly disregarded Plaintiff Trainor's and Missouri Class Members' rights. Igloo's knowledge of the Rolling Coolers' Defect put it on notice that the Rolling Coolers were not as it advertised.

308.   As a direct and proximate result of Igloo's unlawful, unfair, and deceptive acts and practices, Plaintiff Trainor and Missouri Class Members have suffered and will continue to suffer injury, ascertainable losses of money or property, and monetary and non-monetary damages, including from not receiving the benefit of their bargain in purchasing the Rolling Coolers.

309.   Plaintiff Trainor and Missouri Class Members seek all monetary and non-monetary relief allowed by law, including actual damages, punitive damages, attorneys' fees and costs, injunctive relief, and any other appropriate relief.

**COUNT TWELVE**
**Violation of the Illinois Consumer Fraud and Deceptive Business Practices Act,**
**815 ILCS §§ 505, *et seq.***
**(On behalf of Plaintiff Riffle and the Proposed Illinois Class)**

310. Plaintiff Riffle individually and on behalf of the Illinois Class, repeats and re-alleges each and every allegation contained in all preceding paragraphs as though fully set forth herein.

311. Igloo is a "person" as defined by 815 ILCS § 505/1(c).

312. Plaintiff Riffle and Illinois Class Members are "consumers" as defined by 815 ILCS § 505/1(e).

313. Igloo's conduct as described herein was in the conduct of "trade" or "commerce" as defined by 815 ILCS § 505/1(f). Igloo's conduct is described in full detail above.

314. Igloo engaged in unfair methods of competition and unfair or deceptive acts or practices, including but not limited to the use or employment of any deception, fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression or omission of such material fact in violation of 815 ILCS § 505/2.

315. Igloo's representations and omissions were material because they were likely to deceive reasonable consumers.

316. Igloo intended to mislead Plaintiff Riffle and Illinois Class Members and induce them to rely on its misrepresentations and omissions.

317. The above unfair and deceptive practices and acts by Igloo were immoral, unethical, oppressive, and unscrupulous. These acts caused substantial injury that these consumers could not reasonably avoid; this substantial injury outweighed any benefit to consumers or to competition.

318. Igloo acted intentionally, knowingly, and maliciously to violate Illinois's Consumer Fraud Act, and recklessly disregarded Plaintiff Riffle's and Illinois Class Members'

- 55 -

rights. Igloo's knowledge that Rolling Coolers contained an undisclosed and dangerous Defect put it on notice that the Rolling Coolers were not as it advertised.

319. As a direct and proximate result of Igloo's unfair, unlawful, and deceptive acts and practices, Plaintiff Riffle and Illinois Class Members have suffered and will continue to suffer injury, ascertainable losses of money or property, loss of use, and monetary and non-monetary damages, including from not receiving the benefit of their bargain in purchasing their Rolling Coolers.

320. Plaintiff Riffle and Illinois Class Members seek all monetary and non-monetary relief allowed by law, including damages, restitution, punitive damages, and reasonable attorneys' fees and costs.

## COUNT THIRTEEN
### Violation of the Illinois Uniform Deceptive Trade Practices Act, 815 ILCS §§ 510/1, *et seq.*
### (On behalf of Plaintiff Riffle and the Proposed Illinois Class)

321. Plaintiff Riffle individually and on behalf of the Illinois Class, repeats and re-alleges each and every allegation contained in all preceding paragraphs as though fully set forth herein.

322. Igloo is a "person" as defined by 815 ILCS § 510/1(5).

323. Igloo engaged in deceptive trade practices in the conduct of its business, in violation of 815 ILCS § 510/2(a), including:

    a.    Representing that goods or services have characteristics that they do not have;

    b.    Representing that goods or services are of a particular standard, quality, or grade if they are of another;

    c.    Advertising goods or services with intent not to sell them as advertised; and

4934-5840-7284, v. 1

d.      Engaging in other conduct that creates a likelihood of confusion or misunderstanding.

324.    Igloo's representations and omissions were material because they were likely to deceive reasonable consumers.

325.    The above unfair and deceptive practices and acts by Igloo were immoral, unethical, oppressive, and unscrupulous. These acts caused substantial injury to Plaintiff Riffle and Illinois Class Members that they could not reasonably avoid; this substantial injury outweighed any benefits to consumers or to competition.

326.    As a direct and proximate result of Igloo's unfair, unlawful, and deceptive trade practices, Plaintiff Riffle and Illinois Class Members have suffered and will continue to suffer injury, ascertainable losses of money or property, loss of use, and monetary and non-monetary damages, including from not receiving the benefit of their bargain in purchasing their Rolling Coolers.

327.    Plaintiff Riffle and Illinois Class Members seek all monetary and non-monetary relief allowed by law, including reasonable attorney's fees.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs demands judgment on behalf of themselves and members of the Classes described above as follows:

A.      For an order certifying the Nationwide, California, Massachusetts, Missouri, and Illinois Classes under Rule 23 of the Federal Rules of Civil Procedure and naming Plaintiffs as representatives of the Classes, and Interim Co-Lead Class Counsel as Class Counsel;

B.      For an order declaring that Igloo's conduct violates the statutes referenced herein;

- 57 -

4934-5840-7284, v. 1

C.      For an order finding in favor of Plaintiffs and the respective Classes they represent on all counts asserted herein;

D.      For actual, compensatory, statutory, exemplary and/or punitive damages in amounts to be determined by the Court and/or jury;

E.      For injunctive relief enjoining the illegal acts detailed herein;

F.      For prejudgment interest on all amounts awarded;

G.      For an order of restitution and all other forms of equitable monetary relief; and

H.      For an order awarding Plaintiffs and the Classes their reasonable attorneys' fees and expenses and costs of suit.

## JURY TRIAL DEMAND

Plaintiffs demand a trial by jury on all issues so triable.

DATED: October 21, 2025
      Wilmington, Delaware

Respectfully submitted,

**THE ROSNER LAW GROUP LLC**

*/s/ Zhao Liu*
Frederick B. Rosner (DE 3995)
Zhao (Ruby) Liu (DE 6436)
824 Market Street, Suite 810
Wilmington, DE 19801
Phone: (302) 777-1111
Email: rosner@teamrosner.com
E-mail: liu@teamrosner.com

*Plaintiffs' Delaware Counsel*

**TUSAN LAW, PC**
Christina Tusan (*pro hac vice*)
ctusan@ctusanlaw.com
Adrian Barnes (*pro hac vice*)
abarnes@ctusanlaw.com
680 E. Colorado Blvd. #180
Pasadena, CA 91101

- 58 -

4934-5840-7284, v. 1

Telephone: (626) 418-8203
Facsimile: (626) 619-8253

**KAPLAN FOX & KILSHEIMER LLP**
Matthew B. George (*pro hac vice*)
*mgeorge@kaplanfox.com*
Laurence D. King (*pro hac vice*)
*lking@kaplanfox.com*
Clarissa R. Olivares (*pro hac vice*)
*colivares@kaplanfox.com*
Walter Howe (*pro hac vice*)
*whowe@kaplanfox.com*
1999 Harrison Street, Suite 1501
Oakland, CA 94612
Telephone: (415) 772-4700
Facsimile: (415) 72-4707

*Interim Co-Lead Class Counsel*

- 59 -