**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| **IN RE IGLOO PRODUCTS COOLER RECALL LITIGATION** | C.A. No. 1:25-cv-00298-JLH-EGT<br>CONSOLIDATED |

**PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS**
**CONSOLIDATED CLASS ACTION COMPLAINT**

**THE ROSNER LAW GROUP LLC**
Frederick B. Rosner (DE 3995)
Zhao (Ruby) Liu (DE 6436)
824 Market Street, Suite 810
Wilmington, DE 19801
Phone: (302) 777-1111
Email: *rosner@teamrosner.com*
Email: *liu@teamrosner.com*

*Plaintiffs' Delaware Counsel*

**TUSAN LAW, PC**
Christina Tusan (*pro hac vice*)
*ctusan@ctusanlaw.com*
Adrian Barnes (*pro hac vice*)
*abarnes@ctusanlaw.com*
680 E. Colorado Blvd. #180
Pasadena, CA 91101
Telephone: (626) 418-8203

**KAPLAN FOX & KILSHEIMER LLP**
Matthew B. George (*pro hac vice*)
*mgeorge@kaplanfox.com*
Laurence D. King (*pro hac vice*)
*lking@kaplanfox.com*
Clarissa R. Olivares (*pro hac vice*)
*colivares@kaplanfox.com*
Walter Howe (*pro hac vice*)
*whowe@kaplanfox.com*
1999 Harrison Street, Suite 1501
Oakland, CA 94612
Telephone: (415) 772-4700

DATED: December 22, 2025        *Interim Co-Lead Class Counsel*

# TABLE OF CONTENTS

**Page**

INTRODUCTION ............................................................................................................ 1

FACTUAL BACKGROUND ......................................................................................... 1

    A.    The Rolling Coolers ........................................................................... 1

    B.    The Recall .......................................................................................... 3

    C.    Plaintiffs' Experiences ...................................................................... 4

ARGUMENT ................................................................................................................. 4

I.      PLAINTIFFS HAVE ARTICLE III STANDING ............................................. 4

    A.    Plaintiffs Have Suffered Economic Losses Sufficient to Maintain Standing ......... 4

    B.    The Recall Does Not Defeat Plaintiffs' Overpayment Theory .............................. 7

    C.    Plaintiffs' Complaints About the Recall Are Not Immaterial ................................ 9

    D.    All Plaintiffs Have Standing to Seek Injunctive Relief ........................................ 11

    E.    Plaintiff Trainor Has Standing to Bring Claims Under Massachusetts Law ........ 12

II.    PLAINTIFFS' CONSUMER FRAUD CLAIMS SHOULD SUCCEED......................... 13

    A.    Plaintiffs Adequately Pleaded Their Consumer Fraud Claims ............................. 13

        1.    Plaintiffs Sufficiently Allege Their Claims Pursuant to Rule 9(b) ........... 13

        2.    Not All of Plaintiffs' Claims Are Required to Be Pleaded Under 9(b) .... 14

        3.    Plaintiffs Have Adequately Pleaded Igloo's Pre-Sale Knowledge .......... 15

    B.    Plaintiff Trainor Pleaded a Massachusetts Consumer Protection Claim .............. 20

III.   PLAINTIFFS ADEQUATELY ALLEGE BREACH OF WARRANTY CLAIMS ........ 21

    A.    Plaintiffs Have Adequately Alleged Their Express Warranty Claim .................. 21

        1.    The Rolling Coolers Defect Manifested Itself During the Duration of the Express Warranty Period ................................................................. 21

        2.    Igloo Refused to Repair the Rolling Coolers According to the Terms of the Express Warranty.......................................................................... 22

i

B.      Plaintiffs Have Adequately Alleged Their Implied Warranty Claims.................. 24

C.      Because Their Warranty Claims are Adequately Alleged, Plaintiffs'
         MMWA Claims Cannot Be Dismissed.................................................................... 26

IV.     PLAINTIFFS HAVE ADEQUATELY ALLEGED UNJUST ENRICHMENT............. 26

A.      Plaintiffs Do Not Have an Adequate Remedy at Law .......................................... 26

B.      Plaintiffs Adequately Allege that Defendant Unjustly Retained Benefits............ 28

V.      PLAINTIFFS ADEQUATELY PLEAD A BASIS FOR PUNITIVE DAMAGES ......... 29

CONCLUSION.................................................................................................................... 30

ii

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Adam v. Barone*,
  41 F.4th 230 (3d Cir. 2022) .................................................................................. 7, 10

*Alberti v. General Motors Corp.*,
  600 F. Supp. 1026 (D.D.C. 1984) .............................................................................. 23

*Am. Life Ins. Co. v. Stewart*,
  300 U.S. 203 (1937) .................................................................................................... 28

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) .................................................................................................... 29

*Barrera v. Samsung Elecs. Am., Inc.*,
  No. SACV 18-00481-CJC(PJWx), 2019 WL 1950295 (C.D. Cal. Feb. 27, 2019) ................. 27

*Begelfer v. Najarian*,
  381 Mass. 177, 409 N.E.2d 167 (1980) ...................................................................... 21

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) .................................................................................................... 29

*Benkle v. Ford Motor Co.*,
  2017 WL 9486154 (C.D. Cal. Dec. 22, 2017) ............................................................ 24

*Burbank v. BMW of N. Am., LLC*,
  No. CV2101711KMESK, 2022 WL 833608 (D.N.J. Mar. 21, 2022) ...................................... 17

*Campos v. Polaris, Inc.*,
  No. 5:23-cv-00172-SSS-SPx, 2024 WL 1816945 (C.D. Cal. Mar. 5, 2024) ......................... 28

*Carson v. HP Inc.*,
  750 F. Supp. 3d 376 (D. Del. 2024) ...................................................................... 13, 14

*Casavant v. Norwegian Cruise Line, Ltd.*,
  919 N.E.2d 165, *aff'd*, 460 Mass. 500 (2011) ........................................................ 21

*Coady v. Marvin Lumber & Cedar Co.*,
  167 F. Supp. 2d 166 (D. Mass. 2001) ........................................................................ 25

*Cont'l Ins. Co. v. Bahnan*,
  216 F.3d 150 (1st Cir. 2000) ...................................................................................... 20

*Cottrell v. Alcon Lab'ys*,
  874 F.3d 154 (3d Cir. 2017) ................................................................................ 4, 5, 6

4931-8109-0948, v. 2

*Cultural Experiences Abroad, LLC v. Colon*,
 No. CV 23-564-GBW-SRF, 2024 WL 492683 (D. Del. Feb. 8, 2024) ................................... 16

*Cunningham v. Ford Motor Co.*,
 No. 3:15-CV-00124, 2015 WL 13764982 (S.D. Cal. Dec. 7, 2015) ....................................... 25

*Daugherty v. Am. Honda Motor Co., Inc.*,
 144 Cal. App. 4th 824 (2006) .............................................................. 23

*Davis v. HSBC Bank Nevada, N.A.*,
 691 F.3d 1152 (9th Cir. 2012) .............................................................. 15

*Diaz v. FCA US LLC*,
 693 F. Supp. 3d 425 (D. Del. 2023) .......................................................... 18

*Diaz v. FCA US LLC*,
 No. 21-CV-00906-EJW, 2022 WL 4016744 (D. Del. Sept. 2, 2022) .............................. 12, 14

*Diaz v. Ford Motor Co.*,
 No. 23-CV-10029, 2023 WL 6164455 (E.D. Mich. 2023) ...................................... 11

*Doe v. Bayhealth Med. Ctr., Inc.*,
 No. N24C-09-002 FJJ, 2025 WL 1010403 (Del. Super. Ct. Apr. 4, 2025) ............................ 19

*Ellsworth v. U.S. Bank, N.A.*,
 908 F.Supp.2d 1063 (N.D. Cal. 2012) ..................................................... 15

*Fares v. Char-Broil, LLC*,
 No. 24 C 4878, 2025 WL 1191729 (N.D. Ill. Apr. 24, 2025) .................................... 29

*Flynn v. FCA US LLC*,
 327 F.R.D. 206 (S.D. Ill. 2018) ........................................................... 16

*Frederico v. Home Depot*,
 507 F.3d 188 (3d Cir. 2007) .............................................................. 13

*Friche v. Hyundai Motor, Am.*,
 No. 21-CV-01324-CJC, 2022 WL 1599868 (C.D. Cal. Jan. 28, 2022) ..................................... 8

*Geis v. Nestle Waters N. Am., Inc.*,
 321 F. Supp. 3d 230 (D. Mass. 2018) ..................................................... 12, 20

*Gentek Bldg. Prods., Inc. v. Sherwin-Williams Co.*,
 No. 1:02CV00013, 2005 WL 6778678 (N.D. Ohio Feb. 22, 2005) ............................ 22

*Gerbitz v. ING Bank, FSB*,
 967 F. Supp. 2d 1072 (D. Del. 2013) ...................................................... 15

iv

*Gertz v. Toyota Motor Corp.*,
    2011 WL 3681647 (C.D. Cal. Aug. 22, 2011)........................................................ 24

*Hadley v. Chrysler Grp., LLC*,
    624 F. App'x 374 (6th Cir. 2015) .................................................................. 9, 11

*Hafez v. Equifax Info. Servs., LLC*,
    666 F. Supp. 3d 455 (D.N.J. 2023) ...................................................................... 10

*Hershenow v. Enter. Rent–A–Car Co. of Boston, Inc.*,
    445 Mass. 790 (2006) ........................................................................................ 12

*Hicks v. Boeing Co.*,
    No. 13-393-SLR-SRF, 2014 WL 1284904 (D. Del. Mar. 21, 2014)....................... 30

*Hodsdon v. Mars, Inc.*,
    162 F.Supp.3d 1016 (N.D. Cal. 2016) ................................................................. 15

*Howard v. Turnbull*,
    316 S.W.3d 431 (Mo. Ct. App. 2010)................................................................ 28

*HPI Health Care Servs., Inc. v. Mt. Vernon Hosp.,*
*    Inc.*,
    545 N.E.2d 672 (Ill. 1989) ................................................................................. 28

*Huertas v. Bayer US LLC*,
    120 F.4th 1169 (3d Cir. 2024) ......................................................................... 5, 6

*Humphries v. Harley-Davidson, Inc.*,
    No. 7:23-cv-05524-JDA, 2025 WL 1836703 (D.S.C. July 3, 2025)...................... 29

*In re AZEK Bldg. Prods., Inc., Mktg. & Sales Pracs. Litig.* ("*In re AZEK*"),
    82 F. Supp. 3d 608 (D.N.J. 2015) ................................................................. 13, 14

*In re Chevrolet Bolt EV Battery Litig.*,
    633 F. Supp. 3d 921 (E.D. Mich. 2022)................................................................ 24

*In re Fisher-Price Rock 'N Play Sleeper Mktg., Sales Pracs., & Prod. Liab. Litig.* ("*In re Fisher-Price*")
    No. 1:19-MD-2903, 2023 WL 1822239 (W.D.N.Y. Feb. 8, 2023) ..................... 5, 10

*In re Johnson & Johnson Talcum Powder Prods. Mktg., Sales Pracs. & Liab. Litig.* ("*J&J*")
    903 F.3d 278 (3d Cir. 2018) .............................................................................. 6

*In re Mattel, Inc.*,
    588 F. Supp. 2d 1111 (C.D. Cal. 2008) ............................................................... 7

v

*In re McNeil Consumer Healthcare*,
    877 F. Supp. 2d 254 (E.D. Pa. 2012) .................................................................... 11

*In re Subaru Battery Drain Prods. Liab. Litig.*,
    No. 1:20-CV-03095-JHR-JS, 2021 WL 1207791 (D.N.J. Mar. 31, 2021) ............. 15

*Inst. for Env't Health, Inc. v. Nat'l Beef Packing Co., LLC*,
    No. CV 23-826, 2024 WL 5117412 (D. Del. Dec. 16, 2024) .................................. 14

*Int'l Bus. Machines Corp. v. Priceline Grp. Inc.*,
    No. CV 15-137-LPS-CJB, 2017 WL 1349175 (D. Del. Apr. 10, 2017), *report and*
    *recommendation adopted sub nom. Int'l Bus. Machines Corp. v. The Priceline Grp. Inc.*, No.
    CV 15-137-LPS, 2017 WL 11549735 (D. Del. May 10, 2017) .............................. 13

*Katz v. Fiat/Chrysler Automobiles*,
    No. 3:15-CV-0036, 2015 WL 2452419 (M.D. Pa. May 21, 2015) ........................... 6

*Letson v. Ford Motor Co.*,
    No. 23-CV-10420, 2024 WL 845844 (E.D. Mich. Feb. 28, 2024) ........................... 9

*Long v. Graco Children's Prods. Inc.*,
    No. 13-CV-01257-WHO, 2013 WL 4655763 (N.D. Cal. Aug. 26, 2013) ............ 15, 18, 19

*Lony v. E.I. du Pont de Nemours & Co.*,
    821 F. Supp. 956 (D. Del. 1993) ........................................................................... 19

*Ludwig v. FCA US LLC*,
    795 F. Supp. 3d 525 (D.N.J. 2025) ....................................................................... 16

*Mass. Eye & Ear Infirmary v. QLT Phototherapeutics, Inc.*,
    552 F.3d 47 (1st Cir. 2009) ................................................................................... 28

*McCabe v. Ford Motor Co.*,
    720 F. Supp. 3d 14 (D. Mass. 2024) ................................................................. 17, 18

*McNair v. Synapse Grp. Inc.*,
    672 F.3d 213 (3d Cir. 2012) ................................................................................. 12

*Medley v. Johnson & Johnson Consumer Companies, Inc.*,
    No. 10-CV-02291-DMC-JAD, 2011 WL 159674 (D.N.J. Jan. 18, 2011) ................ 6

*Muir v. Nature's Bounty, Inc.*,
    No. 15-CV-9835, 2017 WL 4310650 (N.D. Ill. Sep. 28, 2017) .............................. 27

*Northeastern Power Co. v. Balcke-Durr, Inc.*,
    No. 97-CV-4836, 1999 WL 674332 (E.D. Pa., Aug. 23, 1999) .............................. 23

4931-8109-0948, v. 2

*Orichian v. BMW of N. Am., LLC,*
  226 Cal.App.4th 1322 (2014) ........................................................................... 22

*Pacheco v. Ford Motor Co.,*
  No. 22-CV-11927, 2023 WL 2603937 (E.D. Mich. Mar. 22, 2023) ......................... 9

*Pagliaroni v. Mastic Home Exteriors, Inc.,*
  310 F. Supp. 3d 274 (D. Mass. 2018) ............................................................... 25

*Peckerar v. Gen. Motors, LLC,*
  No. 18-CV-2153-DMG, 2020 WL 6115083 (C.D. Cal. Aug. 17, 2020) ................... 8

*Persad v. Ford Motor Co.,*
  No. 17-12599, 2018 WL 3428690 (E.D. Mich. July 16, 2018) ............................. 17

*Pontes v. Rowan Univ.,*
  No. 20-2645, 2021 WL 4145119 (3d Cir. 2021) ................................................. 10

*Ponzio v. Mercedes-Benz USA, LLC,*
  447 F. Supp. 3d 194 (D.N.J. 2020) .............................................................. 17, 19

*Robinson v. Gen. Motors LLC,*
  No. CV 20-663-RGA-SRF, 2021 WL 3036353 (D. Del. July 19, 2021), *report and*
  *recommendation adopted,* No. 1:20-CV-00663, 2021 WL 7209365 (D. Del.
  Nov. 30, 2021) ........................................................................... 17, 18, 19

*Rule v. Fort Dodge Animal Health, Inc.,*
  604 F. Supp. 2d 288 (D. Mass. 2009) ............................................................... 26

*Ryan v. Greif, Inc.,*
  708 F. Supp. 3d 148 (D. Mass. 2023) ............................................................... 21

*S. Bay Chevrolet v. Gen. Motors Acceptance Corp.,*
  72 Cal. App. 4th 861 (1999) .......................................................................... 15

*Seidl v. Artsana USA, Inc.,*
  643 F. Supp. 3d 521 (E.D. Pa. 2022) ............................................................. 6, 7

*Senju Pharm. Co. v. Apotex, Inc.,*
  921 F. Supp. 2d 297 (D. Del. 2013) ................................................................. 14

*Serrano v. Campbell Soup Co.,*
  773 F. Supp. 3d 127 (D.N.J. 2025) .................................................................. 14

*Speerly v. Gen. Motors, LLC,*
  143 F.4th 306 (6th Cir. 2025) ........................................................................ 22

4931-8109-0948, v. 2

*Spokeo, Inc. v. Robins*,
  578 U.S. 330 (2016) ................................................................................................ 4

*Stockinger v. Toyota Motor Sales USA, Inc.*,
  No. CV 17-00035-VAP-KIS, 2017 WL 10574372 (C.D. Cal. July 7, 2017) ......................... 17

*Sugasawara v. Ford Motor Co.*,
  No. 18-CV-06159-LHK, 2019 WL 3945105 (N.D. Cal. Aug. 21, 2019) ................................ 8

*Teamsters Loc. 237 Welfare Fund v. AstraZeneca PharmS. LP*,
  136 A.3d 688 (Del. 2016) ...................................................................................... 16

*Thorne v. Pep Boys Manny Moe & Jack Inc.*,
  980 F.3d 879 (3d Cir. 2020) ................................................................................... 12

*Torres v. Botanic Tonics, LLC*,
  709 F. Supp. 3d 856 (N.D. Cal. 2023) ....................................................................... 15

*Van Zeeland v. McNally*,
  532 F. Supp. 3d 557 (N.D. Ill. 2021) ....................................................................... 27

*Wilson v. Hewlett-Packard Co.*,
  668 F.3d 1136 (9th Cir. 2012) ................................................................................ 16

*Winzler v. Toyota Motor Sales U.S.A., Inc.*,
  681 F.3d 1208 (10th Cir. 2012) ................................................................................ 9

*Yarger v. ING Bank, fsb*,
  285 F.R.D. 308 (D. Del. 2012) ............................................................................... 19

**Statutes**

U.S. Constitution
  art. III .......................................................................................................... 8, 9

15 U.S.C.
  § 2068(a)(2)(B) ................................................................................................. 10
  §§ 2069-70 ..................................................................................................... 10
  §§ 2301, *et seq*. (the "Magnuson Moss Warranty Act" ["MMWA"]) .................................... 26

6 Del. C.
  §§ 2511, *et seq*. (the "Delaware Consumer Fraud Act" ["DCFA"]) ................................. 16, 19

810 Ill. Comp. Stat.
  5/2-725 ......................................................................................................... 25

Cal. Bus. & Prof. Code
  §§ 17200, *et seq*. (the "Unfair Competition Law" ["UCL"]) ...................................... 14, 15, 18

Cal. Civil Code
  §§ 1750-1784 (the "Consumer Legal Remedies Act" ["CLRA"]).........................18
  § 3294 ...............................................................................................................29

Cal. Com. Code
  § 2725(2) ..........................................................................................................25

Mass. Gen. Laws
  ch. 93A, § 9....................................................................................................21
  ch. 93A, § 9(2)...............................................................................................20
  ch. 93A, § 11 .................................................................................................20
  ch. 106, § 2-725(1).........................................................................................25

Mo. Rev. Stat.
  § 400.2-725 .....................................................................................................25

## Rules

Federal Rules of Civil Procedure
  Rule 9(b) ..............................................................................................13, 14, 15

4931-8109-0948, v. 2

## INTRODUCTION

Defendant Igloo Products Corp. ("Defendant" or "Igloo") manufactures, markets, and sells the Igloo Flip & Tow 90 Quart Rolling Coolers ("Rolling Coolers") at issue in this case. As described herein, the Rolling Coolers suffer from an extremely dangerous defect that may cause fingertip amputation and crushing hazards. By placing a dangerously defective product in the stream of commerce, Defendant has run afoul of consumer protection and warranty laws. Indeed, no consumer would have purchased a Rolling Cooler had they known of these consequences, nor would they continue to use the Rolling Cooler after Defendant recalled them—and especially not after Defendant told consumers to stop using them. Likewise, Defendant's recall was insufficient for many reasons, including that the replacement part offered by Defendant required consumers to engage with the part of the Rolling Cooler that poses fingertip amputation and crushing hazards. For the reasons stated herein, Defendant's motion to dismiss ("MTD") should be denied.

## FACTUAL BACKGROUND

### A.    The Rolling Coolers

Igloo designed, manufactured, and sold its Rolling Coolers with dangerously defective tow handles that can "pinch consumers' fingertips against the cooler, posing fingertip amputation and crushing hazards" (the "Defect"). Consolidated Class Action Complaint, D.I. 58, ("Compl.") ¶¶ 2-4, 28.[1] Trading on its recognizable brand name and large market share, Igloo charged a premium price of approximately $80-$140 for Rolling Coolers at retailers such as Costco, Target, Dicks, Amazon, and on its own online store. *Id.* ¶¶ 3, 10, 33-34, 75-76, 83-84, 91, 96-97. Igloo advertised, offered, and sold these Rolling Coolers in Delaware, California, Massachusetts, Missouri, Illinois,

---

[1] *See also* Compl. p. 2, n. 4 (citing U.S. Consumer Product Safety Commission ("CPSC"), https://www.cpsc.gov/Recalls/2025/Igloo-Expands-Recall-of-90-Qt-Rolling-Coolers-Due-to-Fingertip-Amputation-and-Crushing-Hazards-Total-Recalled-Now-Nearly-1-2-Million ("CPSC Expanded Cooler Recall Page")).

and throughout the United States. *Id.* ¶¶ 32, 158, 259, 290. Igloo's advertisements touted a "comfort-grip swing-up rear handle" that "reduces towing force by up to 50% for easy pulling," and the Rolling Coolers' use for outdoor activities such as fishing, with its "oversized wheels" that "provide all-terrain mobility." *Id.* ¶¶ 9, 36. Crucially, however, Igloo falsely advertised and warranted that the Rolling Coolers were safe, free of defects, and fit for their intended purpose. *Id.* ¶¶ 115, 143, 149, 221, 260, 267, 297, 307, 318.

Igloo concealed the dangerous Defect for many years even though it knew of the Defect due to consumers' complaints and reports of severe injuries. *Id.* ¶¶ 16-17**,** 54, 240-41, 264. As of May 8, 2025, the CPSC reported that "Igloo has received 78 fingertip injuries from the cooler's tow handle, 26 of which led to finger amputations, bone fractures, and cuts." *Id*. ¶ 8, 54, p. 12 n.24. Igloo also knew or should have known of the Defect through adequate pre-market testing, but Igloo either recklessly did not conduct thorough testing or concealed that information. *Id.* ¶¶ 56. Eventually, complaints and injuries reported by consumers to Igloo over many years caused Igloo to implement the re-designed tow handle in January 2024 as described in its recall notice. *Id.* ¶¶ 17, 55, 264. While taking months if not years to develop, design, test, and manufacture the redesigned handle, Igloo still concealed the Defect until February 2025—more than a year after the re-designed tow handle was implemented. *Id*. Igloo had a continuous duty to disclose the safety Defect to Plaintiffs and other Class Members, but it did not. *Id.* ¶¶ 113-114, 144, 240, 264.

Plaintiffs and Class Members relied on Igloo's advertising and marketing materials, and on Igloo's omissions and concealment of material facts regarding the Defect, when they purchased the Rolling Coolers. *Id.* ¶¶ 116, 242-244, 268. They would not have purchased the Rolling Cooler had they known it could crush, lacerate, or amputate their or their families' fingertips while in ordinary use. *Id.* ¶¶ 47, 49, 64, 73, 81, 88, 94, 100, 152, 244-45, 283. Thus, Plaintiffs and Class

Members suffered an economic loss in the form of overpayment at the moment they purchased the defective Rolling Coolers. *Id.* ¶¶ 48-49, 57, 63, 67, 72, 80, 87, 93, 99, 246. The Rolling Coolers' defect also caused them to suffer economic losses due to diminution in value, including resale value, and loss of useful life of their Rolling Coolers. *Id.* ¶¶ 18, 48, 50, 152, 166, 174, 189, 298.

### B.    The Recall

As a result of the Defect, Igloo and the CPSC announced on February 13, 2025, a recall of approximately 1,060,000 Rolling Coolers manufactured prior to January 2024 and sold in the United States (the "Recall"). Compl. ¶¶ 5, 102. On May 8, 2025, shortly after the filings of initial complaints in this case, Igloo expanded its Recall to cover a total of 1.2 million dangerously defective Rolling Coolers. *Id.* ¶¶ 6, 40, 102. As part of the Recall, consumers have been advised to "immediately stop using the recalled coolers and contact Igloo for a free replacement handle." *Id*. ¶¶ 7, 41, 50-51. Despite this urgency, the notice element of the Recall was inadequate because most Rolling Cooler owners likely did not learn of the Recall from Igloo—as was the case for multiple Plaintiffs. *Id*. ¶¶ 15, 62, 79, 86, 92, 98.

The Recall itself is entirely inadequate, illusory, and insufficient because it provides no monetary remedy, no refund, no replacement, and instead offers only to send a replacement handle kit ("Replacement Handle Kit") to consumers with instructions on how to remove the "recalled tow handle" and replace it with the "new tow handle." *Id.* ¶¶ 11, 50, 63, 72, 80, 87, 93, 99. The Recall process requires consumers to contact Igloo to request the promised Replacement Handle Kit. *Id.* ¶¶ 12, 52 Moreover, the Recall does not offer a timely remedy because Igloo estimates the process for registration and receipt of a Replacement Handle Kit will take between two and four weeks. *Id.* ¶ 13. If and when they receive the Replacement Handle Kit, consumers must risk injury or amputation by interacting with the dangerous, unsafe components and attempting to install a new handle themselves, even if they lack the dexterity and skills to do so. *Id.* ¶¶ 14, 53, 71.

### C.    Plaintiffs' Experiences

Plaintiffs Anthony Zannettino, Robert Castellano, Vy Nguyen, Jose Barragan, Kathryn Trainor, and Kristen Riffle purchased Rolling Coolers beginning in October 2022 at retailers including Walmart, Dick's Sporting Goods, Costco, and Target in California, Missouri,[2] and Illinois. Compl. ¶¶ 59-100. Some of the Plaintiffs have experienced pinched fingers and discontinued use of the Rolling Coolers due to the dangerous Defect and Recall. *Id.*

## ARGUMENT

## I.    PLAINTIFFS HAVE ARTICLE III STANDING

### A.    Plaintiffs Have Suffered Economic Losses Sufficient to Maintain Standing

To satisfy the "'irreducible constitutional minimum' of standing" . . . plaintiff "must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016) (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992)), *as revised* (May 24, 2016)). "To allege injury in fact sufficiently, a plaintiff must claim that he or she suffered an invasion of a legally protected interest that is concrete and particularized and actual or imminent, not conjectural or hypothetical." *Cottrell v. Alcon Lab'ys*, 874 F.3d 154, 162–63 (3d Cir. 2017) (citing *id.* at 339) (internal quotations omitted). "Typically, a plaintiff's allegations of financial harm will easily satisfy each of these components, as financial harm is a classic and paradigmatic form of injury in fact." *Id.* at 163 (cleaned up). "The injury-in-fact requirement is very generous to claimants, demanding only that the claimant allege some specific, identifiable

---

[2] Plaintiff Kathryn Trainor purchased her Rolling Cooler in Missouri and brought it to her residence in Massachusetts where she used it. Compl. ¶¶ 89-90.

trifle of injury." *Id.* at 162 (citing *Bowman v. Wilson*, 672 F.2d 1145, 1151 (3d Cir. 1982)) (cleaned up).

Here, Defendant claims that Plaintiffs Zannettino, Castellano, Trainor, and Riffle have not suffered injury in fact because they have not suffered economic loss, but that ignores Plaintiffs' allegations.[3] Memorandum in Support of Motion to Dismiss ("MTD"), D.I. 63, at 7-9. Defendant's argument rests on the premise that that these Plaintiffs "have not suffered any adverse consequences attributable to their [Rolling] Coolers[]" and thus "[t]he economic benefit they received from their [Rolling] Coolers is the precise benefit for which they bargained—a cooler that functions as intended[.]" *Id.* at 8-9.

Plaintiffs have plausibly alleged that the Rolling Coolers are dangerous and unusable due to the Defect and thus are necessarily worth less than the product when properly manufactured. Indeed, "[t]he logic requires little elaboration: if a product contains a manufacturing flaw so severe that it cannot be used, it is not worth the full price purchasers paid with the understanding they would be able to use all of the product." *Huertas v. Bayer US LLC*, 120 F.4th 1169, 1175 (3d Cir. 2024); *see also, e.g.*, *In re Fisher-Price Rock 'N Play Sleeper Mktg., Sales Pracs., & Prod. Liab. Litig.* ("*In re Fisher-Price*"), No. 1:19-MD-2903, 2023 WL 1822239, at *3 (W.D.N.Y. Feb. 8, 2023) (". . . there is no market for [] products discounted to reflect the risk of death or injury."). Here, Defendant advertised the Rolling Coolers as "reliable, convenient, and transportable[,]" but failed to disclose a Defect that "can crush, lacerate, or even amputate consumers' fingers." Compl. ¶ 42. Defendant then recalled the Rolling Coolers and advised Plaintiffs not to use them. *Id.* ¶¶ 50-51. As a result, Plaintiffs "suffered an economic loss at the moment of their purchase of the

---

[3] Defendant apparently concedes that Plaintiffs Nguyen and Barragan have satisfied the injury in fact element as they alleged physical injury from the Coolers. MTD at 7-9; CAC ¶¶ 77, 85. Likewise, Defendant does not challenge any other element of standing.

defective Rolling Coolers in the form of overpayment and diminution in value." *Id.* ¶ 48. Plaintiffs are not required to plead "any adverse consequences attributable to their [Rolling] Coolers" beyond this because each Plaintiff alleges financial harm. MTD at 8; *Cottrell*, 874 F.3d at 167. "There can be no dispute that this harm is particularized." *Cottrell*, 874 F.3d at 167.

Defendant's reliance on *In re Johnson & Johnson Talcum Powder Prods. Mktg., Sales Pracs. & Liab. Litig.* ("*J&J*"), 903 F.3d 278, 285 (3d Cir. 2018) does not foreclose Plaintiffs' theory of economic injury. Indeed, the Third Circuit recently explained that "a plaintiff must 'allege facts that would permit a factfinder to determine that the economic benefit she received in purchasing the [product] was worth less than the economic benefit for which she bargained.'" *Huertas*, 120 F.4th at 1176 (quoting *J&J*, 903 F.3d at 285). More simply, a plaintiff is required to allege that she purchased a product that was worth less than what she paid for. *Id.* As explained above, Plaintiffs have done so. Likewise, "*J&J* is distinguishable because the Court explicitly recognized that it did 'not involve allegations of a defective product.'" *Id.* (quoting *J&J*, 903 F.3d at 281). Unlike *J&J*, the case at hand also deals with a durable good intended to be used for many years—since Plaintiffs still have the Coolers, "and it is [a product] that can be used more than once, [their] alleged damages are less abstract than if [they] had already used up the product." *Seidl v. Artsana USA, Inc.*, 643 F. Supp. 3d 521, 530 (E.D. Pa. 2022).

Defendant's remaining authorities are inapposite. In *Katz v. Fiat/Chrysler Automobiles*, No. 3:15-CV-0036, 2015 WL 2452419, at *2 (M.D. Pa. May 21, 2015), the plaintiff was not the one who purchased the vehicle that was recalled. Here, Plaintiffs all purchased the Rolling Coolers and would not have done so, "or would have paid less and/or not have bought them on the same terms, if the Defect had been disclosed." Compl. ¶ 47. In *Medley v. Johnson & Johnson Consumer Companies, Inc.*, No. 10-CV-02291-DMC-JAD, 2011 WL 159674, at *2 (D.N.J. Jan. 18, 2011),

the court reasoned that "[o]nce the product had been consumed, [] there was no economic injury for Plaintiffs to complain of[.]" Here, the Coolers are durable goods that are still in Plaintiffs' possession. *Seidl*, 643 F. Supp. 3d at 530. ("Typically, when the defective or misrepresented product is a durable good still in plaintiff's possession, it retains some value and plaintiff's benefit-of-the-bargain damages are less than the entire purchase price of the product.") (citation omitted). Defendant's argument that the Rolling Coolers were safe as to the Plaintiffs who did not experience physical injury is incorrect for the additional reason that all of the Rolling Coolers were defective at the moment of sale and delivery, as evidenced by Igloo's command for consumers to "immediately stop using the recalled coolers." *E.g.*, Compl. ¶ 41.

## B.    The Recall Does Not Defeat Plaintiffs' Overpayment Theory

Defendant's argument that Plaintiffs lack standing because they could have been made whole by accepting the Replacement Handle is unavailing. MTD at 8-9, n.3. The Third Circuit confirmed that a plaintiff's rejection of a defendant's offer of a refund does not impact standing, stating: "[A]s every first-year law student learns, the recipient's rejection of an offer leaves the matter as if no offer had ever been made." *Adam v. Barone*, 41 F.4th 230, 235 (3d Cir. 2022) (quoting *Campbell-Ewald Co. v. Gomez*, 577 U.S. 153, 162 (2016) (internal quotations omitted)). In this case, Plaintiffs were not even offered a refund or any compensation whatsoever. Similarly, they were under no obligation to accept Defendant's offer of a replacement part that would have required them to interface with the dangerous components of the Rolling Cooler and attempt to fix them on their own. *In re Mattel, Inc.*, 588 F. Supp. 2d 1111, 1117 (C.D. Cal. 2008) ("[U]nilateral offering of a remedy by a defendant does not change the fact that a plaintiff has been injured."). Indeed, Plaintiff Castellano received the replacement handle but is hesitant to avail himself of the Replacement Handle Kit due to the potential danger in light of Defendant's warning. Compl. ¶ 71.

Next, Defendant argues that "the Recall resolves the precise 'Defect' that forms the basis for Plaintiffs' overpayment theory." MTD at 10. However, Plaintiffs have alleged that they would not have purchased the Coolers had they known of the misrepresentations and omissions made by Defendant. Compl. ¶¶ 64, 73, 81, 88, 94, 100, 152. Indeed, even Defendant's own citation recognizes that "when a consumer alleges that he or she would not have purchased property, or would have paid less for it, had the seller not misrepresented the property or failed to disclose its limitations, the consumer has plausibly alleged an injury-in-fact." *Sugasawara v. Ford Motor Co.*, No. 18-CV-06159-LHK, 2019 WL 3945105, at *6 (N.D. Cal. Aug. 21, 2019) (quoting *In re Chrysler-Dodge-Jeep Ecodiesel Mktg., Sales Practices, & Prod. Liab. Litig.*, 295 F. Supp. 3d 927, 945 (N.D. Cal. 2018)); *see also Friche v. Hyundai Motor, Am.*, No. 21-CV-01324-CJC, 2022 WL 1599868, at *3 (C.D. Cal. Jan. 28, 2022) ("respectfully disagree[ing]" with *Sugasawara*'s holding that a plaintiff lacks Article III standing where they allege that they would not have purchased a defective product had they known of the defect at the time of purchase.).

And, as explained below, *see* Sec. I(C), *infra*, Plaintiffs allege that that the Recall is insufficient for several reasons, including that Plaintiffs stopped use of the Coolers (as instructed by Igloo), the Recall is illusory (including that the Replacement Handle is dangerous to install given the Defect)[4], and the Recall has not made them whole because it provided no refund or replacement of the entire Rolling Cooler. Compl. ¶¶ 11, 14, 63, 72, 80, 87, 93, 99. That is sufficient, and Defendant's authorities support that proposition. *Peckerar v. Gen. Motors, LLC*, No. 18-CV-2153-DMG, 2020 WL 6115083, at *2 (C.D. Cal. Aug. 17, 2020) ("Plaintiffs assert that the Recall has not in fact remedied the Alleged Defect . . . . If the Recall repair has not fixed the defect, it did

---

[4] *Sugasawara* is also distinguishable for this reason because there, defendant offered a professional to make the repair. 2019 WL 3945105, at *2.

not restore Plaintiffs' vehicle to its pre-defect value."). *Hadley v. Chrysler Grp., LLC* is likewise distinguishable because there, Plaintiffs "do not allege that they ever stopped using their vehicle" and "they do not allege any facts in support of their diminished value claim[.]" 624 F. App'x 374, 379 (6th Cir. 2015). Here, Plaintiffs have alleged that they stopped using the Rolling Coolers due to the Defect—which supports a theory of economic harm based on loss of use—and that they could not sell their Rolling Coolers as a result of the Recall—which supports their diminished value claim. Compl. ¶¶ 69, 78, 166, 189.

Finally, *Pacheco v. Ford Motor Co.*, No. 22-CV-11927, 2023 WL 2603937 (E.D. Mich. Mar. 22, 2023) and *Letson v. Ford Motor Co.*, No. 23-CV-10420, 2024 WL 845844 (E.D. Mich. Feb. 28, 2024) are distinguishable because they deal with prudential mootness, *not* Article III standing. However, it is worth noting that if Plaintiffs can show that they "will be left without a complete remedy," as they have alleged, Plaintiffs' claims cannot be dismissed under the doctrine of prudential mootness. *Winzler v. Toyota Motor Sales U.S.A., Inc.*, 681 F.3d 1208, 1211-12 (10th Cir. 2012) (citing *U.S. v. W. T. Grant Co.*, 345 U.S. 629, 633 (1953)).

### C.    Plaintiffs' Complaints About the Recall Are Not Immaterial

Defendant's Recall was insufficient for several material reasons. First, Defendant attacks Plaintiffs' allegation that they cannot sell their Coolers and thus have been damaged by a significantly diminished resale market for the used Coolers. MTD at 11. Defendant points to the "CPSC's Resellers Guide to Selling Safer Products," but that guide is designed for retailers and conflicts with the plain information on the CPSC website for consumers which states: "If you are a consumer looking to resell some of your old products . . ., it's important to know that **it is illegal to sell any recalled product.**"[5] (emphasis in original). Additionally, the statute at issue strictly

---

[5] https://www.cpsc.gov/Business--Manufacturing/Business-Education/ResaleThrift-Stores-Information-Center/Stop-Online-Sale-of-Recalled-Products, *accessed* December 19, 2025. If the

prohibits the sale of any consumer product "subject to voluntary corrective action taken by the manufacturer, in consultation with the Commission" and imposes criminal and civil liability for violations. 15 U.S.C. §§ 2068(a)(2)(B); 2069-70; *see also* Compl. ¶ 50. Even if there were a legal resale market for the recalled Coolers (which does not appear to be the case), the Recall would scare off potential buyers and negatively impact their resale value given the severity of the Defect, which includes a risk of amputation with normal use. *See In re Fisher-Price*, 2023 WL 1822239, at *3. And, as explained above, Defendant's unilateral offering of a replacement part does not change the fact that Plaintiffs were injured. *See Adam*, 41 F.4th at 235.

Second, Defendant argues that "[a]s to the mere 2-4 week wait time, none of the Uninjured Plaintiffs claim to have incurred any out-of-pocket costs as a result of this wait[.]" MTD at 11. Defendant's argument is misplaced. Plaintiff alleges that "Defendant's Recall process requires consumers to contact Defendant to request the promised Replacement Handle Kit, but does not inform consumers when they can expect their Replacement Handle Kit to arrive." Compl. ¶ 52. Not only does this support Plaintiffs' contention that the Recall provided inadequate notice, but it also supports Plaintiffs' contention that they were injured by loss of use. *Pontes v. Rowan Univ.*, No. 20-2645, 2021 WL 4145119, at *4, n.5 (3d Cir. 2021) (loss of use of wages confers standing).

Third, Defendant argues that "Plaintiffs do not proffer a single *factual* allegation plausibly demonstrating that installing the Replacement Handle poses a safety risk to them." MTD at 12. That is not true. Plaintiffs allege that "when the Replacement Handle Kit does arrive, consumers must attempt to install it themselves, even if they lack the required tools or skills. Given the nature of the Defect, including potential laceration or amputation associated with the tow handles, a

---

Court is to accept Defendant's judicial notice of a government website, so too should it accept Plaintiffs'. *Hafez v. Equifax Info. Servs., LLC*, 666 F. Supp. 3d 455, 457 n.2 (D.N.J. 2023).

remedy that requires consumers to remove the dangerous tow handles and then try to follow instructions to install replacement handles themselves is wholly inadequate and potentially dangerous." Compl. ¶ 53. Further, Plaintiff Castellano pleaded he was hesitant to use the Replacement Handle Kit given the warning that his fingers could be amputated. *Id*., ¶ 71. This goes beyond any future physical or medical consequence as Defendant argues because, through its Recall, Defendant required a lay consumer to replace the very component that was the cause of amputations. MTD at 12 (citing *Koronthaly v. L'Oreal USA, Inc.*, 374 F. App'x 257, 259 (3d Cir. 2010) (addressing concerns of unregulated lead in lipstick)).

Finally, this issue is also the exact reason the efficacy of the Replacement Handle "remains to be seen"—and at least one Plaintiff has alleged that they were hesitant to implement the replacement part, rendering the Recall insufficient, and Plaintiffs have alleged that they cannot sell their defective Rolling Coolers, effectively depriving them of their value. *See* MTD at 13. Defendant's authorities are distinguishable for this reason. *In re McNeil Consumer Healthcare*, 877 F. Supp. 2d 254, 273 (E.D. Pa. 2012) (no allegation that recall was insufficient); *Diaz v. Ford Motor Co*., No. 23-CV-10029, 2023 WL 6164455, at *4 (E.D. Mich. 2023) (plaintiffs did not "allege[] that they incurred any economic loss beyond the diminished value of their vehicles. And they have not plausibly alleged that the diminished value will remain after the repairs are completed"); *Hadley*, 624 F. App'x at 380 (no specific allegations that recall was insufficient, or that cars retained diminished value).

### D.    All Plaintiffs Have Standing to Seek Injunctive Relief

Defendant's argument that Plaintiffs "cannot claim that [Igloo's] alleged practices are likely to fool them in the future" misses the point. MTD at 14. Injunctive relief is allowable where the product is dangerous and Defendant could have given a complete non-defective replacement (instead of merely a replacement part that could potentially cause the complained-of defect) or a

- 11 -

full refund. Unlike plaintiffs in Defendant's authorities, Plaintiffs still have the Coolers in their possession and continue to experience at least diminished value because, as explained above, they cannot sell them or return them for a refund. Compl. ¶ 50; 59-100; *compare to Thorne v. Pep Boys Manny Moe & Jack Inc.*, 980 F.3d 879, 896 (3d Cir. 2020) (plaintiff premised plea for injunctive relief on her allegation that she and other putative class members will make future purchases from defendant even if the alleged safety risk was not remediated); *McNair v. Synapse Grp. Inc.*, 672 F.3d 213, 224 (3d Cir. 2012) (plaintiffs do not allege that they intend to become subscribers again). And, "unlike the plaintiffs in [*J&J*] and *McNair*, who 'were already aware of the allegedly deceptive business practices from which they sought future protection,' and were thus unlikely to contract with or purchase from the defendants again, Plaintiffs here are not insulated against future harms flowing from [Defendant's] conduct, which has allegedly damaged them already." *Diaz v. FCA US LLC*, No. 21-CV-00906-EJW, 2022 WL 4016744, at \*14 (D. Del. Sept. 2, 2022) (citing *J&J*, 903 F.3d at 293; *McNair*, 672 F.3d at 225). At minimum, these are questions of fact to be deferred until the record is complete.

### E.    Plaintiff Trainor Has Standing to Bring Claims Under Massachusetts Law

Defendant is wrong that Plaintiff Trainor does not have standing to bring class claims under Massachusetts law. MTD at 14-17. While Plaintiff Trainor alleges she purchased her Cooler in Missouri and, accordingly, her overpayment "injury necessarily occurred in Missouri at the moment she purchased her Cooler[,]" MTD at 16, Plaintiff Trainor also experienced diminution in value and loss of use injuries. These injuries occurred in Massachusetts. *See* Compl. ¶ 90. "On its face, chapter 93A does not require that a plaintiff reside in Massachusetts to bring a claim." *Geis v. Nestle Waters N. Am., Inc.*, 321 F. Supp. 3d 230, 241 (D. Mass. 2018) (citations omitted). "Moreover, to bring an action under § 9, there is no requirement that the allegedly deceptive activity had to occur 'primarily and substantially' in Massachusetts." *Id.*; *see also Hershenow v.*

4931-8109-0948, v. 2

*Enter. Rent–A–Car Co. of Boston, Inc*., 445 Mass. 790, 802 (2006) ("Every consumer is, of course, entitled to the full protection of law. If any person invades a consumer's legally protected interests, and if that invasion causes the consumer a loss—whether that loss be economic or noneconomic— the consumer is entitled to redress under our consumer protection statute."). Thus, Plaintiff Trainor's injury has a causal relationship to Massachusetts because she suffered her diminution in value and loss of use injuries in Massachusetts. *Id.*

## II.   PLAINTIFFS' CONSUMER FRAUD CLAIMS SHOULD SUCCEED

### A.    Plaintiffs Adequately Pleaded Their Consumer Fraud Claims

#### 1.    Plaintiffs Sufficiently Allege Their Claims Pursuant to Rule 9(b)

For allegations sounding in fraud, Rule 9(b) imposes a heightened pleading standard: "'a party must state with particularity the circumstances constituting fraud or mistake,' but '[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally.'" *In re AZEK Bldg. Prods., Inc., Mktg. & Sales Pracs. Litig.* ("*In re AZEK*"), 82 F. Supp. 3d 608, 613 (D.N.J. 2015) (quoting Fed. R. Civ. P. 9(b)). To satisfy Rule 9(b), a party "must plead or allege the date, time and place of the alleged fraud or otherwise inject precision or some measure of substantiation into a fraud allegation." *Frederico v. Home Depot*, 507 F.3d 188, 200 (3d Cir. 2007). "Put another way, the pleader must allege the 'who, what, when, where and how of the events at issue.'" *Carson v. HP Inc.*, 750 F. Supp. 3d 376, 388-89 (D. Del. 2024) (citation omitted) (plaintiffs failed to state misrepresentations they saw, not "who" made them).

Defendant improperly asserts that Plaintiffs have failed to plead the "who" by naming Igloo Products Corporation as Defendant. MTD at 18. But Defendant's authorities requiring a plaintiff to specifically name individuals as opposed to entities are limited to patent cases, where "'only individuals, rather than corporations . . . owe a duty of candor to the PTO.'" *Int'l Bus. Machines Corp. v. Priceline Grp. Inc.*, No. CV 15-137-LPS-CJB, 2017 WL 1349115, at *8 (D. Del. Apr. 10,

2017) (quoting *Avid Identification Sys., Inc. v. Crystal Imp. Corp.*, 603 F.3d 967, 974 n.1 (Fed. Cir. 2010)), *report and recommendation adopted sub nom. Int'l Bus. Machines Corp. v. The Priceline Grp. Inc.*, No. CV 15-137-LPS, 2017 WL 11549735 (D. Del. May 10, 2017); *Inst. for Env't Health, Inc. v. Nat'l Beef Packing Co., LLC*, No. CV 23-826, 2024 WL 5117412, at *6-7 (D. Del. Dec. 16, 2024) (dealing with patent claims); *Senju Pharm. Co. v. Apotex, Inc.*, 921 F. Supp. 2d 297, 307 (D. Del. 2013) (same). Further, in cases involving omissions, Rule 9(b)'s standards are relaxed because "one cannot identify with specificity *one particular date or time or speaker* that relates to an *omission*—since by definition, when it comes to an omission, the idea is that the defendant simply *never* said anything at *any* particular time." *Carson*, 750 F. Supp. at 394. Here, Plaintiffs have pleaded that Defendant Igloo Products Corp. is the entity that manufactured and advertised the Coolers. *See*, *e.g.*, Compl. ¶¶ 1-3, 27-28. Thus, "Plaintiffs have injected sufficient particularity into their fraud allegations to put Defendant on notice as to the specific misconduct at issue. Rule 9(b) requires no more." *In re AZEK*, 82 F. Supp. 3d at 621.

### 2.    Not All of Plaintiffs' Claims Are Required to Be Pleaded Under 9(b)

Defendant is generally correct that "[t]he state consumer protection statutes at issue here must be likewise evaluated under the precedents of this Circuit interpreting the applicability of Rule 9(b)." *Diaz*, 2022 WL 4016744, at *23 (evaluating CLRA, FDUTPA, and GBL claims, not UCL claims). However, precedent confirms that Rule 9(b) may not apply to all of Plaintiffs' claims. Specifically, Plaintiffs' UCL claims under California law, Cal. Bus. & Prof. Code §§ 17200, *et seq.*, can stand on the "unfair" prong, because a separate theory of liability applies to each of the three prongs that prohibit fraudulent, unlawful and unfair conduct, of the UCL. *Serrano v. Campbell Soup Co.*, 773 F. Supp. 3d 127, 162 (D.N.J. 2025); Compl. ¶¶ 272-286. Courts in California and in this Circuit have held that a claim under the "unfair" prong may be satisfied under a balancing test that determines a business practice is "unfair" when "immoral,

- 14 -

unethical, oppressive, unscrupulous or substantially injurious to consumers." *S. Bay Chevrolet v. Gen. Motors Acceptance Corp.*, 72 Cal. App. 4th 861, 887 (1999); )*Hodsdon v. Mars, Inc.*, 162 F. Supp. 3d 1016, 1026 (N.D. Cal. 2016; *see also Gerbitz v. ING Bank, FSB*, 967 F. Supp. 2d 1072, 1080 (D. Del. 2013) ("the unfair practice allegation at least meets the balancing test, so, again, the Court will not dismiss the UCL claim"); *In re Subaru Battery Drain Prods. Liab. Litig.*, No. 1:20-CV-03095-JHR-JS, 2021 WL 1207791, at *22, n.10 (D.N.J. Mar. 31, 2021) (holding that allegations of unfair and unlawful conduct under the UCL are not subject to 9(b)). This test requires courts to "examine the practice's impact on its alleged victim, balanced against the reasons, justifications and motives of the alleged wrongdoer," and "weigh the utility of the defendant's conduct against the gravity of the harm to the alleged victim." *Davis v. HSBC Bank Nevada, N.A.*, 691 F.3d 1152, 1169 (9th Cir. 2012) (internal quotations and citation omitted). The balancing test is "lenient" on a motion to dismiss. *Ellsworth v. U.S. Bank, N.A.*, 908 F.Supp.2d 1063, 1090 (N.D. Cal. 2012). As explained in *Torres v. Botanic Tonics, LLC*:

> The Legislature intended the unfair-practices prong to reach beyond existing law, to capture practices that should result in liability but that legislatures and courts had not yet envisioned. Depending on the facts, if a seller knows that a product poses a serious danger to its consumers and chooses to sell it without warning of the danger, that seller could potentially be liable under the unfair-practices prong even if there would be no liability for failure to disclose under any other statutory or common law cause of action.

709 F. Supp. 3d 856, 858–59 (N.D. Cal. 2023). Thus, based on Defendant's near-identical conduct as the defendant in *Torres*, "the unfair practice allegation at least meets the balancing test[.]" *Gerbitz*, 967 F. Supp. 2d at 1080; *Long v. Graco Children's Prods. Inc.*, No. 13-CV-01257-WHO, 2013 WL 4655763, at *9 (N.D. Cal. Aug. 26, 2013) ("Balancing the utility of the defendants' conduct against the gravity of the alleged harm, the unfairness scale weighs in [Plaintiffs'] favor.").

### 3.    Plaintiffs Have Adequately Pleaded Igloo's Pre-Sale Knowledge

Plaintiffs "must sufficiently allege that a defendant was aware of a defect at the time of

sale to survive a motion to dismiss," *Wilson v. Hewlett-Packard Co.*, 668 F.3d 1136, 1145 (9th Cir. 2012), but critically, "[k]nowledge, unlike other factual allegations that must be alleged with particularity in the fraud context, 'may be alleged generally.'" *Ludwig v. FCA US LLC*, 795 F. Supp. 3d 525, 559 (D.N.J. 2025) (quoting Fed. R. Civ. P. 9(b)). "Therefore, allegations as to knowledge need only pass the lower pleading bar under Rules 8 and 12(b)(6)." *Id.* (citing *Gotthelf v. Toyota Motor Sales, U.S.A., Inc.*, 525 F. App'x 94, 103 n.15 (3d Cir. 2013) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 686–87 (2009)); *Maugain v. FCA US LLC*, No. 22-116, 2023 WL 1796113, at *8 (D. Del. Feb. 7, 2023)); *see also*, *e.g.*, *Flynn v. FCA US LLC*, 327 F.R.D. 206, 220 (S.D. Ill. 2018) (Missouri's knowledge requirement for omission claims "relates to whether [defendant] knew, or upon reasonable inquiry would have known, the material facts it allegedly failed to disclose."). Notably, in Delaware, while common law fraud requires proof that "any misrepresentation had to be made with the intent to induce action or inaction by the plaintiff," the Delaware Consumer Fraud Act ("DCFA"), Del. C. Title 6, §§ 2511, *et seq.*, "does not require proof of such intent." *Teamsters Loc. 237 Welfare Fund v. AstraZeneca PharmS. LP*, 136 A.3d 688, 693 (Del. 2016) (internal quotations and citation omitted).

There is no dispute, in this case, as to whether a dangerous defect exists; only a factual dispute as to when Defendant knew of the Defect. That cannot be resolved at the pleading stage. *See*, *e.g.*, *Cultural Experiences Abroad, LLC v. Colon*, No. CV 23-564-GBW-SRF, 2024 WL 492683, at *2 (D. Del. Feb. 8, 2024) ("At the pleading stage . . . 'the plaintiff is entitled to have its allegations taken as true and all factual disputes drawn in its favor.'") (quoting *Miller Yacht Sales, Inc. v. Smith*, 384 F.3d 93, 97 (3d Cir. 2004)), *report and recommendation adopted*, No. CV 23-564-GBW-SRF, 2024 WL 1509211 (D. Del. Mar. 18, 2024)).

Defendant ignores several of Plaintiffs' allegations, including that it would have taken Igloo months if not years to develop, design, test, and manufacture the redesigned handle it began manufacturing in January 2024. *See* Compl. ¶¶ 17, 55. This alone is sufficient to support Plaintiffs' allegation that Igloo was aware of and was concealing the Defect prior to Plaintiffs' purchases, as the redesign can be analogized to, in the car defect context, a Technical Service Bulletin ("TSB") evidencing defendants' knowledge of and proposed repair for a defective part. In that context, "many courts have concluded that the existence of multiple NHTSA complaints, together with the issuance of service bulletins by the manufacturer, is a sufficient basis from which to infer a defendant's knowledge." *McCabe v. Ford Motor Co*., 720 F. Supp. 3d 14, 30 (D. Mass. 2024) (denying motion to dismiss where plaintiffs alleged that defendant had issued TSBs in addition to alleging the existence of consumer complaints); *see also*, *e.g.*, *Stockinger v. Toyota Motor Sales USA, Inc*., No. CV 17-00035-VAP-KIS, 2017 WL 10574372, at *16-17 (C.D. Cal. July 7, 2017) (same); *Persad v. Ford Motor Co*., No. 17-12599, 2018 WL 3428690, at *3 (E.D. Mich. July 16, 2018) (same); *Ponzio v. Mercedes-Benz USA, LLC*, 447 F. Supp. 3d 194, 231 (D.N.J. 2020) (same); *Robinson v. Gen. Motors LLC*, No. CV 20-663-RGA-SRF, 2021 WL 3036353, at *6 (D. Del. July 19, 2021) (same), *report and recommendation adopted*, No. 1:20-CV-00663, 2021 WL 7209365 (D. Del. Nov. 30, 2021). *Burbank v. BMW of N. Am., LLC*, No. CV2101711KMESK, 2022 WL 833608, at *5 (D.N.J. Mar. 21, 2022) is also instructive. There, plaintiff cited a recall that was issued shortly after his purchase of the vehicle in question. *Id.* The court held "[t]hat temporal proximity, while hardly ironclad, may suggest an inference of knowledge." *Id.* The simple fact is that Igloo implemented the (purported) repair to the Defect over a year before announcing the Recall—likely so it could later argue in litigation that its warranties expired—and that (purported) repair took months if not years to develop and implement. Accordingly, "[t]he

Court need not determine whether the [consumer] complaints, without more, would have been enough to plausibly allege knowledge." *McCabe*, 720 F. Supp. 3d at 30.

Plaintiffs additionally allege that the CPSC alone reported that "Igloo has received 78 fingertip injuries from the cooler's tow handle, 26 of which led to finger amputations, bone fractures, and cuts," Compl. ¶ 8, 54, p. 12 n.24, and that Defendant also knew or should have known of the Defect through adequate pre-market testing, but either recklessly did not conduct thorough testing or did and concealed that information from the public, *id.* ¶¶ 56, 239. Plaintiffs anticipate that discovery will confirm these allegations. Plaintiffs plausibly allege that Defendant had exclusive knowledge of the Defect for years but prioritized a business solution on its own time frame over warning Plaintiffs of the risk to them and their families. *See Robinson*, 2021 WL 3036353, at *5-7. A ruling for Defendant would be incentivizing manufacturers to continue concealing and selling unsafe products—a result the consumer fraud laws that are intended to protect consumers, not corporations, cannot be construed to countenance.

Defendant's cases are unavailing. In *Diaz*, plaintiffs attempting to establish pre-sale knowledge relied on a TSB the court had *already concluded* "d[id] not even address the [] Defect." *Diaz v. FCA US LLC*, 693 F. Supp. 3d 425, 432 (D. Del. 2023). That is not the case here, and regardless, as noted above, the weight of authority favors finding that TSBs, when actually related to the defect at issue, can establish pre-sale knowledge. As for Defendant's arguments about the quantity of consumer complaints, the near-80 complaints reported by the CPSC and any other complaints made to Igloo are available exclusively to Defendant, who should not be able to escape culpability by hiding the evidence. In any event, in *Long*, the court sustained UCL and CLRA claims where, based on only five pre-sale complaints, a car seat manufacturer "knew or should have known about the harness buckle defects but nonetheless 'actively concealed the existence

and nature of the defects.'" 2013 WL 4655763, at *6-9 (citation omitted). Finally, Defendant relies on cases discussing post-sale consumer complaints to argue that its own redesign of the tow handle cannot support Plaintiffs' allegation of pre-sale knowledge, but this misses the mark. A redesign undertaken by a defendant corporation is akin to a TSB issued by a defendant corporation—not a consumer complaint—and "TSBs issued post-sale can support an inference of the seller's pre-sale knowledge of a defect." *Robinson*, 2021 WL 3036353, at *6; *see Ponzio*, 447 F. Supp. at 231 (pre-sale knowledge plausible where plaintiff alleged that "it takes between six months to more than one year (or longer) from the start of a defect investigation to the issuance of a TSB").

### A.    Plaintiffs Have Sufficiently Alleged That Defendant's Unlawful Conduct Occurred in Delaware

Defendant's claim that Plaintiffs have not alleged any unlawful conduct occurring in Delaware is incorrect. The DCFA prohibits "unfair or deceptive merchandising practices in the conduct of any trade or commerce in part or wholly within" the state of Delaware. 6 Del. C. § 2512. The Act should "be 'liberally construed' because its purpose is to 'protect consumers…from unfair or deceptive merchandising practices.'" *Doe v. Bayhealth Med. Ctr., Inc.*, No. N24C-09-002 FJJ, 2025 WL 1010403, at *12 (Del. Super. Ct. Apr. 4, 2025) (quoting 6 Del. C. § 2512). The DCFA also "protects non-residents as well as residents of Delaware." *Yarger v. ING Bank, fsb*, 285 F.R.D. 308, 323 (D. Del. 2012) (*citing In re Warfarin Sodium Antitrust Litig.*, 212 F.R.D. 231, 248 n.15 (D. Del. 2002), *aff'd*, 391 F.3d 516 (3d Cir. 2004)). A sufficient nexus to the state of Delaware exists where defendant "regularly conducts business in the State of Delaware, and . . . the alleged misrepresentation commenced in Delaware." *Lony v. E.I. du Pont de Nemours & Co.*, 821 F. Supp. 956, 961-62 (D. Del. 1993).

Igloo is a Delaware corporation that specifically sought to have these claims heard in this Court. Compl., ¶¶ 27, 29, 31, 160, 254; *see also, Zannettino v. Igloo Products Corp.*, No. 1:25-cv-

00744, D.I. 29, 32. The complaint specifies that Igloo advertises and sells its products, including the Rolling Cooler, nationwide, including in Delaware. Compl. at ¶ 158. Subsequently, Plaintiff alleges that Igloo employed these unfair practices, including the alleged misrepresentations and omissions, of material facts about the Rolling Coolers by advertising and selling them to Delaware consumers either in person or online, and that Delaware consumers were included in Igloo's nationwide Recall. *Id.* at 161-162; 166. Plaintiff also alleges that consumers in Delaware were injured due to Defendant's unlawful conduct when they purchased the Rolling Cooler in reliance of Igloo's misrepresentations and omissions, and would not have purchased them, had they been aware of the Defect. *Id.* at 47, 49, 152, 164-166. These articulated and cognizable injuries demonstrate that Delaware residents and nonresidents were injured by Defendant's unlawful conduct. Thus, Plaintiff has alleged sufficient connection to satisfy the pleading requirements.

### B.    Plaintiff Trainor Pleaded a Massachusetts Consumer Protection Claim

Defendant's argument that Plaintiff Trainor did not sufficiently make her claim under Mass. Gen. Laws ch. 93A, § 11 is unsound because the section Defendant cites only applies to business-to-business transactions, where both parties are "engaged in trade or commerce, and therefore acting in a business context." *Geis*, 321 F. Supp. 3d at 246 (internal quotations and citation omitted). Plaintiff's claim instead falls under § 9 of the Massachusetts consumer protection law, where persons may "bring the action on behalf of [herself] and such other similarly situated person" who were injured by the "use or employment of the unfair or deceptive act or practice." Mass. Gen. Laws ch. 93A, § 9(2); *see also Cont'l Ins. Co. v. Bahnan*, 216 F.3d 150, 156 (1st Cir. 2000). These two private rights of action are mutually exclusive. *Id*. Plaintiff is a natural person who purchased Defendant's product for personal reasons, not a business or entity. Defendant's "primarily and substantially" challenge is therefore inapplicable to her individual claim, and those of all similarly situated. *See* MTD at 22-23.

Under the correct section, consumers must establish that there was a deceptive act or practice on part of Defendant, that Plaintiff suffered an injury or loss, and a causal connection between Defendant's act and Plaintiff's injury. *See Casavant v. Norwegian Cruise Line, Ltd.*, 919 N.E.2d 165, 168–69 (2009), *aff'd*, 460 Mass. 500 (2011). While there must be a "commercial link" between Plaintiff and Defendant, § 9 of the Massachusetts law allows any person who has been injured by Defendant's unlawful conduct affecting, even indirectly, Massachusetts consumers to bring a claim. *See Ryan v. Greif, Inc.,* 708 F. Supp. 3d 148, 179 (D. Mass. 2023). Here, Plaintiff established the necessary commercial relationship under § 9 when she pled that she purchased Defendant's Rolling Cooler, that she relied on Defendant's misrepresentations and omissions about it and its Defect, and that, had she known of the Defect, she would never have purchased it. *See Begelfer v. Najarian,* 381 Mass. 177, 409 N.E.2d 167, 190-191 (1980). Nothing more is required.

## III.    PLAINTIFFS ADEQUATELY ALLEGE BREACH OF WARRANTY CLAIMS

### A.    Plaintiffs Have Adequately Alleged Their Express Warranty Claim

#### 1.    The Rolling Coolers Defect Manifested Itself During the Duration of the Express Warranty Period

Plaintiffs have alleged that the Rolling Coolers were sold with a known Defect: "a dangerously defective tow handle that can 'pinch consumers' fingertips against the cooler, posing fingertip amputation and crushing hazards.'" Compl., ¶ 4. Defendant misreads this allegation to suggest that manifestation of the defect requires that the tow handle actually pinched a consumer's fingertip, MTD at 24, and that, given the one-year duration of Defendant's limited warranty, this injury must occur "within a year of purchase." *Id.* But this reasoning, applied broadly, would mean that no consumer could be protected by an express warranty unless they actually sustained the injury threatened by that defect. While some Plaintiffs were indeed injured by the Rolling Coolers,

*see, e.g.*, Compl. ¶¶ 10, 68-69, 77-78, 85, the law does not require this. Indeed, each of the Rolling Coolers was sold and delivered with a Defect. *See id.*, ¶¶ 4; 44.

The cases cited by Defendant deal with defects occurring within a product line (but not necessarily within all products in that line) or which may, ultimately, manifest in a product. Defendant cites *Gentek Bldg. Prods., Inc. v. Sherwin-Williams Co.*, for example, but that case addressed the issue of potential, future "steel peel failures that have not yet occurred." No. 1:02CV00013, 2005 WL 6778678, at *10 (N.D. Ohio Feb. 22, 2005). The *Gentek* court rejected the notion that plaintiffs could recover simply because "the product in question contains a latent defect that has manifested in other, identical products." *Id.* at *11. Here, however, all of the Rolling Coolers were defective at the moment of sale and delivery, as evidenced by Igloo's command for consumers to "immediately stop using the recalled coolers." Compl. ¶¶ 7, 41, 50.

Defendant also cites *Speerly v. Gen. Motors, LLC* for the proposition that a defect does not manifest if it has only caused "economic loss" without further injury. MTD at 25 (citing 143 F.4th 306, 327 (6th Cir. 2025)). But, as in *Gentek*, *Speerly* was dealing with a defect which was present in only some cars, and where "different environmental conditions led to different presentations of the alleged defect—and sometimes meant the defect never appeared." *Speerly*, 143 F.4th at 325. This issue is not relevant to the instant case where every Rolling Cooler was equipped, at sale and delivery, with a dangerous and defective tow handle.

     **2.**     **Igloo Refused to Repair the Rolling Coolers According to the Terms of the Express Warranty**

Defendant is correct that a claim for breach of express warranty typically requires that a plaintiff present a product for repair to the warrantor within the warranty period and that the warrantor fails to "repair the defect in compliance with the warranty." *Orichian v. BMW of N. Am., LLC*, 226 Cal.App.4th 1322, 1334 (2014). In the instant case, the Defect was known only to

- 22 -

Defendant, and not to Plaintiffs, during the warranty repair period. While the general rule is that an express warranty does not cover repairs of parts which fail after the warranty period, *see, e.g., Daugherty v. Am. Honda Motor Co., Inc.*, 144 Cal. App. 4th 824, 830 (2006), this general rule has not been applied to claims for "manifest but undiscovered defects due to the fault of the seller," *id.* at 832, n.3 (quoting *Northeastern Power Co. v. Balcke-Durr, Inc.* No. 97-CV-4836, 1999 WL 674332, at *6 (E.D. Pa., Aug. 23, 1999)); *see also )Alberti v. General Motors Corp.*, 600 F. Supp. 1026, 1028 (D.D.C. 1984 (defect of braking system arising after express warranty period actionable based on finding that seller knew braking systems were faulty when manufactured, rendering such defects patent not latent); *Northeastern Power Co.*, 1999 WL 674332, at *5-7 (denying summary judgment on express warranty claim when warranty language did not specify that defect must be "found" during warranty period: "[w]e find that a reasonable interpretation of [defendant]'s express warranty's language would allow for coverage of manifest but undiscovered defects due to the fault of the seller."). This exception makes sense, without it, corporations would be incentivized, as Igloo was here, to conceal the defect long after a redesign is implemented in order to claim that all or a majority of consumers' warranties are void.

In the instant case, Plaintiffs have alleged that Defendant knew of the Defect and concealed it from consumers, including Plaintiffs, until the expiration of their warranty period. Thus, Plaintiffs were not required to present their Rolling Coolers for repair during that period. At a minimum, the Court should permit discovery to determine the extent of Defendant's bad faith and deception before determining whether Plaintiffs' express warranty claims can proceed.

At the time Igloo finally revealed the Defect to Plaintiffs, it also imposed a new recall and "repair" process entirely distinct from the repair process contemplated by the express warranty. The express warranty provides that "Igloo shall repair the product free of charge or provide you

4931-8109-0948, v. 2

with a replacement product if the product proves defective under the terms of this warranty." Compl. ¶ 177. While, in reality, Defendant is refusing to repair the product itself and is instead requiring *consumers* to undertake the repair. *Id.* at ¶ 53. Moreover, the express warranty provides that "If you have issues with your Igloo product that was purchased at a retail store, please return it to the retailer if it is within the retailers [sic] returns policy." *Id.* at ¶ 178. Yet, pursuant to the terms of the Recall, Defendant instructed Plaintiffs and putative class members "not to try and take the cooler back to the store from which they bought it to seek a refund." *Id.*

It is not true, then, that "Igloo has done precisely what the express warranty requires – it has offered to repair the product free of charge." *See* MTD at 26. In fact, Igloo made clear that it would not repair their Rolling Coolers and that the terms of the return and repair process set out in the express warranty no longer applied and would not be honored. In such a situation, Plaintiffs were not required to make a futile attempt to seek repair of their Rolling Cooler pursuant to the terms of the express warranty. *See Gertz v. Toyota Motor Corp.*, 2011 WL 3681647, at *2-3 (C.D. Cal. Aug. 22, 2011) (presentation to the dealer for repair was excused on the ground of futility where plaintiffs alleged that they called the dealer, who advised them that there was "no fix" for the problem and that the complained-of defect was "normal"); *Benkle v. Ford Motor Co.*, 2017 WL 9486154, at *12 (C.D. Cal. Dec. 22, 2017) ("because Plaintiffs have alleged that a repair would have been inadequate, [they] were not required to allege that they presented their vehicles for repairs."); *In re Chevrolet Bolt EV Battery Litig.*, 633 F. Supp. 3d 921, 975-77 (E.D. Mich. 2022) (concluding that the complaint plausibly alleged futility where the manufacturer, *e.g.*, "has acknowledged . . . that it is unable to fix the allegedly defective cars").

### B.    Plaintiffs Have Adequately Alleged Their Implied Warranty Claims

Plaintiffs allege that the Rolling Coolers were sold with the Defects, such that they do not meet even the most basic degree of fitness for ordinary use as a reliable and safe product. Compl.,

¶¶ 46; 188. Thus, under California, Illinois, Massachusetts, and Missouri law, Defendant breached its implied warranties of merchantability and fitness for ordinary purposes at the time of delivery of each respective Rolling Cooler to each Plaintiff. *See Cunningham v. Ford Motor Co.*, No. 3:15-CV-00124, 2015 WL 13764982, at *2 (S.D. Cal. Dec. 7, 2015) ("The implied warranty of merchantability, therefore, imposes on sellers *at the time of delivery* an obligation to supply goods fit for ordinary purposes for which such goods are used" (emphasis in original, citations omitted)); Cal. Com. Code § 2725(2) ("A breach of warranty occurs when tender of delivery is made, except that where a warranty explicitly extends to future performance of the goods and discovery of the breach must await the time of such performance . . ."); *Coady v. Marvin Lumber & Cedar Co.*, 167 F. Supp. 2d 166, 170 (D. Mass. 2001) (similar); Mass. Gen. Laws ch. 106, § 2-725(1) (similar); *Pagliaroni v. Mastic Home Exteriors, Inc.*, 310 F. Supp. 3d 274, 283-84 (D. Mass. 2018) (similar); 810 Ill. Comp. Stat. 5/2-725 (similar); Mo. Rev. Stat. § 400.2-725 (same).

Put simply, because the dangerous and defective tow handle was installed on the Rolling Coolers at the time of sale, Defendant breached its implied warranties at that time, and its motion to dismiss Plaintiffs' implied warranty claims must be denied. To be clear, Defendant's assertion that the "implied warranty periods are one year," MTD at 24 & fn. 16, is irrelevant, because each of the implied warranties was violated at the time of each Plaintiffs' respective purchase.

Defendant also erroneously suggests that the Defect in the Rolling Coolers somehow did not "manifest" and, accordingly, that the implied warranties were not breached, unless "the tow handle pinched a consumer's fingertip within a year of purchase." MTD at 24. This is categorically at odds both with Defendant's own admonition that consumers should "immediately stop use" of the Rolling Coolers, Compl. ¶ 41, and with the laws of the relevant states with respect to implied warranties, as described above. And, as addressed above with respect to Defendant's express

- 25 -

warranties, none of the authorities cited by Defendant is applicable, here, where the Rolling Coolers were dangerous and defective at the time of sale and delivery.

The instant case is also manifestly distinguishable from *Rule v. Fort Dodge Animal Health, Inc.*, which Defendant relies on for the proposition that a breach of implied warranty claim is not viable if a defect never manifested itself and can "*never manifest[] itself*," in the future. 604 F. Supp. 2d 288, 295 (D. Mass. 2009). Plaintiffs' Rolling Coolers continue to exist and have not "already performed as warranted for the duration of [their] useful life." *Id.* at 296. Defendant's related suggestion that "the existence of the Replacement Handle" somehow means that the defect can never manifest in the future is simply irrelevant. MTD at 24, fn. 15. The Rolling Coolers were sold and delivered with the Defects which rendered them unmerchantable; thus, the implied warranties were breached at the time of sale or delivery. Defendant offers no authority for the proposition that Defendant's inadequate offer of a Replacement Handle can retroactively remedy Defendant's prior breaches of the implied warranties.

### C. Because Their Warranty Claims are Adequately Alleged, Plaintiffs' MMWA Claims Cannot Be Dismissed

Because Plaintiffs' implied and express warranty claims are adequately pled, Defendant's motion to dismiss Plaintiffs' Magnuson Moss Warranty Act ("MMWA"), 15 U.S.C. §§ 2301, *et seq.*, claims must be denied.

## IV. PLAINTIFFS HAVE ADEQUATELY ALLEGED UNJUST ENRICHMENT

### A. Plaintiffs Do Not Have an Adequate Remedy at Law

Defendant asserts that in California, Illinois, Massachusetts, and Missouri, "unjust enrichment is an equitable remedy that is only available when there is no adequate remedy at law." MTD at 27 & fn. 19. Then, on the basis that Plaintiffs' unjust enrichment claims purportedly arise

- 26 -

from the same Defect as their breach of express warranty claims, Defendant argues that Plaintiffs'

have an adequate remedy at law and their unjust enrichment claims must be dismissed. *Id.* at p. 28.

It does not follow, however, that because Plaintiffs have an express warranty claim, they

have an adequate remedy at law such that their unjust enrichment claims must be dismissed. In

fact, as acknowledged in Defendant's own authority, while "'unjust enrichment is a quasi-

contractual theory of recovery that ordinarily is not available where an express contract exists,'" a

claim of unjust enrichment may be brought where "'the claim falls outside the contract.'" *Van

Zeeland v. McNally*, 532 F. Supp. 3d 557, 574 (N.D. Ill. 2021) (quoting *Duffy v. Ticketreserve,

Inc.*, 722 F. Supp. 2d 977, 993 (N.D. Ill 2010)).

"'In determining whether a claim falls outside a contract, the court considers the subject

matter of the contract rather than the contract's specific terms or provisions.'" *Id.* (quoting *Duffy*,

722 F. Supp. 2d at 993). Here, Plaintiffs' unjust enrichment claims do not rely on their express

warranties or any of the terms of those warranties. At the core of these claims is Defendant's

deliberate concealment of the Defect which permitted Defendant to "artificially inflate[]" the price

of the Rolling Coolers and to cause Plaintiffs and Class Members to overpay for those Coolers.

*See* Compl., ¶¶ 57, 207-08. Where plaintiffs have brought similar fraud and misrepresentation-

related unjust enrichment claims, which do not depend on the terms of a warranty, courts have not

dismissed them despite the presence of an express warranty claim. *See*, *e.g.*, *Barrera v. Samsung

Elecs. Am., Inc.*, No. SACV 18-00481-CJC(PJWx), 2019 WL 1950295, at *6-7 (C.D. Cal. Feb. 27,

2019); *Muir v. Nature's Bounty, Inc.*, No. 15-CV-9835, 2017 WL 4310650, at *6 (N.D. Ill.

Sept. 28, 2017).

Further, it is premature for the Court to determine all forms of relief in law and equity

available to Plaintiffs at this early stage of the case. "A remedy at law does not exclude one in

equity unless it is equally prompt and certain and in other ways efficient." *Am. Life Ins. Co. v. Stewart*, 300 U.S. 203, 214 (1937). On a more complete record, the Court will be better positioned to determine whether any available remedy at law is "equally prompt and certain and in other ways efficient." *Id*. Accordingly, Defendant's motion to dismiss Plaintiffs' unjust enrichment claim should be denied.

### B.    Plaintiffs Adequately Allege that Defendant Unjustly Retained Benefits

Plaintiffs agree that, to plead a claim for unjust enrichment, they must allege facts showing that Defendant received and unjustly retained a benefit at their expense. *See Campos v. Polaris, Inc.*, No. 5:23-cv-00172-SSS-SPx, 2024 WL 1816945, at *7 (C.D. Cal. Mar. 5, 2024) (standard in California); *HPI Health Care Servs., Inc. v. Mt. Vernon Hosp., Inc.*, 545 N.E.2d 672, 679 (Ill. 1989) (standard in Illinois); )*Howard v. Turnbull*, 316 S.W.3d 431, 436 (Mo. Ct. App. 2010 (standard in Missouri); *Mass. Eye & Ear Infirmary v. QLT Phototherapeutics, Inc.*, 552 F.3d 47, 57 (1st Cir. 2009) (standard in Massachusetts). In their Complaint, Plaintiffs have more than adequately satisfied this requirement.

Critically at the pleadings stage, Plaintiffs allege that they obtained nothing like what they expected to obtain through their respective purchases of a Rolling Cooler that was intended to be used at events like family picnics, soccer games, and camping trips. Rather, they allege that they received a "dangerously defective and difficult-to-use Rolling Cooler that poses an inherent and unforeseeable risk to them and their children," that the "value" of the Rolling Coolers they bought was "artificially inflated by Defendant's concealment of the Defects in the Rolling Coolers," and that, accordingly, they "overpaid for the Rolling Coolers." Compl. ¶¶ 10, 207. Moreover, Plaintiffs specifically allege that the remedy offered by Defendant is not adequate because it provides no compensation or a complete replacement and instead requires the consumer "to remove the dangerous tow handles and then try to follow instructions regarding how they can themselves try

- 28 -

to install replacement handles," which is dangerous. *Id.* ¶¶ 13-14. And, Plaintiffs note that the defective Rolling Coolers, "have experienced a significant loss in value and useful life because of these issues." *Id.* ¶ 18. There is thus, at minimum, a factual question of whether the Recall could or will result in Plaintiffs obtaining what they intended to obtain when they purchased their respective Rolling Coolers. This is not a question which can be resolved at the pleadings stage. *See*, *e.g.*, *Fares v. Char-Broil, LLC*, No. 24 C 4878, 2025 WL 1191729, at *8 (N.D. Ill. Apr. 24, 2025) (denying motion to dismiss unjust enrichment claims, despite safety recall, when Plaintiffs contended recall and repair was inadequate).

Defendant cites *Humphries v. Harley-Davidson, Inc.*, an out-of-circuit case addressing South Carolina law. MTD at 29 (citing No. 7:23-cv-05524-JDA, 2025 WL 1836703, at *4 (D.S.C. July 3, 2025)). But, as that court clarified, this the claim was dismissed because "[f]or an unjust enrichment claim, the measure of restitution damages is the value of the benefit conferred on the defendant." *Id.* at *4 (citing *Stringer Oil Co. v. Bobo*, 320 S.C. 369 (S.C. Ct. App. 1995)). In the instant case, Plaintiffs do not seek to recover damages under their unjust enrichment claims for the time they could not use their Rolling Coolers or any time or money they spent trying to repair or replace them. Rather, they seek the return of the benefits they provided to Defendant on the basis of Defendant's misrepresentations and omissions, money that Defendant has unjustly retained. *Humphries* is inapposite and Defendant's Motion should be denied.

## V.    PLAINTIFFS ADEQUATELY PLEAD A BASIS FOR PUNITIVE DAMAGES

At the pleading stage, plaintiffs need only allege facts sufficient for a court to reasonably infer that a defendant acted with the requisite level of intent and knowledge and that its conduct meets the relevant standard. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Punitive damages may be awarded in cases where defendant "has been guilty of oppression, fraud, or malice." *See* Cal. Civil Code § 3294.

Plaintiffs herein allege that Defendant knew of the "dangerous Defect" as evidenced by, *inter alia*, Defendant's "implementation of a re-designed tow handle in January 2024." Compl., ¶ 17; *see also* Sec. II(A)(2), *supra*. Plaintiffs further allege that dozens of serious injuries were reported and that by implementing a redesign, Defendant knew well before January 2024 that it was selling Rolling Coolers with a dangerous defect, and that it continued to sell them until January 2025. *Id.* at ¶¶ 4, 17, 57; *see also* Sec. II(A)(2), *supra*. By any estimation, the alleged conduct prioritized Igloo's bottom line over the health of consumers and their children which shows Defendant's fraud and malice. For the purposes of the instant motion, Plaintiffs' allegations are more than sufficient under the relevant state laws for their claims for punitive damages to proceed. *See .Hicks v. Boeing Co.*, No. 13-393-SLR-SRF, 2014 WL 1284904, at *6 (D. Del. Mar. 21, 2014).

## CONCLUSION

For the above reasons, Plaintiffs ask that the Court deny Defendants' Motion. Should the Court grant it in any respect, Plaintiffs ask for leave to amend.

Respectfully submitted,

DATED: December 22, 2025
      Wilmington, Delaware

**THE ROSNER LAW GROUP LLC**

By:  /s/ *Zhao Liu*
Frederick B. Rosner (DE 3995)
Zhao (Ruby) Liu (DE 6436)
824 Market Street, Suite 810
Wilmington, DE 19801
Phone: (302) 777-1111
Email: *rosner@teamrosner.com*
Email: *liu@teamrosner.com*

*Plaintiffs' Delaware Counsel*

**TUSAN LAW, PC**
Christina Tusan (*pro hac vice*)
*ctusan@ctusanlaw.com*
Adrian Barnes (*pro hac vice*)
*abarnes@ctusanlaw.com*
680 E. Colorado Blvd. #180

- 30 -

Pasadena, CA 91101
Telephone:  (626) 418-8203
Facsimile:   (625) 619-8253

**KAPLAN FOX & KILSHEIMER LLP**
Matthew B. George (*pro hac vice*)
*mgeorge@kaplanfox.com*
Laurence D. King (*pro hac vice*)
*lking@kaplanfox.com*
Clarissa R. Olivares (*pro hac vice*)
*colivares@kaplanfox.com*
Walter Howe (*pro hac vice*)
*whowe@kaplanfox.com*
1999 Harrison Street, Suite 1501
Oakland, CA 94612
Telephone: (415) 772-4700
Facsimile:  (415) 772-4707

*Interim Co-Lead Class Counsel*

4931-8109-0948, v. 2