**UNITED STATES DISTRICT COURT**
**DISTRICT OF DELAWARE**

| | |
|---|---|
| IN RE IGLOO PRODUCTS COOLER RECALL LITIGATION | C.A. No. 1:25-cv-00298-JLH CONSOLIDATED |

**DEFENDANT'S REPLY IN SUPPORT OF MOTION TO DISMISS CONSOLIDATED CLASS ACTION COMPLAINT**

**COZEN O'CONNOR**

Kaan Ekiner (#5607)
Hugh J. Marbury (#7427)
1201 North Market St., Ste. 1001
Wilmington, DE 19801
(302) 295-2046
kekiner@cozen.com
hmarbury@cozen.com

Erica Rutner (*Pro Hac Vice*)
Michael Puretz (*Pro Hac Vice*)
501 E. Las Olas Blvd. Suite 300
Fort Lauderdale, FL 33301
(561) 750-3850
erutner@cozen.com
mpuretz@cozen.com

John A. Bertino (*Pro Hac Vice*)
2001 M Street NW, Suite 500
Washington, D.C. 20036
(202) 912-4800
jbertino@cozen.com

*Attorneys for Defendant*
*Igloo Products Corp.*

Dated: January 20, 2026

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

I.    Plaintiffs Provide No Basis to Overcome Igloo's Standing Arguments.................................. 1

   A.    Plaintiffs Admit to Relying on a Non-Existent Overpayment Injury ................................ 1

      1.    Plaintiffs Do Not Challenge the Efficacy of the Replacement Handle.......................... 1

      2.    Plaintiffs' Attempts to Evade the Replacement Handle Are Unconvincing.................. 2

   B.    Plaintiffs Effectively Admit They Cannot Seek Injunctive Relief ..................................... 7

   C.    Trainor Has Provided No Basis to Pursue Massachusetts Class Claims ........................... 7

II.    Plaintiffs Have Not Identified Facts Capable Of Substantiating Their Fraud Claims........... 8

   A.    The Opposition Confirms that Plaintiffs Fail to Satisfy Rule 9(b) ..................................... 8

   B.    Plaintiffs Do Not Identify Any Allegations Establishing Pre-Sale Knowledge ................ 9

   C.    Plaintiffs Have Provided No Legitimate Basis For Their DCFA Claim ......................... 12

III.    Plaintiffs Have Provided No Grounds To Rectify Their Warranty Claims..................... 12

IV.    Plaintiffs Have Not Provided Any Basis to Save Their Unjust Enrichment Claims ........ 15

## TABLE OF AUTHORITIES

**Cases**

*Adam v. Barone*,
   41 F. 4th 2230 (3d Cir. 2022) ................................................. 3

*Alban v. BMW of N. Am.*,
   2011 WL 900114 (D.N.J. Mar. 15, 2011) ................................. 11

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ................................................... 11, 12

*Barrera v. Samsung Elecs. Am., Inc.*,
   2019 WL 1950295 (C.D. Cal. Feb. 27, 2019) ............................ 18

*Cain v. Johnson Health Tech North America, Inc.*,
   2023 WL 12154889 (C.D. Cal. June 23, 2023) ........................... 4

*Carson v. HP Inc.*,
   750 F. Supp. 3d 376 (D. Del. 2024) .................................... 11

*Charlton v. LG Energy Sol. Michigan, Inc.*,
   2023 WL 1420726 (S.D. Cal. Jan. 31, 2023) ............................. 4

*Comes v. Harbor Freight Tools, USA, Inc.*,
   2021 WL 6618816 (C.D. Cal. Sept. 29, 2021) ........................ 2, 4, 5

*Daugherty v. Am. Honda Motor Co.*,
   144 Cal. App. 4th 824 (2006) ......................................... 16

*Diaz v. FCA US LLC*,
   2022 WL 4016744 (D. Del. Sept. 2, 2022) .............................. 14

*Diaz v. Ford Motor Co.*,
   2023 WL 6164455 (E.D. Mich. Sept. 21, 2023) .......................... 8

*Finkelman v. Nat'l Football League*,
   810 F.3d 187 (3d Cir. 2016) ............................................ 6

*Friche v. Hyundai Motor, Am.*,
   2022 WL 1599868 (C.D. Cal. Jan. 28, 2022) ............................ 8

*Glass v. BMW of N. Am., LLC*,
   2011 WL 6887721 (D.N.J. Dec. 29, 2011) .............................. 11

*Glauberzon v. Pella Corp.*,
   2011 WL 1337509 (D.N.J. Apr. 7, 2011) ............................. 10, 11

*Graham v. Am. Honda Motor Co.*,
   2025 WL 2576748 (N.D. Ill. Sept. 4, 2025) ............................. 4

*Hadley v. Chrysler Grp., LLC*,
   624 F. App'x 374 (6th Cir. 2015) ...................................... 8

*In re J&J Talcum Powder Prods. Mktg., Sales Pracs. & Liab. Litig.*,
   903 F.3d 278 (3d Cir. 2018) ............................................ 2

*In re Mattel, Inc.*,
   588 F. Supp. 2d 1111 (C.D. Cal. 2008) ................................................................ 3

*In re McNeil Consumer Healthcare*,
   877 F. Supp. 2d 254 (E.D. Pa. 2012) ................................................................ 6

*Kearns v. Ford Motor Co.*,
   567 F.3d 1120 (9th Cir. 2009) ................................................................ 10

*Kirchner v. Wyndham Vacation Resorts, Inc.*,
   2021 WL 1198314 (D. Del. Mar. 30, 2021) ................................................................ 10

*Klein v. General Nutrition Cos., Inc.*,
   186 F.3d 338 (3d Cir. 1999) ................................................................ 10

*Klein v. Ljubljana Inter Auto d.o.o.*,
   2021 WL 6424917 (C.D. Cal. Sept. 13, 2021) ................................................................ 15

*Kommer v. Ford Motor Co.*,
   2017 WL 3251598  (N.D.N.Y. July 28, 2017) ................................................................ 2

*Koronthaly v. L'Oreal USA, Inc.*,
   374 F. App'x 257 (3d Cir. 2010) ................................................................ 7

*Maugain v. FCA US LLC*,
   2023 WL 1796113 (D. Del. Feb. 7, 2023) ................................................................ 14

*McNair v. Synapse Grp. Inc.*,
   672 F.3d 213 (3d Cir. 2012) ................................................................ 9

*Medley v. J&J Consumer Companies, Inc.*,
   2011 WL 159674 (D.N.J. Jan. 8, 2011) ................................................................ 2

*Pacheco v. Ford Motor Co.*,
   2023 WL 2603937 (E.D. Mich. Mar. 22, 2023) ................................................................ 8

*Peckerar v. Gen. Motors, LLC*,
   2020 WL 5289919 (C.D. Cal. May 27, 2020) ................................................................ 8

*Persad v. Ford Motor Co.*,
   2018 WL 3428690 (E.D. Mich. July 16, 2018) ................................................................ 12

*Snowdy v. Mercedes-Benz USA, LLC*,
   2024 WL 1366446 (D.N.J. Apr. 1, 2024) ................................................................ 14

*Solak v. Ford Motor Co.*,
   683 F. Supp. 3d 658 (E.D. Mich. 2023) ................................................................ 2, 7

*Sugasawara v. Ford Motor Co.*,
   2019 WL 3945105 (N.D. Cal. Aug. 21, 2019) ................................................................ 4, 8

*Van Zeeland v. McNally*,
   532 F. Supp. 3d 557 (N.D. Ill. 2021) ................................................................ 18

*Ward-Richardson v. FCA US LLC*,
   690 F. Supp. 3d 1372  (N.D. Ga. 2023) ................................................................ 2

**Statutes**

15 U.S.C. § 2068(a)(2)(b) ..................................................................................... 6

**Other Authorities**

https://www.cpsc.gov/About-CPSC/Division-of-Field-Operations/FAQs-For-Buying-and-Selling-Products-Online.......................................................................................... 6

https://www.cpsc.gov/Recalls/2025/Igloo-Expands-Recall-of-90-Qt-Rolling-Coolers-Due-to-Fingertip-Amputation-and-Crushing-Hazards-Total-Recalled-Now-Nearly-1-2-Million ....... 13

**Rules**

Fed. R. Civ. P. 9(b) ............................................................................................. 10

Plaintiffs' Opposition to Igloo's Motion[1] confirms the key reason why Plaintiffs' claims fail: because Plaintiffs do not even allege (much less adequately plead) that the Replacement Handle fails to repair the "defect" underlying each of their claims. Instead, all Plaintiffs have proffered is an invalid attempt to elect their remedy along with unsupported speculation about future hypotheticals. This is wholly insufficient, and Plaintiffs have provided no basis to find otherwise in the Opposition. Accordingly, and as discussed in the Motion and in more detail below, Plaintiffs' claims fail as a matter of law under Rules 12(b)(1) and 12(b)(6).

## ARGUMENT

### I.    Plaintiffs Provide No Basis to Overcome Igloo's Standing Arguments

#### A.    Plaintiffs Admit to Relying on a Non-Existent Overpayment Injury

##### 1.    Plaintiffs Do Not Challenge the Efficacy of the Replacement Handle

Plaintiffs begin their Opposition by repeating the same basic and unmoving allegation that appears throughout the CAC: that the Coolers are worth less than what they paid because they are "dangerous and unusable due to the defect," described generically as a risk of finger pinching at the tow handle of their Coolers. Opp. at 1, 5. Thus, Plaintiffs' position is clear: they believe they have suffered a concrete injury because there is an alleged defect that renders their Coolers worth less than what they paid. As discussed at length in the Motion, however, Igloo has offered to repair the alleged defect underlying Plaintiffs' overpayment injury free of charge via its provision of the Replacement Handle. At no point do Plaintiffs claim the Replacement Handle fails to repair the alleged defect or that a pinching hazard remains if the Replacement Handle is installed. On the contrary, in doubling down on the notion that the efficacy of the Replacement Handle "remains to

---

[1] Igloo's Motion to Dismiss is referred to herein as the "Motion" or "Mot." Plaintiffs' Opposition to the Motion is referred to herein as the "Opposition" or "Opp." All capitalized terms not otherwise defined herein have the meaning ascribed to them in the Motion.

be seen" (*id*. at 11), Plaintiffs outright concede that they have not alleged—and cannot allege—that the Replacement Handle fails to eliminate the "defect."

Plaintiffs' concession is fatal to their claims. As made clear by the numerous cases Igloo cited that dealt with this precise circumstance, there can be no overpayment injury predicated on a product defect where, as here, the defendant has repaired the defect free of charge and the plaintiff does not challenge (or only insufficiently challenges) the efficacy of the repair. *See* Mot. at 9-10.[2] Tellingly, Plaintiffs cite no authority to the contrary. In fact, contrary to Plaintiffs' characterization, *In re J&J Talcum Powder Prods. Mktg., Sales Pracs. & Liab. Litig.*, 903 F.3d 278, 288 (3d Cir. 2018) and *Medley v. J&J Consumer Companies, Inc*., 2011 WL 159674, at *2 (D.N.J. Jan. 8, 2011) also lead to the same conclusion. As here, these cases dealt with a product that allegedly posed a danger but never actually caused the plaintiffs harm and could no longer do so in the future. Thus, in both cases, the courts held that the mere purchase of the product did not give rise to a cognizable economic injury. *See* Mot. at 8-9. While the danger may have been eliminated for different reasons—there because the product was consumed and here because the "defect" was repaired—the outcome is still the same: there is no existing basis to allege an overpayment injury.

2.    Plaintiffs' Attempts to Evade the Replacement Handle Are Unconvincing

Notwithstanding the unchallenged efficacy of the Replacement Handle, Plaintiffs raise various arguments as to why they can still claim an overpayment injury. None are convincing.

First, Plaintiffs claim they are entitled to unilaterally reject the Replacement Handle and continue to claim an overpayment injury irrespective of its efficacy. Opp. at 7. Yet, the Third

---

[2] While Plaintiffs raise ancillary and immaterial distinctions with certain of these cases, they do not even address at least the following cases standing for this same principle: *Solak v. Ford Motor Co*., 683 F. Supp. 3d 658 (E.D. Mich. 2023); *Ward-Richardson v. FCA US LLC*, 690 F. Supp. 3d 1372  (N.D. Ga. 2023); *Comes v. Harbor Freight Tools, USA, Inc.,* 2021 WL 6618816 (C.D. Cal. Sept. 29, 2021); *Kommer v. Ford Motor Co*., 2017 WL 3251598  (N.D.N.Y. July 28, 2017).

Circuit case that Plaintiffs cite for this proposition stands for no such thing. In *Adam v. Barone*, the defendant had represented to the plaintiff that it was providing her with certain beauty products free of charge when it in fact charged her for those products. 41 F. 4th 230, 235 (3d Cir. 2022). While the defendant subsequently offered to refund the plaintiff the money it had charged her, it did not offer her what it originally promised (free products) and instead conditioned its offer on her return of the products. *Id*. Thus, the court held that the plaintiff was not required to accept the offer, reasoning that she "cannot be faulted for standing on the right to freely keep what was represented to be a free sample." *Id*. That is nothing like the situation here, where Plaintiffs allege they were promised a defect-free product and the Replacement Handle provides precisely that.[3]

In contrast with the circumstances in *Adam*, in the precise circumstances that exist here—where there is an alleged overpayment injury predicated on a product defect and a proffered repair that eliminates the defect—courts have repeatedly held that "Article III standing does not exist on the theory that a plaintiff is entitled to 'elect his preferred remedy.'" *Cain v. Johnson Health Tech North America, Inc.* 2023 WL 12154889, at *2 (C.D. Cal. June 23, 2023) (rejecting argument that plaintiffs had standing because the defendant did not offer them "any monetary relief due to the Defect" and noting the lack of any authority to support the proposition that "a plaintiff must be provided monetary compensation for a recall to be adequate"); *see also Charlton v. LG Energy Sol. Michigan, Inc.*, 2023 WL 1420726, at *4 (S.D. Cal. Jan. 31, 2023) (rejecting argument that a recall was insufficient because the "Defendant has not offered refunds" as "Plaintiff cannot elect

---

[3] *In re Mattel, Inc*. is equally distinguishable. There, the court held that plaintiffs' purchase of lead-contaminated toys gave rise to standing because the replacement offered by the defendant (a) did not remedy the lead exposure the plaintiffs had incurred that could lead to lifelong medical problems, and (b) did not repair the underlying problem in the toys but instead provided only partial replacements of the toy kit. 588 F. Supp. 2d 1111, 1117 (C.D. Cal. 2008). Here, however, Igloo has fully repaired the alleged problem without any ongoing risk of harm.

his preferred remedy"). This is in accord with the great weight of authority holding that a plaintiff cannot "manufacture standing" by refusing to avail himself of a repair that eliminates a product defect.[4] As such, contrary to their suppositions, Plaintiffs may not manufacture standing by rejecting the Replacement Handle and demanding monetary compensation instead.

Second, Plaintiffs claim they suffered an economic injury because they stopped using their Coolers and were injured by "loss of use." Opp. at 8, 10. Yet, *none* of the Plaintiffs specifically allege that they stopped using their Coolers. *See* CAC ¶¶ 59-100. At most, Castellano and Nguyen claim they "limited [their] use" (*id.* ¶¶ 69, 78)—but at no point do they or any other Plaintiff claim to have actually stopped their use. Regardless, any "loss of use" outside the 2-3 week wait time for the Replacement Handle would be insufficient because it would be due "to [Plaintiffs'] own choice not to pursue the recall remedy." *Comes*, 2021 WL 6618816 at * 5. Likewise, any loss of use during this 2-3 week period (which no Plaintiff claims to have incurred)[5] would be insufficient because it would constitute a mere transitory inconvenience untethered from any economic loss— a point Plaintiffs do not even address, much less refute, in their Opposition. *See* Mot. at 10.[6]

Third, Plaintiffs wrongfully argue that they cannot sell their Coolers even if the Replacement Handle is installed on the grounds that the CPSC "resellers guide" cited in the Motion is "designed for retailers and conflicts with the plain information … for consumers." Opp. at 9.

---

[4] *Sugasawara v. Ford Motor Co.,* 2019 WL 3945105, at *6 (N.D. Cal. Aug. 21, 2019); *see also Comes*, 2021 WL 6618816, at *5 (any injury in not obtaining the repair is due "to [plaintiff's] own choice not to pursue the recall remedy."); *Graham v. Am. Honda Motor Co.*, 2025 WL 2576748, at *11 (N.D. Ill. Sept. 4, 2025) ("[W]hen consumers choose not to avail themselves of an adequate repair or replacement remedy, their economic injury… [is due] to the consumer's choice.").

[5] While Plaintiffs claim that Igloo has not informed them of when the Replacement Handle will arrive, that is directly contradicted by the allegations in Paragraph 13 of the CAC.

[6] Rather than address the deficiencies raised in the Motion, Plaintiffs cite to a case about loss of use of "wages"—*i.e.*, actual economic losses. That is the precise opposite of the situation here and the precise problem with Plaintiffs' theory. Opp. at 10.

4

Plaintiffs are misinformed. For one, the CPSC itself provides the following direct and explicit guidance to **consumers**: "Can I sell a recalled product if the item has been fixed with the remedy outlined in the public recall notice? ***Yes, you can sell the product as long as the remedy has been applied***."[7] Putting that aside, from a regulatory perspective, 15 U.S.C. § 2068(a)(2)(b) only makes it unlawful for a person to offer for sale a product "subject to voluntary corrective action." If the voluntary corrective action has already been taken and no further correction is needed, then the prohibition against the sale of the product simply does not apply.

Fourth, Plaintiffs speculate that the alleged defect "negatively impacts" their Coolers resale value and "scares off potential buyers" even with the Replacement Handle. Opp. at 10. However, the CAC does not contain a single factual allegation to that effect. More importantly, this is nothing more than sheer unadulterated speculation—unsupported by a single allegation demonstrating any type of reduced resale value once the Replacement Handle is installed. Such conjecture is insufficient to establish standing. *See Finkelman v. Nat'l Football League*, 810 F.3d 187, 201 (3d Cir. 2016) (rejecting price inflation theory of injury premised on "allegations that stand on nothing more than supposition" and holding that "[w]e can only speculate—and speculation is not enough to sustain Article III standing"). Moreover, a "named plaintiff must allege facts showing that he or she personally suffered economic loss as a result of an inadequate recall to state a cognizable injury on the basis of a recalled product." *In re McNeil Consumer Healthcare*, 877 F. Supp. 2d 254, 273 (E.D. Pa. 2012). Speculation about a hypothetical future resale falls well short of this standard.

Fifth, Plaintiffs theorize that the Replacement Handle is dangerous to install. Opp. at 10. However, as set forth in the Motion, Plaintiffs are relying on nothing more that rote speculation

---

[7] https://www.cpsc.gov/About-CPSC/Division-of-Field-Operations/FAQs-For-Buying-and-Selling-Products-Online. (emphasis added).

for this assertion, untethered from any supporting facts. The CAC expressly confirms this, alleging only that the Replacement Handle is "*potentially* dangerous." CAC at ¶ 14 (emphasis added). Plaintiffs cannot establish an actual injury based on such speculative and self-imposed fears—and Plaintiffs have pointed to nothing that establishes otherwise. *See Koronthaly v. L'Oreal USA, Inc.*, 374 F. App'x 257, 259 (3d Cir. 2010). In fact, not only is this fear unfounded—it is directly contrary to the CPSC's instruction that consumers should obtain the Replacement Handle from Igloo. Plaintiffs cannot ask the Court to presume that the CPSC has knowingly agreed to put consumers in danger, particularly in the absence of any facts supporting this theorized danger.

Finally, and most tellingly, Plaintiffs continue to rely on the notion that the efficacy of the Replacement Handle "remains to be seen." Opp. at 11. This, by itself, is an express concession that Plaintiffs cannot even *speculate*—much less sufficiently allege—that the Replacement Handle fails to repair the alleged defect. Moreover, contrary to their contention, Plaintiffs' allegation in this regard does not distinguish this case from the cases Igloo cited in the Motion. Just the opposite—it makes Plaintiffs' claims even weaker because, unlike here, the plaintiffs in these cases had affirmatively claimed the repair may not be effective and the courts nevertheless rejected these allegations as speculative. *See, e.g., Solak v. Ford Motor Co.*, 683 F. Supp. 3d 658, 664 (E.D. Mich. 2023) ("[T]he plaintiffs' speculation about the recall's effectiveness raised 'a hypothetical possibility that the plaintiffs' vehicle was not adequately repaired' – well short of a 'cognizable danger.'"); *Hadley v. Chrysler Grp., LLC*, 624 F. App'x 374, 380 (6th Cir. 2015) (rejecting as speculative the assertion "that the ORC Module repair may not be effective").[8] Plaintiff themselves cite a case that reached the same conclusion. *See Friche v. Hyundai Motor, Am.*, 2022 WL

---

[8] *See also Diaz v. Ford Motor Co.*, 2023 WL 6164455, at *4 (E.D. Mich. Sept. 21, 2023); *Pacheco v. Ford Motor Co.*, 2023 WL 2603937, at *4 (E.D. Mich. Mar. 22, 2023); *Sugasawara*, 2019 WL 3945105, at *6.

1599868, at *3 (C.D. Cal. Jan. 28, 2022) (a plaintiff cannot establish standing where a repair exists and the plaintiff does nothing more than "speculate[] that [the defendant's] replacement might not have been effective."). Given that Plaintiffs here do not even speculate that the Replacement Handle is ineffective, their inability to establish an overpayment injury is even more apparent.

## B.    Plaintiffs Effectively Admit They Cannot Seek Injunctive Relief

Plaintiffs argue in the Opposition that injunctive relief is "allowable" where a product is dangerous and the defendant fails to provide a non-defective replacement or a full refund. Opp. at 11. However, Plaintiffs never allege that the Replacement Handle Igloo has provided is defective. On the contrary, they concede that its efficacy "remains to be seen." CAC at ¶ 12. Accordingly, based on Plaintiffs' own framing of the applicable legal standard, they fail to allege facts sufficient to establish standing for injunctive relief. *See Peckerar v. Gen. Motors, LLC*, 2020 WL 5289919, at *3 (C.D. Cal. May 27, 2020) ("Absent any adequate allegations that the recall repairs did not work or will not work, there is no longer any practical value in this Court issuing an injunction forcing Defendant to do that which they have already volunteered to do."); *McNair v. Synapse Grp. Inc.*, 672 F.3d 213, 225 (3d Cir. 2012) (a "wholly conjectural future injury" is insufficient).

## C.    Trainor Has Provided No Basis to Pursue Massachusetts Class Claims

Plaintiffs do not dispute that Trainor only has standing to bring class claims under Massachusetts law if there is a causal relationship between her injury and Massachusetts. Opp. at 12. They also concede that her alleged overpayment "injury necessarily occurred in Missouri at the moment she purchased her Cooler[.]" *Id.* Nonetheless, they inexplicably argue that Trainor also experienced an injury in Massachusetts in the form of "diminution in value" and loss of use. *Id.* The CAC does not support that argument. As to "diminution in value," the CAC specifically alleges that Plaintiffs incurred losses in the form of "overpayment and diminution in value" "at the *moment of their purchase* of the defective [] Coolers." CAC at ¶ 48 (emphasis added). Thus, in

7

fact, Trainor's "diminution in value" injury—which is effectively one and the same as her alleged overpayment injury—occurred at the moment of purchase in Missouri. As to loss of use, Trainor does not even allege that she ever stopped using her Cooler at any point in time. Nor would that be sufficient even if she had. *See supra* at Section I(A)(2). Accordingly, Trainor has not alleged any factual basis to claim that she incurred any injury in Massachusetts. By extension, she has not alleged any causal connection sufficient to bring claims on behalf of a Massachusetts subclass.

## II.    <u>Plaintiffs Have Not Identified Facts Capable Of Substantiating Their Fraud Claims</u>

### A.    The Opposition Confirms that Plaintiffs Fail to Satisfy Rule 9(b)

Plaintiffs agree that their fraud claims must be pled with the particularity required by Rule 9(b). Opp. at 13-15.[9] They also concede that they have not identified any particular individual who engaged in the alleged fraud. *Id*. Faced with this, Plaintiffs argue that they need not identify any particular individual because (a) the only cases Igloo cited on the subject are in the patent context, and (b) Rule 9(b) is relaxed for omission-based claims. *Id.* Plaintiffs' arguments are not persuasive.

First, while Igloo did cite cases in the patent context, numerous other cases outside the patent are in accord. *See, e.g.*, *Klein v. General Nutrition Cos., Inc.*, 186 F.3d 338, 345 (3d Cir. 1999) (securities fraud); *Kirchner v. Wyndham Vacation Resorts, Inc.*, 2021 WL 1198314, at *3 (D. Del. Mar. 30, 2021) (consumer fraud); *Glauberzon v. Pella Corp.*, 2011 WL 1337509, at *9-10 (D.N.J. Apr. 7, 2011) (consumer fraud). Thus, contrary to Plaintiffs' suggestion, there is no distinction between patent and non-patent cases in connection with this requirement.

Second, as it relates to their omissions-based claims, the very case on which Plaintiffs rely

---

[9] The only exception to this is with respect to the "unfair" prong of Plaintiffs' UCL claim. Opp. at 14-15. However, as long as the claim sounds in fraud, Rule 9(b) still applies. *See, e.g.*, *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1127 (9th Cir. 2009). Here, like the rest of their UCL claim, the unfair prong of Plaintiffs' claim sounds in the same allegedly fraudulent "acts and practices" described in the CAC. CAC ¶ 278. Thus, just like the rest of the claim, it must satisfy Rule 9(b).

acknowledges that the Third Circuit has not directly decided the issue. *Carson v. HP Inc.*, 750 F. Supp. 3d 376, 394-95 (D. Del. 2024). Moreover, there are multiple omission-based cases from this Circuit requiring a plaintiff to identify a particular individual from a company who had knowledge of the defect to satisfy Rule 9(b). *See, e.g.*, *Glauberzon*, 2011 WL 1337509, at *9-10 (dismissing omission claims because, *inter alia*, "Plaintiffs do not identify who at Pella was aware of the existence of a product-wide mullion defect … which [is] required under the Rule 9(b) pleading standard"); *Glass v. BMW of N. Am., LLC*, 2011 WL 6887721, at *8 (D.N.J. Dec. 29, 2011) (dismissing omission claims because plaintiff failed to allege "who at BMW NA possessed knowledge of the defect"); *Alban v. BMW of N. Am.*, 2011 WL 900114, at *5 (D.N.J. Mar. 15, 2011) (holding that an omission-based claim must allege "who at the company possessed such knowledge"). Consistent with this authority, Plaintiffs should not be permitted to plead their omission-based claims merely by referring to "Igloo."

### B.    Plaintiffs Do Not Identify Any Allegations Establishing Pre-Sale Knowledge

While Plaintiffs agree that they must allege pre-sale knowledge, they claim it "may be alleged generally." Opp. at 16. That may be true, but it does not excuse Plaintiffs from having to plead "sufficient factual matter" capable of plausibly supporting their allegations of such knowledge. *Ashcroft v. Iqbal*, 556 U.S. 662, 685 (2009). Thus, contrary to Plaintiffs' characterization, Plaintiffs cannot evade dismissal simply by raising non-particularized or implausible allegations of pre-sale knowledge and then claiming there is a factual dispute on the issue. Rather, they must plead facts that renders their allegation "plausible on its face." *Id.* at 678. According to the Opposition, the only supporting facts that Plaintiffs have pled to support their allegations of pre-sale knowledge are the 2024 redesign of the Cooler's tow handle and undated consumer complaints. These factual allegations do not plausibly establish any pre-sale knowledge.

As to the *post-sale* 2024 redesign, there are multiple reasons why that does not plausibly

establish any *pre-sale* knowledge. For one, while Plaintiffs speculate the redesign took "months if not years" to develop, they never allege when it actually began—much less that it began prior to the particular sales dates of Plaintiffs' Coolers. Moreover, Plaintiffs plead no facts establishing that the redesign actually took "months if not years" and are instead resting on naked speculation to that effect. Nor do they plead any facts establishing that Igloo conducted the redesign because of the "defect" as opposed to other reasons, such as performance, quality, or cost. Again, they are resting on nothing more than speculation. Plaintiffs' lack of factual support for these speculative inferences is directly underscored by their attempt to analogize the present circumstances to cases that took into account the existence of Technical Service Bulletins ("TSBs") in the car defect context. At the outset, unlike car defect cases—which typically deal with complex combustion engines and other highly-technical components embedded with various electrical devices—this case deals with the redesign of a simple plastic tow handle. It is simply not plausible that the redesign here would take anywhere near as long as a repair or redesign in the car defect context. Putting that aside, "TSBs are communications from a car manufacturer to dealers and mechanics that explain repair procedures to address *known problems*." *Persad v. Ford Motor Co*., 2018 WL 3428690, at *3 n.3 (E.D. Mich. July 16, 2018) (emphasis added). Thus, when coupled with pre-sale consumer complaints about the *same* problem, some courts have considered them. Here, in stark contrast, there is zero evidence that the redesign occurred because of the same "defect"—or even any problem at all. Nor is there evidence of any *pre-sale* consumer complaints, much less of any complaints that prompted the redesign. Thus, if anything, Plaintiffs' reliance on cases that considered TSBs only serves to further confirm that the redesign here does not suffice.

As to the consumer complaints, Plaintiffs do not dispute that the twelve pre-recall complaints on which they are relying are undated and that they have not pointed to a *single*

complaint preceding the sale of their Coolers. Nor do they do address any of the case law establishing that pre-sale knowledge cannot be established through either undated or post-sale complaints. Further, Plaintiffs do not address any of the case law establishing that, even if the twelve pre-recall complaints were also pre-sale, such a nominal number is insufficient. Rather than grapple with these issues, Plaintiffs attempt to obfuscate their allegations by baldly claiming that there were 78 complaints to the CPSC and that this must be sufficient. Opp. at 18. Yet, the CPSC webpage makes abundantly clear that all 78 of these complaints were reported "[s]ince the recall was announced"—a fact Plaintiffs tellingly fail to mention.[10] In other words, the 78 complaints cited in the Opposition actually *post-date* the sale of Plaintiffs' Coolers. This only serves to further confirm the insufficient nature of the consumer complaints on which Plaintiffs rely.

Given the absence of any other factual allegations demonstrating Igloo's alleged pre-sale knowledge, Plaintiffs are wrong that they can withstand dismissal simply by alleging that Igloo "knew or should have known of the Defect through adequate pre-market testing." Opp. at 18. Not only do Plaintiffs fail to cite any authority supporting this position, but existing case law squarely refutes it. *See, e.g.*, *Snowdy v. Mercedes-Benz USA, LLC*, 2024 WL 1366446, at *20 (D.N.J. Apr. 1, 2024) ("Plaintiffs must allege more than an undetailed assertion that the testing *must* have revealed the alleged defect.") (emphasis in original); *Diaz v. FCA US LLC*, 2022 WL 4016744, at *31 (D. Del. Sept. 2, 2022) (holding that evidence of pre-sale testing is not sufficient where the complaint failed to explain how the testing would have revealed the alleged defect); *Maugain v. FCA US LLC*, 2023 WL 1796113, at *10 (D. Del. Feb. 7, 2023) (same). Accordingly, Plaintiffs have provided no plausible basis to support their assertions of pre-sale knowledge.

---

[10] https://www.cpsc.gov/Recalls/2025/Igloo-Expands-Recall-of-90-Qt-Rolling-Coolers-Due-to-Fingertip-Amputation-and-Crushing-Hazards-Total-Recalled-Now-Nearly-1-2-Million (emphasis added).

C.      **Plaintiffs Have Provided No Legitimate Basis For Their DCFA Claim**

In the Opposition, Plaintiffs concede that the only purported connection between their claims and Delaware stems from the notion that Igloo advertised and sold Coolers to unnamed and unidentified Delaware consumers—none of whom are Plaintiffs in this action. Opp. at 19-20. As the cases cited in the Motion make clear, that is not a sufficient connection. Mot. at 21-22. Plaintiffs not only fail to address this authority, but they fail to cite any case supporting a contrary rule. Plaintiffs' position therefore only serves to confirm that their DCFA claim must be dismissed.[11]

III.    **Plaintiffs Have Provided No Grounds To Rectify Their Warranty Claims**

A.      **Plaintiffs Cannot Evade the Manifestation Requirement**

In the Motion, Igloo cited case law from each of the relevant jurisdictions establishing that a claim for breach of both an express and implied warranty requires the defect to have manifested during the warranty period. Mot. at 23-25. Plaintiffs seek to evade this requirement by claiming—without *any* legal support—that it is sufficient if their Coolers were "sold and delivered with a Defect." Opp. at 21-22; *see also id.* at 26.[12] If that were true, though, then the manifestation requirement would be eviscerated because any product defect can be said to exist when the product is "sold and delivered." In other words, Plaintiffs' position would permit a breach of warranty

---

[11] Plaintiffs also point to the fact that Igloo requested to have their claims heard here. Not only is that irrelevant, but it actually underscores why there can be no DCFA claim here. Had the claims proceeded outside of Delaware or Texas (Igloo's headquarters), no Plaintiff who was injured outside of the subject forum could have remained there because their claims would have no connection to the forum and because there would otherwise be no general jurisdiction. Igloo sought transfer to Delaware precisely because there is general jurisdiction here, meaning the Court can hear Plaintiffs' claims *regardless* of any connection between the alleged conduct and Delaware.

[12] Instead of citing any applicable authority, Plaintiffs cite authority providing that the limitations period for a breach of implied warranty claim begins to run at the point of sale. *Id*. at 25. That is completely immaterial, however, as it merely establishes that the limitations period begins to run at the point of sale *if* the defect manifests during the warranty period. If the defect does not manifest during that period, then the statutory period is never triggered in the first instance.

claim regardless of whether or when the defect manifested—effectively voiding any warranty period. The manifestation requirement cannot be evaded in this manner. Indeed, as the slew of authority cited in the Motion makes clear, a warranty claim requires more than existence of an alleged defect at the point of sale—it requires actual manifestation during the warranty period. *See* Mot. at 23-24 (citing cases); *see also Klein v. Ljubljana Inter Auto d.o.o.*, 2021 WL 6424917, at *4 (C.D. Cal. Sept. 13, 2021).[13] Plaintiffs have provided no legal basis to find otherwise.

Plaintiffs do not dispute that there is *no one* who claims to have pinched their finger during the warranty period. Thus, Plaintiffs' warranty claims fail for lack of any defect manifestation.

### B.    Plaintiffs Provide No Basis to Evade the Presentation Requirement

Plaintiffs acknowledge that, under the applicable state laws, a product must be presented for repair to establish a viable breach of express warranty. Opp. at 22-23. They also acknowledge that they did not plead any such presentation in the CAC. In an effort to evade this deficiency, Plaintiffs argue that the presentation requirement is excused for "manifest but undiscovered defects due to the fault of the seller." *Id*. at 23. Even if the defect was "manifest" during the warranty period (it was not), this argument fails for multiple reasons. First, none of the case law that Plaintiffs cite dealt with the presentation requirement or held that the "manifest but undiscovered defects" concept overrides this requirement. Second, Plaintiffs do not cite case law from any of the relevant jurisdictions to support this proposition.[14] Finally, as discussed in Section II(B),

---

[13] Plaintiffs only response to the plethora of authority cited in the Motion is to claim that they deal with defects in a "product line" or "which may, ultimately, manifest in a product." Opp. at 22. It is unclear how that gives rise to any distinction whatsoever. Here, the alleged defect exists in a product line—the Recalled Coolers. That alleged defect may or may not (and most likely will not) manifest in a finger injury. Thus, in fact, this case is just like the cases cited in the Motion.

[14] Instead of citing applicable authority, Plaintiffs cite a single California case that addressed and *rejected* the plaintiff's reliance on this theory. *See Daugherty v. Am. Honda Motor Co.*, 144 Cal. App. 4th 824, 832 n.3 (2006). The *Daugherty* court found this theory inapplicable because, like

Plaintiffs have not pled any facts plausibly establishing any knowledge on Igloo's part during the relevant warranty periods, which is required by the case law that Plaintiffs cite. For any or all of these reasons, Plaintiffs cannot rely on this concept to evade the presentation requirement.

The only other argument Plaintiffs raise in an attempt to evade the presentation requirement is to claim that it would be "futile" to seek any repair because the recall repair process is "entirely distinct" from the warranty process. Opp. at 23-24. This argument also fails for multiple reasons. First, for each Plaintiff, the Recall occurred *after* the expiration of the warranty period. Thus, had Plaintiffs presented their Coolers for repair during their warranty periods, they would have gone through the precise warranty process that they claim should apply here. Indeed, given that the Recall had not occurred during the relevant warranty periods, Plaintiffs would have had no basis to even presume any futility during that period. Second, contrary to Plaintiffs' assertions, Igloo certainly has not "made clear" that it will not repair the Coolers in accordance with the terms of the warranty. Opp. at 24. Just the opposite. The warranty requires Igloo to "repair the product free of charge." Mot. at 26. That is precisely what Igloo has done by offering all consumers a free Replacement Handle that repairs the alleged defect—a fact Plaintiffs do not dispute. It is immaterial that consumers must install the Replacement Handle themselves as it is *Igloo* who is providing the Replacement Handle free of charge. Igloo has not required consumers to pay for the Replacement Handle, which does not cost money to install. Nor has it required consumers to fabricate their own repair. Igloo's offer therefore fully comports with the terms of the warranty.[15]

---

here, the defect did not manifest during the warranty period and there were also no credible allegations to support an inference that the seller knew of the defect prior to sale. *Id.* at 831-32.

[15] It is also immaterial that consumers are instructed not to return the product to a retailer. Plaintiffs have alleged no facts that their retailers would not permit the return of their Coolers if they were within the return policy, which is the only type of return that the warranty contemplates.

## IV.    **Plaintiffs Have Not Provided Any Basis to Save Their Unjust Enrichment Claims**

Plaintiffs raise two arguments in defense of their unjust enrichment claim: (1) the claim falls outside the express warranty, and (2) there is a question of fact as to whether the Recall provided Plaintiffs with what they intended to obtain Opp. at 26-29. Neither is persuasive. As to the first argument, Plaintiffs ignore their own allegations. In their express warranty count, Plaintiffs allege that Igloo warranted the Coolers would be "free from defects," that the warranty failed in its essential purpose because Igloo "failed to disclose… the existence of the Defect," and that the Coolers have "diminished value" as a result. CAC ¶¶ 171-178. That is exactly the same thing Plaintiffs allege in their unjust enrichment count—which claims that Plaintiffs' Coolers are defective, that Igloo concealed the alleged defect, and that the Coolers are worth less than what Plaintiffs paid as a result. *Id*. at ¶¶ 207-208.[16] If that were not independently dispositive, Plaintiffs also do not dispute that they expressly incorporated their contractual allegations into their unjust enrichment claims. *See* CAC ¶ 202. As *Van Zeeland v. McNally* makes clear, where that is the case, the claim is not "outside the contract." 532 F. Supp. 3d 557, 574 (N.D. Ill. 2021). As such, based on the facts as pled, the claim must be dismissed under the laws of the applicable states.

As to their second argument, Plaintiffs do nothing more than repeat the same conclusory allegations that the Coolers are defective and that the Recall is inadequate. Opp. at 29. For the same reasons these allegations do not give rise to an actual injury (*see* Mot. at 6-13, *supra* at Section I(A)(1)), they do not plausibly support a claim for unjust enrichment. The unjust enrichment claim therefore also fails for this additional reason.

---

[16] This stands in direct contrast with the case Plaintiffs cite, where some of the plaintiffs were allowed to proceed with their unjust enrichment claim because the defendants made alleged "additional representations" about the product that fell "outside the limited warranty." *Barrera v. Samsung Elecs. Am., Inc.*, 2019 WL 1950295, at *5 (C.D. Cal. Feb. 27, 2019).

Dated: January 20, 2026

Respectfully submitted,

**COZEN O'CONNOR**

*/s/ Kaan Ekiner*
Kaan Ekiner (#5607)
Hugh J. Marbury (#7427)
1201 North Market St., Ste. 1001
Wilmington, DE 19801
(302) 295-2000
kekiner@cozen.com
hmarbury@cozen.com

Erica Rutner (*Pro Hac Vice*)
Michael Puretz (*Pro Hac Vice*)
501 E. Las Olas Blvd. Suite 300
Fort Lauderdale, FL 33301
(561) 750-3850
erutner@cozen.com
mpuretz@cozen.com

John A. Bertino (*Pro Hac Vice*)
2001 M Street NW, Suite 500
Washington, D.C. 20036
(202) 912-4800
jbertino@cozen.com

*Attorneys for Defendant*
*Igloo Products Corp.*