**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| IN RE IGLOO PRODUCTS COOLER RECALL LITIGATION | CIVIL ACTION NO. 1:25-cv-298-JLH CONSOLIDATED |

**DEFENDANT'S REPLY IN SUPPORT OF MOTION TO STRIKE NATIONWIDE CLASS ALLEGATIONS PURSUANT TO RULE 23(D)(1)(D)**

**COZEN O'CONNOR**

Kaan Ekiner (#5607)
Hugh J. Marbury (#7427)
1201 North Market St., Ste. 1001
Wilmington, DE 19801
(302) 295-2046
kekiner@cozen.com
hmarbury@cozen.com

Erica Rutner (*Pro Hac Vice*)
Michael Puretz (*Pro Hac Vice*)
501 E. Las Olas Blvd. Suite 300
Fort Lauderdale, FL 33301
(561) 750-3850
erutner@cozen.com
mpuretz@cozen.com

John A. Bertino (*Pro Hac Vice*)
2001 M Street NW, Suite 500
Washington, D.C. 20036
(202) 912-4800
jbertino@cozen.com

*Attorneys for Defendant*

Dated: January 20, 2026

# TABLE OF CONTENTS

**Page**


I. Plaintiffs Cannot Save The Nationwide MMWA Claims By Arguing That The Choice-Of-Law Analysis Is Premature ..... 2

A. Plaintiffs Fail to Explain How Discovery Could Change the Outcome of the Choice-of-Law Analysis ..... 2

B. Plaintiffs Cannot Evade the Inevitable Conflicts In the Applicable State Laws ..... 4

II. Plaintiffs Have Provided No Basis to Save their Nationwide DCFA Claim ..... 7

# TABLE OF AUTHORITIES

**Cases**

*Almond v. Jenson*,
337 F.R.D. 90 (E.D. Pa. 2020) ... 6

*Arçelik v. E. I. du Pont de Nemours & Co.*,
2018 WL 1401327 (D. Del. Mar. 20, 2018) ... 8

*Chudner v. TransUnion Interactive, Inc.*,
2010 WL 11710658 (D. Del. Mar. 4, 2010) ... 7

*In re Gen. Motors Air Conditioning Mktg. & Sales Pracs. Litig.*,
568 F. Supp. 3d 837 (E.D. Mich. Oct. 26, 2021) ... 4

*In re Kia Hyundai Vehicle Theft Litig.*,
2024 WL 2104571 (C.D. Cal. Apr. 22, 2024) ... 6

*In re Warfarin Sodium Antitrust Litig.*,
212 F.R.D. 231 (D. Del. 2002) ... 8

*Lony v. E.I. du Pont de Nemours & Co., Inc.*,
821 F. Supp. 956 (D. Del. 1993) ... 8

*Marshall v. Priceline.com Inc.*,
2006 WL 3175318 (Del. Super. Ct. Oct. 31, 2006) ... 8

*Miles v. Am. Honda Motor Co.*,
2017 WL 4742193 (N.D. Ill. Oct. 19, 2017) ... 6

*Pilgrim v. Universal Health Card, LLC*,
660 F. 3d at 949 (6th Cir. 2011) ... 6

*Schmidt Loduca v. WellPet LLC*,
2022 WL 2304308 (E.D. Pa. June 27, 2022) ... 2, 5

*Sullivan v. DB Invs., Inc.*,
667 F.3d 273 (3d Cir. 2011) ... 5

Plaintiffs' Opposition[1] does not refute either of the grounds for striking Plaintiffs' nationwide class claims. As to the nationwide MMWA claim, Plaintiffs do nothing more than claim that the choice-of-law analysis is premature at this stage. Yet, they offer zero explanation as to how discovery could potentially change the outcome of that analysis—namely, that the laws of all fifty states apply. Indeed, they do not identify even a single scenario in which discovery could show that the laws of all fifty states do not apply. Nor do they identify a single case in which discovery showed that a nationwide MMWA claim was governed by the laws of fewer than all fifty states. Plaintiffs also fail to appreciate that Igloo's Motion does not turn on knowing exactly *which* state's warranty laws will apply to any particular class member's claims. Instead, it turns on the fact that *different* state warranty laws will necessarily apply to different class members' claims depending on where they purchased their Coolers, where they used their Coolers, where they reside, etc. In the absence of any explanation as to how discovery could change that outcome, Plaintiffs' argument that the choice-of-law analysis is premature rings hollow.

As to the nationwide DCFA claim, Plaintiffs do not dispute that they cannot pursue this claim on a classwide basis if the Court dismisses the claim on an individual basis. Thus, the Court need not even engage with Plaintiffs' after-the-fact attempt to establish a sufficient causal nexus between their claims and Delaware. Putting that aside, Delaware law is also clear that the arguments Plaintiffs raise as to why there is a sufficient causal nexus are insufficient. As such, Plaintiffs have provided no basis to save their nationwide DCFA claim.

Accordingly, and for the reasons discussed in more detail below and in the Motion, the Court should strike Plaintiffs' nationwide class claims.

---

[1] Igloo's Motion to Strike is referred to herein as the "Motion" or "Mot." Plaintiffs' Opposition to the Motion is referred to herein as the "Opposition" or "Opp." All capitalized terms not otherwise defined herein have the meaning ascribed to them in the Motion.

## I. Plaintiffs Cannot Save The Nationwide MMWA Claims By Arguing That The Choice-Of-Law Analysis Is Premature

### A. Plaintiffs Fail to Explain How Discovery Could Change the Outcome of the Choice-of-Law Analysis

To defeat a motion to strike class allegations under Rule 23(d)(1)(D), a putative class representative must "explain how discovery could 'produce persuasive information substantiating the class action allegations.'" *See Schmidt Loduca v. WellPet LLC*, 2022 WL 2304308, at *5 (E.D. Pa. June 27, 2022). As applied, that means Plaintiffs must affirmatively explain how discovery could show that the laws of fewer than all fifty states will apply to the nationwide MMWA claims. Plaintiffs expressly decline to do so. Instead, all they argue is that any sort of choice-of-law analysis is premature and so it is not a "foregone conclusion that the laws of all fifty states will apply." Opp. at 6. That is not sufficient.

In the Motion, Igloo identified the factors that bear on the choice-of-law analysis and explained how those factors will necessarily lead to the application of the laws of all fifty states. Mot. at 5-6. Notably, that outcome is *directly consistent* with the CAC—which invokes various state laws in connection with the claims of each named Plaintiff.[2] That outcome is also *directly consistent* with Plaintiffs' Opposition to Igloo's Motion to Dismiss—which also invokes various state laws in connection with the claims of each named Plaintiff [ECF No. 75]. Indeed, in the Opposition, Plaintiffs expressly argue that Igloo breached its implied warranties "under California, Illinois, Massachusetts, and Missouri law"—the states in which each Plaintiff resides and/or purchased their respective Coolers. *Id.* at 25. Plaintiffs provide zero explanation as to how or why discovery could reveal facts that lead to a different outcome. They do not identify any disputed

[2] In particular, the Plaintiffs who purchased and reside in California bring various claims under California law; the Plaintiff who purchased and resides in Illinois brings various claims under Illinois law; and, the Plaintiff who purchased in Missouri and resides in Massachusetts brings various claims under the laws of these respective states. *See* CAC, Counts VI-XIII.

facts that must be resolved by discovery before the Court can reach that outcome. And they do not provide even one hypothetical scenario in which discovery could produce a different outcome.

Plaintiffs do not explain how discovery could change the outcome of the choice-of-law analysis because they cannot. They cannot, and do not, dispute that four of the five factors that apply under Restatement § 188 (place of contracting, place of negotiation, place of performance, and location of the contract's subject matter) necessarily favor application of the laws of all fifty states—no matter what discovery may show.[3] They also cannot, and do not, dispute that the remaining factor (domicile of the parties) also favors, in part, application of the laws of all fifty states—no matter what discovery may show. At most, Plaintiffs point out that Igloo is domiciled in Delaware. Opp. at 7. But that is not a disputed issue requiring any discovery. And, tellingly, Plaintiffs provide zero explanation as to how discovery could ever reveal facts that would permit that sole fact to alter the outcome of the analysis. They also do not identify any case law in which that sole fact dictated the outcome of the choice-of-law analysis. In fact, they do not identify even a *single case* where discovery revealed that a nationwide MMWA claim should be governed by the laws of fewer than all fifty states.

Rather than provide the necessary explanation or even any pertinent legal authority, Plaintiffs ask the Court to allow the nationwide MMWA claim to proceed simply because the choice-of-law analysis is purportedly "premature" without a more "developed factual record." Opp. at 8. Plaintiffs then cite cases that deferred the choice of law analysis at the motion to dismiss stage in connection with a particular plaintiff's claims. *Id.*[4] But this is not a motion to dismiss that

---

[3] While Plaintiffs also reference the principles from Section 6 of the Restatement, they tellingly fail to explain how or why any of those principles could result in applying the laws of fewer than all fifty states—much less how or why discovery would bear on the application of those principles.

[4] The one case Plaintiffs cite that actually addressed a motion to strike did not deny the motion because discovery was needed to complete the choice-of-law analysis. *See In re Gen. Motors Air*

requires the Court to determine which state's laws apply to a particular class member's claims. In fact, for purposes of this Motion, it does not matter *which* particular state warranty laws apply to any particular class member's claims. What matters is whether *different* state warranty laws will apply to different class member's claims, depending on where class members purchased their Coolers, where they used their Coolers, where they reside, etc. Indeed, given that the Coolers are sold "throughout the United States of America" (CAC at ¶ 32), that is the only plausible outcome unless all class members' warranty claims are somehow governed by the laws of a single state.[5] Plaintiffs have certainly provided no basis to find that each class member's warranty claims will be governed by the laws of a single state—which would be inconsistent with the position they took in their Opposition to the Motion to Dismiss. Nor have they identified any disputed facts that, depending on the outcome of discovery, could lead to such an outcome. Accordingly, based on the facts pled in the CAC (not to mention Plaintiffs' own legal positions), it is not premature for the Court to decide that the nationwide MMWA claims will be governed by the laws of all fifty states.

**B. Plaintiffs Cannot Evade the Inevitable Conflicts In the Applicable State Laws**

Just as Plaintiffs are wrong in claiming that the Court can put off determining that the laws

---

*Conditioning Mktg. & Sales Pracs. Litig.*, 568 F. Supp. 3d 837 (E.D. Mich. Oct. 26, 2021) ("*In re GM*"). Rather, the court denied the motion because the defendant had not (a) "completed a choice-of-law analysis," (b) "shown that under that analysis, 'the consumer-protection laws of the potential class members' home States will govern their claims,'" or (c) provided the Court a detailed and careful showing of the precise differences between the various state laws that could apply to Plaintiffs' claims." *Id.* at 845. In so doing, the court distinguished a Sixth Circuit case where the court did strike the claims of a nationwide class after the defendant provided the analysis that was missing in *In re GM*. Here, unlike *In re GM*, and like the Sixth Circuit case that *In re GM* distinguished itself from, Igloo both conducted a choice of law analysis showing that the laws of all fifty states will apply and also detailed for the Court the relevant differences between the various state warranty laws. Mot. at 5-6. Plaintiffs do not claim otherwise.

[5] This is further reinforced by Plaintiffs' allegation that the Coolers are sold at major US retailers "such as Costco, Target, Dicks, Amazon, and directly from Igloo via their online store." CAC at ¶ 3. Thus, there is no plausible scenario in which the place of purchase, place of use, place of residence, etc. will be limited to fewer than all fifty states.

of all fifty states will apply, they are also wrong in claiming that the Court can put off assessing whether and to what extent there is a conflict in those laws. Plaintiffs do not dispute the clear and material differences that exist in the varying state warranty laws, which are detailed in the Motion. Nor do they dispute that those differences bear directly on the resolution of their breach of warranty claims. Thus, contrary to Plaintiffs' assertions, the Court certainly can assess at this stage whether there are conflicts amongst the applicable state laws without engaging in speculation.[6]

Plaintiffs are also wrong that they can evade these conflicts by claiming—without any explanation—that state laws can be grouped into a "limited number of predicate patterns" or addressed through "multi-state subclasses." Opp. at 12. Again, Plaintiffs have provided zero explanation as to how the numerous undisputed differences in the varying state laws can be limited to a manageable number of patterns in connection with a nationwide MMWA claim. Nor do they provide any explanation as to how these conflicts can be managed through proposed subclasses. They simply speculate that this might be possible, without providing any roadmap for how it would actually be possible. That is not sufficient even at this stage. *See Schmidt Loduca*, 2022 WL 2304308, at *5 (to avoid the striking of class allegations, plaintiffs should provide a "roadmap" for how the case could proceed as a class action).

Tellingly, the only Third Circuit case Plaintiffs cite in attempting to evade the differences in state laws demonstrates precisely why they cannot do so. *See Sullivan v. DB Invs., Inc.*, 667 F.3d 273 (3d Cir. 2011). In *Sullivan*, the Circuit Court held that "state law variations are largely

[6] For this same reason, Plaintiffs are wrong that "it is not possible for the Court to determine whether there is an actual conflict between the various potentially applicable state laws at this time." Opp. at 6. Given the undisputed conflicts that exist amongst the laws of the fifty states, so long as the laws of all fifty states even potentially apply—an outcome that is consistent with the different state warranty laws invoked in the Opposition to the Motion to Dismiss—then there will necessarily be a conflict necessitating application of the choice-of-law analysis.

'irrelevant to certification of a *settlement* class'" because settlements "obviate[] the difficulties inherent in proving the elements of varied claims at trial or in instructing a jury on varied state laws." *Id.* at 303-04 (emphasis added). Unlike *Sullivan*, this case deals with a nationwide litigation class—not a nationwide settlement class. Thus, unlike in *Sullivan*, the difficulties here cannot be obviated and are very much relevant. As such, rather than help Plaintiffs evade the conflicts in the varying state warranty laws, *Sullivan* only serves to underscore why those conflicts necessarily preclude certification of the nationwide MMWA claim.

Notably, Plaintiffs do not cite a single case that declined to strike a nationwide class claim pursuant to Rule 23(d)(1)(D) (much less a nationwide MMWA claim) where, as here, the defendant conducted a choice-of-law analysis and identified the relevant variations in the laws of the fifty states. Rather than cite any case law to that effect, Plaintiffs ask the Court to simply ignore all the case law that Igloo cited where courts did strike nationwide class claims. For instance, they ask the Court to ignore *Miles v. Am. Honda Motor Co.*, 2017 WL 4742193, at *1 (N.D. Ill. Oct. 19, 2017), a case where the court struck a nationwide MMWA claim, because the case is purportedly "unusual." Opp. at 12. Yet, the fact that Plaintiffs cannot identify any case law that is inconsistent with *Miles* demonstrates just the opposite. Plaintiffs also ask the Court to ignore *Almond v. Jenson*, 337 F.R.D. 90 (E.D. Pa. 2020), and *In re Kia Hyundai Vehicle Theft Litig.*, 2024 WL 2104571 (C.D. Cal. Apr. 22, 2024), because these cases dealt with different types of claims. Opp. at 10-11. However, the particular causes of action that these courts addressed do not bear on the underlying principle for which Igloo cited them—namely, that a nationwide class should be stricken at the pleading stage where it is governed by the varying laws of the fifty states. That principle, which also formed the basis for the Sixth Circuit's decision in *Pilgrim v. Universal Health Card, LLC*, 660 F. 3d at 949 (6th Cir. 2011) (a case Plaintiffs do not even attempt to

distinguish), applies regardless of the particular claims at issue. Thus, Plaintiffs have provided no legal basis for evading the basic predicate of the Motion—that where (as here) a nationwide class claim is governed the conflicting laws of the fifty states, the claim should be stricken at the outset.

## II. Plaintiffs Have Provided No Basis to Save their Nationwide DCFA Claim

In an attempt to save their nationwide DCFA claim, Plaintiffs raise various arguments as to why there is a sufficient causal nexus between their claims and Delaware. These arguments fail both as a matter of procedure and as a matter of substance.

At the outset, as a matter of procedure, Plaintiffs do not dispute that they cannot pursue any type of classwide claim if they cannot also pursue that same claim in their individual capacity. Accordingly, if Plaintiffs' individual DCFA claims are dismissed in connection with Igloo's pending Motion to Dismiss, then Plaintiffs necessarily cannot pursue a nationwide DCFA claim—irrespective of the arguments raised in their Opposition and irrespective of what discovery might ultimately show. For this basic reason, the Court need not even engage with Plaintiffs' arguments regarding the alleged causal nexus between their claims and Delaware.

Putting that aside, as a matter of substance, Plaintiffs' attempts to establish a sufficient causal nexus between their claims and Delaware are insufficient. Plaintiffs first argue that Igloo is incorporated in Delaware. Opp. at 13. Relatedly, because it is incorporated in Delaware, Plaintiffs claim that Igloo has "directed and availed itself of Delaware's business friendly environment and laws." *Id*. However, it is well settled that "[m]ere incorporation in Delaware does not trump the DCFA's standing requirement." *Chudner v. TransUnion Interactive, Inc.*, 2010 WL 11710658, at *1 n.1 (D. Del. Mar. 4, 2010). Thus, these facts plainly do not suffice.

Plaintiffs next argue that Igloo sought to have the claims litigated in this forum. Opp. at 13. That is completely immaterial, however, as it does not place any of the allegedly deceptive conduct within Delaware—which is required for a DCFA claim. *See* Mot. at 9. In fact, rather than support

their ability to pursue a DCFA claim, Plaintiffs' argument only undercuts it. Igloo sought to have Plaintiffs' claims heard in Delaware only because there is general jurisdiction here—meaning the Court can hear Plaintiffs' claims *in the absence* of any connection between the alleged conduct and Delaware. Thus, in reality, Igloo's preference for this forum only underscores that there is no substantive connection between Plaintiffs' claims and Delaware.

Plaintiffs lastly argue that Igloo generally conducts business in Delaware, including the marketing and sale of the Coolers to unnamed and unidentified "class members in Delaware." *Id.* at 14. But Plaintiffs do not allege that *they* did any business with Igloo in Delaware or that *they* purchased any Coolers in Delaware. Nor do they claim that Igloo authored, commenced, or directed any of the allegedly fraudulent act *from* Delaware—which is not Igloo's principal place of business (*see* CAC at ¶ 27). Thus, their contention in this regard also does not suffice. *See Marshall v. Priceline.com Inc.*, 2006 WL 3175318, at *2 (Del. Super. Ct. Oct. 31, 2006) (it is not sufficient to claim that a putative class "must include thousands of Delaware residents, and thus fraudulent transactions must have occurred within the State," if "these Delaware residents are unidentified and the fraudulent acts alleged to have been committed are not specified"). Indeed, the generic and non-particularized allegations on which Plaintiffs are relying here stand in stark contrast with the cases they cite—where the plaintiffs had specifically alleged that the misrepresentations actually commenced and were directed *from* Delaware.[7]

In sum, Plaintiffs' attempts to manufacture a causal nexus between their claims and

[7] *See Arçelik v. E. I. du Pont de Nemours & Co.*, 2018 WL 1401327, at *9 (D. Del. Mar. 20, 2018) (defendant "'authored, published, and disseminated [its] misrepresentations *from the state of Delaware*.'") (emphasis added); *In re Warfarin Sodium Antitrust Litig.*, 212 F.R.D. 231, 248 n.15 (D. Del. 2002) ("defendant's deceptive conduct 'arose, was directed and emanated *from Delaware*.'") (emphasis added); *Lony v. E.I. du Pont de Nemours & Co., Inc.*, 821 F. Supp. 956, 962 (D. Del. 1993) ("the alleged misrepresentation commenced *in Delaware*") (emphasis added).

Delaware are both procedurally irrelevant and substantively inaccurate. In the absence of any other argument, Plaintiffs have proffered no basis to save their nationwide DCFA claim.

Dated: January 20, 2026

Respectfully submitted,

**COZEN O'CONNOR**
*/s/ Kaan Ekiner*
Kaan Ekiner (#5607)
Hugh J. Marbury (#7427)
1201 North Market St., Ste. 1001
Wilmington, DE 19801
(302) 295-2000
kekiner@cozen.com
hmarbury@cozen.com

Erica Rutner (*Pro Hac Vice*)
Michael Puretz (*Pro Hac Vice*)
501 E. Las Olas Blvd. Suite 300
Fort Lauderdale, FL 33301
(561) 750-3850
erutner@cozen.com
mpuretz@cozen.com

John A. Bertino (*Pro Hac Vice*)
2001 M Street NW, Suite 500
Washington, D.C. 20036
(202) 912-4800
jbertino@cozen.com

*Attorneys for Defendant*