IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| IN RE IGLOO PRODUCTS COOLER RECALL LITIGATION | ) ) ) ) | C.A. No. 25-298-JLH-EGT CONSOLIDATED |

**REPORT AND RECOMMENDATION**

Presently before the Court are the motions by Defendant Igloo Products Corp. ("Defendant" or "Igloo") to dismiss the Consolidated Class Action Complaint ("the Complaint") and to strike nationwide class allegations from the Complaint. (D.I. 62 & 64). For the reasons set forth below, the Court recommends that Igloo's motion to dismiss be GRANTED-IN-PART and DENIED-IN-PART and that Igloo's motion to strike be DENIED as MOOT.[1]

## I. BACKGROUND

According to Plaintiffs, between January 2019 and January 2025, Igloo designed and sold approximately 1.2 million Igloo Flip & Tow 90 Quart Coolers ("Coolers") with a "dangerously defective tow handle that can 'pinch consumers' finger tips against the cooler, posing fingertip amputation and crushing hazards.'" (D.I. 58 ¶ 4 (citation omitted)). Because of the pinching issue, Igloo implemented a free-of-charge Replacement Handle Kit, which requires consumers to order replacement tow handles from Igloo's website and complete the installation themselves. (*Id.* ¶ 11). Igloo apparently estimates that the process for registration and receipt of the replacement kit takes

[1] Because Plaintiffs' claims under the Magnuson-Moss Warranty Act have been dismissed (D.I. 87), the Court does not reach Igloo's arguments as to those claims. And Igloo only seeks to strike Plaintiffs' claims under the Magnuson-Moss Warranty Act and Delaware Consumer Fraud Act. (*See* D.I. 64). Because the Court recommends that Igloo's motion to dismiss Plaintiffs' claims under the Delaware Consumer Fraud Act be GRANTED, the Court recommends that Plaintiffs motion to strike be DENIED as MOOT in its entirety.

between two and four weeks. (*Id.* ¶ 13). Igloo has not, to date, offered consumers a refund or replacement Cooler. (*Id.* ¶ 11).

On February 13, 2025, the U.S. Consumer Product Safety Commission ("CPSC") issued a recall notice for approximately 1,060,000 of the Coolers "manufactured prior to January 2024." (*Id.* ¶ 5 (quoting February 2025 Recall Notice)).[2] In that recall notice, the CPSC stated that Igloo had "received 12 reports of fingertip injuries, including fingertip amputations, bone fractures, and lacerations." (*Id.* ¶ 8 (quoting February 2025 Recall Notice)). On May 8, 2025, the CPSC expanded its recall by 130,000 to nearly 1.2 million Coolers manufactured before January 2024. (*Id.* ¶ 6); May 2025 Recall Notice. In the May 2025 recall notice, the CPSC stated that "[s]ince the recall was announced in February 2025, Igloo has received 78 reports of fingertip injuries, including 26 resulting in fingertip amputations, bone fractures or lacerations." *See* May 2025 Recall Notice. The CPSC advised consumers to "immediately stop using the recalled coolers and contact Igloo for a free replacement handle." (*See* D.I. 58 ¶ 7); February 2025 Recall Notice; May 2025 Recall Notice.

Named Plaintiffs Anthony Zannettino, Kathryn Trainor, Robert Castellano, Vy Nguyen, Jose Barragan and Kristen Riffle ("Plaintiffs") purchased Coolers from various retail stores in the United States between October 2022 and September 2023. (D.I. 58 ¶¶ 21-26). Zannettino, Castellano, Nguyen and Barragan reside in California and purchased their Coolers in California.

---

2 In their Complaint, Plaintiffs hyperlinked several documents relevant to this decision, including the February 2025 recall notice, May 2025 recall notice and Igloo's warranty policy. (*See* D.I. 58 ¶ 3 n.3 (February 2025 Recall Notice), ¶ 4 n.4 (May 2025 Recall Notice) & ¶ 171 n.25 (Igloo Warranty)). Because the documents were therefore "incorporated into the complaint by reference," the Court may consider them on a motion to dismiss. *Tellabs, Inc. v. Makor Issues & Rts., Ltd.*, 551 U.S. 308, 322 (2007); *see Est. of Roman v. City of Newark*, 914 F.3d 789, 797 n.6 (3d Cir. 2019) (considering article and press release hyperlinked in complaint on motion to dismiss because "they are referenced in the amended complaint" (citing *Tellabs*, 551 U.S. at 322)).

(*Id.* ¶¶ 21-24). Zannettino never experienced pinching issues nor ordered a replacement tow handle from Igloo. (*Id.* ¶¶ 59-64). Although Castellano never personally experienced the pinching issue, his son was pinched by the handle "[s]everal months" before Castellano "received notice of the Recall." (*Id.* ¶¶ 68-70). Castellano ordered a replacement tow handle from Igloo but never installed it because "he does not feel confident that he can 'fix' the Cooler to prevent any injuries." (*Id.* ¶ 71). Nguyen and Barragan both experienced pinching issues "almost immediately after purchasing" their Coolers but never ordered replacement tow handles from Igloo. (*Id.* ¶¶ 77 & 85). Riffle resides in Illinois and purchased her Cooler in Illinois. (*Id.* ¶ 26). Trainor resides in Massachusetts and purchased her Cooler in Missouri. (*Id.* ¶ 25). Neither Riffle nor Trainor experienced pinching issues nor ordered replacement tow handles from Igloo. (*Id.* ¶¶ 89-100).

Plaintiffs filed the operative Complaint on October 21, 2025,[3] asserting claims for violation of the Magnuson-Moss Warranty Act (15 U.S.C. § 2301, *et seq.*), violation of the Delaware Consumer Fraud Act (6 *Del. C.* § 2511, *et seq.*) ("DCFA"), breach of express warranty, breach of implied warranty, unjust enrichment, violation of the California's Song-Beverly Consumer Warranty Act (Cal. Civ. Code § 1790, *et seq.*), violation of the California's Consumer Legal Remedies Act (Cal. Civ. Code § 1750, *et seq.*) ("CLRA"), violation of California's False Advertising Law (Cal. Bus. & Prof. Code § 17500, *et seq.*) ("FAL"), violation of California's Unfair Competition Law (Cal. Bus. & Prof. Code § 17200, *et seq.*) ("UCL"), violation of the Massachusetts Consumer Protection Act (Mass. Gen. Laws Ann. Ch. 93A, § 1, *et seq.*) ("MCPA"), violation of the Missouri Merchandise Practices Act (Mo. Rev. Stat. § 407.010, *et seq.*) ("MMPA"), violation of the Illinois Consumer Fraud and Deceptive Business Practices Act (815

[3] The Court incorporates its prior summary of this action's procedural history, including prior consolidations. (*See* D.I. 52 at 1-2).

ILCS § 505, *et seq*.) ("ILFA") and violation of the Illinois Uniform Deceptive Trade Practices Act (815 ILCS § 510/1, *et seq*.) ("IDTPA"). (*See generally* D.I. 58).

On November 20, 2025, Igloo filed the present motion to dismiss under Federal Rules of Civil Procedure 12(b)(1), 12(b)(6) and 9(b), arguing that all claims should be dismissed in their entirety. (*See* D.I. 62 & 63). That same day, Igloo filed the present motion to strike Plaintiffs' nationwide class allegations under Federal Rule of Civil Procedure 23(d)(1)(D), arguing that Plaintiffs' Magnuson-Moss Warranty Act and Delaware Consumer Fraud Act claims should be stricken in their entirety. (*See* D.I. 64 & 65). The motions are fully briefed. (*See* D.I. 75-78).

## II. <u>LEGAL STANDARD</u>

In ruling on a motion to dismiss under Rule 12(b)(6), the Court must accept all well-pleaded factual allegations in the complaint as true and view them in the light most favorable to the plaintiff. *See Mayer v. Belichick*, 605 F.3d 223, 229 (3d Cir. 2010); *see also Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 232-33 (3d Cir. 2008). The Court is not, however, required to accept as true bald assertions, unsupported conclusions or unwarranted inferences. *See Mason v. Delaware (J.P. Court)*, C.A. No. 15-1191-LPS, 2018 WL 4404067, at *3 (D. Del. Sept. 17, 2018); *see also Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997). Dismissal under Rule 12(b)(6) is only appropriate if a complaint does not contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009). This plausibility standard obligates a plaintiff to provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555. Instead, the pleadings must provide sufficient factual allegations to allow the Court to "draw the reasonable inference that the defendant is liable

for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1420 (3d Cir. 1997) (cleaned up).

## III. DISCUSSION

Igloo seeks dismissal of all claims under Rules 12(b)(6) and 9(b) for failure to state a claim. Igloo moves under Rule 12(b)(1) to dismiss for lack of standing (1) all claims asserted by named Plaintiffs that never experienced pinching issues, (2) claims asserted under Delaware law and (3) claims asserted under Massachusetts law. The Court begins with Igloo's standing arguments.

### A. Motion to Dismiss for Lack of Standing Under Rule 12(b)(1)

#### 1. Physically Uninjured Named Plaintiffs

Igloo argues that the named Plaintiffs that did not experience the alleged pinching defect – that is, Zannettino, Trainor, Castellano[4] and Riffle (hereinafter, "the physically uninjured Plaintiffs") – lack Article III standing for failure to adequately plead an injury-in-fact. (D.I. 63 at 6-13; D.I. 77 at 1-7). Plaintiffs insist that the physically uninjured Plaintiffs suffered economic losses under the benefit-of-the-bargain theory sufficient to establish Article III standing. (D.I. 75 at 4-11). The Court agrees with Plaintiffs.

Article III of the United States Constitution "limits the jurisdiction of federal courts to 'Cases' and 'Controversies.'" *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 559 (1992) (quoting U.S. CONST. art. III, § 2, cl. 1). To meet the "Cases and Controversies" requirement, a party seeking to

[4] Igloo includes Castellano as an "Uninjured Plaintiff" (D.I. 63 at 8) despite Castellano's son experiencing the pinching issue. (*See* D.I. 58 ¶ 69). And Plaintiffs never address whether the injury suffered by Castellano's son can serve as an injury-in-fact for Castellano. (*See generally* D.I. 75). The Court need not reach this imputed-injury issue, however, because the physically uninjured Plaintiffs have sufficiently alleged a concrete and particularized financial injury under the benefit-of-the-bargain theory.

invoke the federal judicial power must establish that they have "standing" to do so. *See In re Johnson & Johnson Talcum Powder Prods. Mktg., Sales Pracs. & Liab. Litig.*, 903 F.3d 278, 284 (3d Cir. 2018); *see also Lujan*, 504 U.S. at 560. Article III standing has three requirements: (1) injury in fact, (2) a causal connection between the injury and the challenged conduct and (3) a likelihood that the injury will be redressed by a favorable decision. *See Carson v. HP Inc.*, 750 F. Supp. 3d 376, 387 (D. Del. 2024) (citing *Lujan*, 504 U.S. at 560-61).

To meet the injury-in-fact requirement, the plaintiff must establish that he or she suffered (1) "an invasion of a legally protected interest" (2) that is "concrete and particularized" and (3) "actual or imminent, not conjectural or hypothetical." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 339 (2016) (quoting *Lujan*, 504 U.S. at 560). In general, "a plaintiff's allegations of financial harm will easily satisfy each of these components, as financial harm is a 'classic' and 'paradigmatic form[]' of injury in fact." *Cottrell v. Alcon Lab'ys*, 874 F.3d 154, 163 (3d Cir. 2017) (alteration in original) (quoting *Danvers Motor Co. v. Ford Motor Co.*, 432 F.3d 286, 291, 293 (3d Cir. 2005)). A plaintiff alleging financial harm must, however, "do more than simply pair a conclusory assertion of money lost with a request that a defendant pay up." *Johnson & Johnson*, 903 F.3d at 288. Rather, to establish an injury-in-fact at the pleadings stage, the plaintiff "must set forth sufficient factual allegations that, if proven true, would permit a factfinder to determine that she suffered at least ***some*** economic injury." *Id.* at 287 (emphasis in original).

In this case, Plaintiffs rely on the benefit-of-the-bargain theory to argue that the physically uninjured Plaintiffs suffered a sufficiently concrete and particularized financial injury to satisfy Article III. (*See* D.I. 58 ¶¶ 139, 166, 246, 269, 298, 308, 319 & 326). Under that theory, "a plaintiff might successfully plead an economic injury by alleging that she bargained for a product worth a given value but received a product worth less than that value." *Johnson & Johnson*, 903

F.3d at 283. Plaintiffs here allege that, had they known about the pinching defect, they "would not have purchased a Rolling Cooler, or would have paid less and/or sought material different terms." (D.I. 58 ¶¶ 64, 73, 81, 88, 94 & 100; *see also id.* ¶ 42 (Igloo advertised the Coolers as reliable, convenient and transportable – not injury-causing)).

Citing several non-binding decisions, Igloo claims that the replacement tow handles, offered by Igloo to named Plaintiffs and putative class members free-of-charge, defeat Plaintiffs' overpayment theory. (*See* D.I. 63 at 9-13; D.I. 77 at 1-7); *see, e.g.*, *Hadley v. Chrysler Grp., LLC*, 624 F. App'x 374, 378 (6th Cir. 2015) ("[T]he repair of the ORC Module that the plaintiffs received removed the defect upon which the plaintiffs' diminished-value injury claim is based."); *Peckerar v. Gen. Motors, LLC*, No. ED CV 18-2153-DMG (SPX), 2020 WL 5289919, at *2 (C.D. Cal. May 27, 2020) ("As a matter of common sense, . . . the economic loss injury based on the vehicle's decreased value no longer exists if Defendant has, through the recall, offered to remove the complained-of defect free of charge."). In Igloo's view, because the replacement tow handles made the physically uninjured Plaintiffs whole, they no longer have a concrete stake in this case.

Igloo overlooks, however, that the physically uninjured Plaintiffs rejected Igloo's offer to send a replacement tow handle. Under the Third Circuit's decision in *Adam v. Barone*, the named Plaintiffs' rejection of Igloo's offer "leaves the matter as if no offer had ever been made." 41 F.4th 230, 235 (3d Cir. 2022) (citation omitted). Therefore, for purposes of Article III standing, the Court will not consider Igloo's offer to replace the tow handles in determining whether the physically uninjured Plaintiffs suffered an injury-in-fact. *See also Huertas v. Bayer U.S., LLC*, No. CV 21-20021 (SDW)(CLW), 2022 WL 3572818, at *4 (D.N.J. Aug. 19, 2022) ("By not participating in the recall program for any reason they may have had for not doing so, and by not taking advantage of the offer of a refund for any reason they may have had for not doing so,

Plaintiffs essentially rejected Defendant's offer, and such rejection does not impact standing." (citing *Adam*, 41 F.4th at 235)).

The physically uninjured Plaintiffs purchased Coolers that are no longer fit for their intended use considering that the CPSC has advised consumers to "immediately stop using" them (without the replacement tow handle). (D.I. 58 ¶ 7 (quoting May 2025 Recall Notice)). In *Huertas v. Bayer US LLC*, the defendant pharmaceutical company similarly issued a recall notice instructing consumers to "stop using" the recalled products. 120 F.4th 1169, 1175 (3d Cir. 2024). In finding that the physically uninjured consumers had suffered a sufficiently concrete and particularized financial injury, the Third Circuit explained that "if a product contains a manufacturing flaw so severe that it cannot be used, it is not worth the full price purchasers paid with the understanding they would be able to use all of the product." *Id*. The same reasoning applies here. Given that the Coolers are "unfit for their intended use, they are inherently worth less than the" non-defective Coolers "Plaintiffs thought they were purchasing." *Id.* at 1178. And unlike *Johnson & Johnson*, the named Plaintiffs here explicitly allege that the Coolers are defective (*see, e.g.*, D.I. 58 ¶ 48). *See Johnson & Johnson*, 903 F.3d at 281; *see also Huertas*, 120 F.4th at 1176 (distinguishing *Johnson & Johnson* on same basis).

Because Plaintiffs have sufficiently alleged an injury-in-fact for the physically unharmed Plaintiffs under the benefit-of-the-bargain theory, Igloo's motion to dismiss the claims of named Plaintiffs Zannettino, Trainor, Castellano and Riffle for lack of standing should be denied.

2. Delaware Consumer Fraud Act (Count II)

Igloo also argues that Count II – violation of the DCFA – should be dismissed for lack of standing because the named Plaintiffs failed to allege any fraudulent conduct that occurred in Delaware. (D.I. 63 at 21-22; D.I. 77 at 12; *see also* D.I. 65 at 9). In response, Plaintiffs argue that

a sufficient nexus to the state of Delaware exists because (1) Igloo is a Delaware corporation, (2) Igloo specifically sought to have these claims heard in Delaware, (3) Igloo's alleged fraudulent misrepresentations and representations occurred nationwide (including in Delaware) and (4) Delaware consumers were included in Igloo's nationwide recall. (D.I. 75 at 19-20; *see also* D.I. 76 at 13-15). The Court ultimately agrees with Igloo that standing is lacking here.

The DCFA "requires that the unfair practice occur 'in part or wholly within this State.'" *Wal-Mart Stores, Inc. v. AIG Life Ins. Co.*, 901 A.2d 106, 117 (Del. 2006) (quoting 6 *Del. C.* § 2512). "Mere incorporation in Delaware does not trump the DCFA's standing requirement." *Chudner v. TransUnion Interactive, Inc.*, C.A. No. 9-433, 2010 WL 11710658, at *1 n.1 (D. Del. Mar. 4, 2010); *Marshall v. Priceline.com Inc.*, No. CIV.A.05C-02-195WCC, 2006 WL 3175318, at *2 (Del. Super. Ct. Oct. 31, 2006) ("[W]hile incorporation may be enough to allow Delaware law to apply to a dispute, it is not enough to allow the DCFA to apply to fraudulent transactions which did not occur in Delaware."); *see also Triple-S Steel Holdings, Inc. v. Crowe LLP*, No. N23C-03-225 PRW CCLD, 2023 WL 7482608, at *7 (Del. Super. Ct. Nov. 8, 2023). To have standing to assert a DCFA claim, plaintiffs must allege more than the fraudulent acts caused injuries to unnamed putative class members in Delaware. *See Marshall*, 2006 WL 3175318, at *2 (rejecting assertion that class members "must include thousands of Delaware residents, and thus fraudulent transactions must have occurred within the State" because "these Delaware residents are unidentified and the fraudulent acts alleged to have been committed are not specified").

None of the named Plaintiffs reside or purchased their Coolers in Delaware. (*See* D.I. 58 ¶¶ 59-100). Igloo's principal place of business is in Texas. (*Id.* ¶ 27). Unlike the cases cited by Plaintiffs (*see* D.I. 76 at 14), the Complaint does not allege any (let alone sufficient) facts for the Court to plausibly infer that Igloo's alleged fraudulent misrepresentations and omissions

"commenced in Delaware." *Lony v. E.I. du Pont de Nemours & Co.*, 821 F. Supp. 956, 962 (D. Del. 1993); *see also Arcelik A.S v. E. I. du Pont De Nemours & Co.*, No. 15-961-LPS, 2018 WL 1401327, at *8 (D. Del. Mar. 20, 2018) (finding sufficient allegation that defendant "authored, published, and disseminated [its] misrepresentations from the state of Delaware" (alteration in original)). That Igloo sought to have its claims litigated in this forum has no bearing on Plaintiffs' standing, and Igloo's mere incorporation in Delaware does not enable the named Plaintiffs to assert DCFA claims. *See Triple-S Steel Holdings*, 2023 WL 7482608, at *7; *Chudner*, 2010 WL 11710658, at *1 n.1; *Marshall*, 2006 WL 3175318, at *2. And Igloo's nationwide advertisement and sale of its Coolers, including to putative unnamed class members in Delaware, does not provide the named Plaintiffs with standing to assert claims under the DCFA. *See Marshall*, 2006 WL 3175318, at *2. No relevant conduct occurred in Delaware. The Court therefore recommends that Igloo's motion to dismiss Count II for lack of standing be granted.

3. <u>Massachusetts Consumer Protection Act (Count X)</u>

Igloo argues that Count X – violation of the MCPA – should be dismissed because Plaintiff Trainor's alleged injuries do not have a sufficiently causal relationship to Massachusetts. (D.I. 63 at 14-17; D.I. 77 at 7-8).[5] According to Igloo, Trainor's alleged injuries did not occur in Massachusetts (where she resides) but rather in Missouri (where she purchased her Cooler). (*See* D.I. 63 at 16). In response, Plaintiffs argue that Trainor has a sufficient causal relationship to Massachusetts to assert an MCPA claim because "she suffered her diminution in value and loss of use injuries in Massachusetts." (D.I. 75 at 12-13). The Court agrees with Plaintiffs.

"[A] class action is permissible so long as at least one named plaintiff has standing." *Neale v. Volvo Cars of N. Am., LLC*, 794 F.3d 353, 364 (3d Cir. 2015); *see also O'Shea v. Littleton*, 414

---

[5] Trainor is the only named Plaintiff with any connection to Massachusetts. (D.I. 58 ¶ 89).

U.S. 488, 494 (1974) ("[I]f none of the named plaintiffs purporting to represent a class establishes the requisite of a case or controversy with the defendants, none may seek relief on behalf of himself or any other member of the class."). Because Trainor is the sole named Plaintiff representing the Massachusetts class (D.I. 58 ¶ 287), Plaintiffs must establish that Trainor's alleged injuries have a sufficiently causal relationship with Massachusetts to assert an MCPA claim. *In re Sensipar (Cinacalcet Hydrochloride Tablets) Antitrust Litig.*, No. 2895, 2022 WL 736250, at *16 (D. Del. Mar. 11, 2022) ("[Plaintiffs] may only proceed with their state law claims in the 15 states where at least one named plaintiff was injured . . . ."); *In re Wellbutrin XL Antitrust Litig.*, 260 F.R.D. 143, 152 (E.D. Pa. 2009) ("A named plaintiff whose injuries have no causal relation to, or cannot be redressed by, the legal basis for a claim does not have standing to assert that claim.").

Considering that Trainor resides and possesses her Cooler in Massachusetts, there is a sufficient causal relationship between the alleged injuries suffered by Trainor and Massachusetts to establish Article III standing for Plaintiffs' MCPA claim. (*See* D.I. 58 ¶ 90). Even though Trainor purchased her Cooler in Missouri, her alleged inability to use or re-sell the Cooler occurred in Massachusetts. The cases cited by Igloo do not compel a different result; those cases involved claims that were dismissed under the laws of states in which no named plaintiff resided. *See, e.g.*, *Snowdy v. Mercedes-Benz USA, LLC*, No. CV 23-1681 (ES) (AME), 2024 WL 1366446, at *5 (D.N.J. Apr. 1, 2024) (dismissing claims under laws of states where named plaintiffs "never resided or purchased or leased Class Vehicles"); *Xi Chen Lauren v. PNC Bank, N.A.*, 296 F.R.D. 389, 391 (W.D. Pa. 2014) (dismissing all claims under the laws of states in which the sole named plaintiff did not reside and in which suffered no injury); *Ponzio v. Mercedes-Benz USA, LLC*, 447 F. Supp. 3d 194, 223 (D.N.J. 2020) (dismissing all claims under the laws of states in which no named plaintiff either resided or purchased their allegedly defective vehicle); *Wellbutrin*, 260

F.R.D. at 157 (finding named plaintiffs lack standing to assert claims under laws of states in which "no plaintiff . . . resides"). Accordingly, the Court recommends that Igloo's motion to dismiss Count X for lack of standing be denied.

4. Injunctive Relief

Igloo also argues that Plaintiffs' request for injunctive relief should be dismissed for lack of Article III standing because there are no plausible allegations of a likely future injury, claiming that Plaintiffs' request amounts to a mere "stop me before I buy again" claim.[6] (D.I. 63 at 13-14 (quoting *Thorne v. Pep Boys Manny Moe & Jack Inc.*, 980 F.3d 879, 896 (3d Cir. 2020)); D.I. 77 at 7). Plaintiffs respond that they have sufficiently alleged a likelihood of future injury because the Coolers are still in Plaintiffs' "possession and continue to experience at least diminished value because . . . they cannot sell them or return them for a refund." (D.I. 75 at 12).

When injunctive relief is sought, at least one named plaintiff must show that he or she is "likely to suffer future injury" from the defendant's conduct. *McNair v. Synapse Grp. Inc.*, 672 F.3d 213, 223 (3d Cir. 2012) (quoting *City of Los Angeles v. Lyons*, 461 U.S. 95, 105 (1983)). The threat of injury must be "sufficiently real and immediate." *Id*. (quoting *Roe v. Operation Rescue*, 919 F.2d 857, 864 (3d Cir. 1990)). "Past exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief . . . if unaccompanied by any continuing, present adverse effects." *O'Shea*, 414 U.S. at 495-96. When plaintiffs have already been subject to allegedly fraudulent or deceptive actions by the defendant, "speaking generally, the law accords

6 Although motions to dismiss are directed to claims – not prayers for relief – Igloo's motion to dismiss the requested injunctive relief seems procedurally permissible. *See Carson*, 750 F. Supp. 3d at 388 (dismissing prayer for injunctive relief at motion to dismiss stage for lack of Article III standing); *Twardzik v. HP Inc.*, C.A. No. 1:21-CV-00396-SB, 2022 WL 606092, at *3 (D. Del. Jan. 25, 2022) (Bibas, J. sitting by designation) (same), *aff'd*, No. 22-2650, 2023 WL 5770999 (3d Cir. Sept. 7, 2023); *see also Johnson & Johnson*, 903 F.3d at 293 (finding plaintiff lacks standing to pursue injunctive relief at pleadings stage).

people the dignity of assuming that they act rationally, in light of the information they possess." *McNair*, 672 F.3d at 225. In other words, the law assumes that plaintiffs will act "rationally" and "will not act in such a way that" they "will again suffer the same alleged 'injury.'" *Johnson & Johnson*, 903 F.3d at 293.

The Court finds persuasive Igloo's argument that the replacement tow handles render any risk of future financial or physical injury caused by the modified Coolers speculative at best. *See Peckerar*, 2020 WL 5289919, at *3 ("Absent any adequate allegations that the recall repairs did not work or will not work, there is no longer any practical value in this Court issuing an injunction forcing Defendant to do that which they have already volunteered to do."). Igloo worked with the CPSC to recall the Coolers and implement the replacement tow handles, indicating that the modified Coolers are safe and suitable for re-sale. And Plaintiffs have offered no factual allegations to plausibly suggest that the replacement tow handles are somehow inadequate. (*See* D.I. 58 ¶ 12 (alleging that it "remains to be seen" whether replacement tow handles "will fully remedy the defect")). But the Court is nevertheless bound by *Adam* and must treat the rejected replacement offer "as if no offer had ever been made." *Adam*, 41 F.4th at 235. The availability of replacement tow handles does not mean that injunctive relief is unavailable to Plaintiffs.

Because the Court does not consider Igloo's offer to replace the tow handles in its standing analysis, Plaintiffs have sufficiently alleged that they are "likely to suffer future injury" caused by the allegedly defective Coolers. The facts here are distinguishable from the cases cited by Igloo because the Coolers are durable and in Plaintiffs' possession. *See Johnson & Johnson*, 903 F.3d at 281 ("[T]his case does not involve a durable product still in a plaintiff's possession. Instead, the complaint concerns a nondurable product that has already been consumed in its entirety."); *see also Thorne*, 980 F.3d at 895 (failure to register buyers' tires); *McNair*, 672 F.3d at 224-25

(allegedly deceptive magazine subscription renewal). Plaintiffs have sufficiently alleged a non-speculative risk of future financial and physical injury given that the unmodified Coolers cannot be resold (D.I. 58 ¶ 50) and can "pinch consumers' fingertips against the cooler, posing fingertip amputation and crushing hazards" (*id.* ¶ 4). *See Diaz*, 2022 WL 4016744, at *14 ("Their continued ownership of Class Vehicles that allegedly do not perform as intended and are likely to require repeated repairs constitute 'continuing, present adverse effects' permitting Plaintiffs to seek injunctive relief." (quoting *O'Shea*, 414 U.S. at 496)). The Court thus recommends that Igloo's motion to dismiss Plaintiffs' requests for injunctive relief be denied.

**B. Motion to Dismiss for Failure to State a Claim**

1. <u>Consumer Fraud Claims (Counts II & VII-XIII)</u>

Igloo argues that Counts II and VII-XIII – claims for violations of the consumer fraud laws of Delaware, California, Massachusetts, Missouri and Illinois (collectively, "the Consumer Fraud Claims") – should be dismissed because Plaintiffs failed to allege with particularity under Rule 9(b) "who" at Igloo made the fraudulent misrepresentation or omission and because Plaintiffs also failed to plausibly allege Igloo's pre-sale knowledge of the alleged defect. (D.I. 63 at 17-21; D.I. 77 at 8-11). In response, Plaintiffs argue that Rule 9(b) (1) does not apply to Plaintiffs' UCL claim (Count IX), (2) only requires identification of specific individuals in patent cases and (3) is necessarily relaxed in the fraudulent omission context. (D.I. 75 at 13-15). Plaintiffs further contend that the Complaint provides sufficient facts for the Court to reasonably infer Igloo's pre-sale knowledge of the alleged defect. (*Id.* at 15-19). The Court agrees with Igloo that Plaintiffs have failed to plead their Consumer Fraud Claims with sufficient particularity to meet Rule 9(b).[7]

[7] Because the Court finds that Plaintiffs have failed to plead their Consumer Fraud Claims with sufficient particularity under Rule 9(b), the Court does not reach the issue of pre-sale

First, Rule 9(b) applies to Plaintiffs' UCL claim (Count IX) because the factual allegations in the claim as pleaded "sound in fraud." *See Carson*, 750 F. Supp. 3d at 389 (quoting *In re Westinghouse Sec. Litig.*, 90 F.3d 696, 717 (3d Cir. 1996)). For instance, Plaintiffs allege in Count IX that (1) "Defendant committed ***fraudulent*** business acts and practices in violation of the UCL when it concealed the existence and nature of the Defect affecting the Rolling Coolers," (2) "Defendant's ***representations***, ***omissions***, and ***active concealments*** about the Defect were likely to mislead the public with regard to the true hazardous and defective nature of the Rolling Coolers," (3) "Defendant's unfair, ***deceptive***, unlawful, and ***fraudulent*** acts or practices occurred repeatedly in the course of Defendant's business and were likely to mislead a substantial portion of the purchasing public" and (4) "California Plaintiffs relied on Defendant's ***representations***, ***omissions***, and ***nondisclosures***, and would not have purchased, or would have paid less for, the Rolling Coolers had they known the truth." (D.I. 58 ¶¶ 281-83 (emphases added)).[8]

Second, Rule 9(b)'s requirement that plaintiffs specifically identify individuals responsible for fraudulent conduct (as opposed to entities) is not limited to patent cases, as Plaintiffs contend (D.I. 75 at 13-14). *See Klein v. General Nutrition Cos.*, 186 F.3d 338, 345 (3d Cir. 1999) (in

---

knowledge. But as noted in Section III.B.4, the Court can plausibly infer pre-sale knowledge based on certain post-sale conduct alleged here.

8 The Court is unpersuaded by Plaintiffs' argument that the UCL claims in Count IX "can stand on the 'unfair' prong" without regard to Rule 9(b). (D.I. 75 at 14). The UCL prohibits "any unlawful, unfair or fraudulent business act or practice." Cal. Bus. & Prof. Code § 17200. And each of these three adjectives captures a "separate and distinct theory of liability." *Serrano*, 773 F. Supp. 3d at 162 (quoting *Doe v. CVS Pharmacy, Inc.*, 982 F.3d 1204, 1214 (9th Cir. 2020)). Because the factual allegations underlying Count IX describe a "unified course of fraudulent conduct" – namely, that Igloo knowingly misrepresented and omitted information as to the safety of its Coolers – Rule 9(b) applies to Plaintiffs' UCL claims "as a whole." *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1127 (9th Cir. 2009); *see also Westinghouse*, 90 F.3d at 717. Plaintiffs' rote recitation of the term "unfair business acts and practice" (D.I. 58 ¶¶ 279-80) is just a "formulaic recitation of the elements of a cause of action" that "will not do." *Iqbal*, 556 U.S. at 678.

securities fraud case, noting that Rule 9(b) "requires, at a minimum, that the plaintiff identify the speaker of allegedly fraudulent statements"); *Kirchner v. Wyndham Vacation Resorts, Inc.*, C.A. No. 21-436-CFC, 2021 WL 1198314, at *3-4 (D. Del. Mar. 30, 2021) (in consumer fraud case, dismissing Complaint under Rule 9(b) because Plaintiffs failed to plead, *inter alia*, "the identities of the individuals who perpetrated the alleged fraud"); *Glauberzon v. Pella Corp.*, No. 10-5929 (JLL), 2011 WL 1337509, at *9-10 (D.N.J. Apr. 7, 2011) (in consumer fraud case, noting "Plaintiffs do not identify who at [defendant corporation] was aware of the existence of a product-wide mullion defect, when or how they learned of such defect and/or when or how the decision was made to conceal the defect from its customers").

Lastly, Rule 9(b)'s "who" requirement applies to both fraudulent misrepresentations and omissions. *See City of Warren Police & Fire Ret. Sys. v. Prudential Fin., Inc.*, 70 F.4th 668, 680 (3d Cir. 2023) ("Under [Rule 9(b)], the complaint must describe the time, place, and contents of the ***false representations or omissions***, as well as the identity of the person making the statement and the basis for the statement's falsity." (emphasis added)). Although some non-binding district court decisions have applied a "relaxed" Rule 9(b) standard to fraudulent omission claims, *see Carson*, 750 F. Supp. 3d at 394, identification of a specific individual responsible for the alleged fraudulent omission (*e.g.*, Igloo employee with knowledge of the alleged product defect) is necessary to place Igloo on "notice of the precise misconduct with which [it is] charge." *Frederico v. Home Depot*, 507 F.3d 188, 201 (3d Cir. 2007) (alteration in original) (affirming dismissal under Rule 9(b) for failing to specify individual employed by defendant responsible for alleged fraudulent misrepresentation); *see also Glauberzon*, 2011 WL 1337509, at *9-10 (requiring identification of specific individual with knowledge of product defect in fraudulent omission context); *Glass v. BMW of N. Am., LLC*, No. CIV.A. 10-5259 ES, 2011 WL 6887721, at *8 (D.N.J.

Dec. 29, 2011) (same); *Alban v. BMW of N. Am.*, No. CIV. 09-5398 DRD, 2011 WL 900114, at *5 (D.N.J. Mar. 15, 2011) (same).

For both the alleged fraudulent misrepresentations and omissions,[9] Plaintiffs do not dispute that they fail to identify a specific individual responsible for the alleged fraudulent conduct, instead referring only to "Igloo" or "Defendant." (*See, e.g.*, D.I. 58 ¶¶ 63, 64, 72, 73, 80, 81, 87, 88, 93, 94, 99 & 100). That is insufficient. Whether premised on fraudulent misrepresentations or omissions, Plaintiffs' Consumer Fraud Claims fail to meet Rule 9(b)'s particularity requirement. *See Frederico*, 507 F.3d at 201; *see also Migliore by Migliore v. Vision Solar LLC*, 160 F.4th 79, 91 (3d Cir. 2025) ("In a case with five defendants, the word 'Defendants' does not provide 'the identity of the person' who allegedly wronged her." (citing *Frederico*, 507 F.3d at 201); *Glauberzon*, 2011 WL 1337509, at *9-10; *Glass*, 2011 WL 6887721, at *6-10; *Alban*, 2011 WL 900114, at *5. The Court thus recommends that Igloo's motion to dismiss be granted as to Plaintiffs' Consumer Fraud Claims.

2. <u>Breach of Express and Implied Warranty Claims (Counts III, IV & VI)</u>

Igloo argues that Plaintiffs' breach of express warranty and breach of implied warranty claims (Counts III, IV & VI) should be dismissed for failure to sufficiently allege "manifestation" of the defect for any named Plaintiff within the one-year warranty period. (D.I. 63 at 23-25; D.I. 77

---

[9] Although not briefed by the parties, Igloo's alleged misrepresentations recited in the Complaint (D.I. 58 ¶¶ 34-37) – *e.g.*, the tow handle facilitates "easy lifting & loading" and "easy pulling" (*id.* ¶ 37) – constitute mere sales puffery, not actionable misrepresentations. *See Phoenix v. U.S. Homes Corp.*, 628 F. App'x 825, 827 (3d Cir. 2015); *Diaz v. FCA US LLC*, 693 F. Supp. 3d 425, 440 n.23 (D. Del. 2023) (Wallach, J. sitting by designation); *Garner v. Glob. Plasma Sols. Inc.*, 590 F. Supp. 3d 738, 744-45 (D. Del. 2022) (Bibas, J. sitting by designation). And apart from boilerplate statements that each named Plaintiff "wanted to purchase a safe, reliable, quality cooler from a well-known and recognizable brand" (D.I. 58 ¶¶ 61, 67, 76, 84, 91 & 97), the Complaint fails to plead specific facts as to where, when and how each named Plaintiff relied upon the fraudulently misrepresented or omitted information. *See Carson*, 750 F. Supp. 3d at 395-96.

at 12-13; *see also* Igloo Warranty (express and implied warranties for Coolers limited to period of one year from date of original purchase)). Igloo further alleges that Plaintiffs' breach of express warranty claims should be dismissed for failure to sufficiently allege that any named Plaintiffs "presented" his or her Cooler to Igloo for repair or that Igloo failed to repair any named Plaintiffs' Cooler. (D.I. 63 at 25-27; D.I. 77 at 13-14). The Court addresses each argument in turn.

**a. <u>Manifestation Requirement</u>**

Because the Complaint defines the alleged defect as "a dangerously defective tow handle that can 'pinch consumers' fingertips against the cooler, posing finger amputation and crushing hazards'" (D.I. 58 ¶ 4), Igloo argues that the product defect manifested itself only when the alleged injuries (*i.e.*, pinched fingers) occurred (if ever). Plaintiffs respond that the alleged defect "manifested" itself at sale for all named Plaintiffs because "each of the Rolling Coolers was sold and delivered with a Defect." (D.I. 75 at 21-22 ("[E]very Rolling Cooler was equipped, at sale and delivery, with a dangerous and defective tow handle.")). According to Plaintiffs, the "general rule" applied by Igloo does not apply to "manifest but undiscovered defects due to the fault of the seller." (*Id.* at 23 (relying on *Ne. Power Co. v. Balcke-Durr, Inc.*, No. 97-CV-4836, 1999 WL 674332, at *6 (E.D. Pa. Aug. 23, 1999), and *Alberti v. Gen. Motors Corp.*, 600 F. Supp. 1026, 1028 (D.D.C. 1985))). The Court agrees with Igloo.

The Third Circuit has adopted the "general rule" that "an express warranty does not cover repairs made after the applicable time has elapsed" and that "latent defects discovered after the term of the warranty are not actionable." *Duquesne Light Co. v. Westinghouse Electric Corp.*, 66 F.3d 604, 616 (3d Cir. 1995) (cleaned up); *see also Canal Elec. Co. v. Westinghouse Elec. Co.*, 973 F.2d 988, 993 (1st Cir. 1992) ("[C]ase law almost uniformly holds that time-limited warranties do not protect buyers against hidden defects . . . ."). To the extent that Plaintiff's cited authority –

*Balcke-Durr* or *Alberti* – hold to the contrary, the Third Circuit's unambiguous ruling in *Duquesne* controls. Any "latent defects" in Igloo's Coolers discovered "after the term of the warranty are not actionable." *Duquesne*, 66 F.3d at 616.

Named Plaintiffs Nguyen and Barragan experienced the alleged pinching defect "almost immediately after purchasing it, with the Defective handle catching and pinching [their] fingertips during regular use." (D.I. 58 ¶¶ 77 & 85). Igloo contends that such allegations are insufficient to conclude that the alleged pinching issues occurred within the one-year warranty period. (D.I. 63 at 25). Because the alleged pinching occurred "almost immediately after purchas[e]," however, the Court can reasonably infer that the alleged pinching occurred within the one-year warranty period for these plaintiffs. But under *Duquesne*, the alleged defect in Igloo's Coolers never "manifested" at all for named Plaintiffs Zannettino, Trainor or Riffle because they never experienced the pinching defect. (*Id.* ¶¶ 59-64 & 89-100). Lastly, Castellano purchased his Cooler in October 2022 (*id.* ¶ 66), and his son experienced the pinching defect "[s]everal months" before Castellano "received notice of the Recall" (*id.* ¶¶ 68-70). Because the first recall occurred in February 2025 (*id.* ¶ 102), viewing the allegations in the Complaint in the light most favorable to Plaintiffs, the alleged defect could not have manifested itself within the one-year warranty period for Castellano.

Ultimately, only named Plaintiffs Nguyen and Barragan (and their respective California class) have adequately alleged that the defect manifested itself within the one-year warranty period. As such, the alleged implied and express warranty claims for all other named Plaintiffs (and their respective Massachusetts, Missouri and Illinois classes) should be dismissed for failure to meet the manifestation requirement. But as further discussed below, only the implied warranty claims of named Plaintiffs Nguyen and Barragan (and their respective California class) should survive – not their express warranty claims.

**b. <u>Presentation & Failure to Repair Requirements</u>**

Igloo also argues that Plaintiffs' breach of express warranty claims should be dismissed because Plaintiffs fail to allege that (1) any named Plaintiff ever presented their Coolers to Igloo for repair during the warranty period or that (2) Igloo failed to repair the Coolers during the warranty period. (D.I. 63 at 25-27; D.I. 77 at 13-14). In response, Plaintiffs argue that they were not required to present their Coolers for repair during the warranty period because their claims deal with "manifest but undiscovered defects due to the fault of the seller." (D.I. 75 at 23). Plaintiffs further argue that any such attempts to present the Coolers for repair would have been "futile." (*Id*. at 24). The Court ultimately agrees with Igloo.

First, the Court disagrees with Plaintiffs that a theory of "manifest but undiscovered defects" excuses their failure to plead that the named Plaintiffs presented their Coolers to Igloo for repair within the warranty period. Although relied upon by Plaintiffs for this proposition (D.I. 75 at 23), neither *Balcke-Durr* nor *Alberti* held that plaintiffs asserting express warranty claims need not present the allegedly defective product for repair within the warranty period. *See generally Balcke-Durr*, 1999 WL 674332, at *6; *Alberti*, 600 F. Supp. at 1028. Moreover, as explained above, Plaintiffs' "manifest but undiscovered defects" theory cannot be reconciled with the Third Circuit's ruling in *Duquesne* that "latent defects discovered after the term of the warranty are not actionable." 66 F.3d at 616; *see also Alban*, 2010 WL 3636253, at *6-7; *Dewey*, 558 F. Supp. 2d at 519-20. To assert a claim for breach of express warranty, Plaintiffs must allege that they presented the Coolers to Igloo for repair during the one-year warranty period. *See, e.g.*, *Orichian v. BMW of N. Am., LLC*, 226 Cal. App. 4th 1322, 1333 (2014); *Anderson v. Samsung Telecommunications Am., LLC*, No. SACV1301028CJCJPRX, 2014 WL 11430910, at *4 (C.D. Cal. Oct. 20, 2014); *see also Long v. Hewlett-Packard Co.*, 316 F. App'x 585, 586 (9th Cir. 2009).

Second, the Court disagrees that the alleged "futility" of Igloo's repair excuses Plaintiffs' presentation requirement. (D.I. 75 at 24). Alleging only that it "remains to be seen whether the Replacement Handle Kit will fully remedy the defect" (D.I. 58 ¶ 12), Plaintiffs offer nothing but pure speculation that Igloo's repair would be inadequate or "futile." (*See id.* ¶¶ 11-15). The Court is not obligated to accept bald assertions or unwarranted inferences. Because Plaintiffs never contacted Igloo regarding the tow handles nor plausibly alleged that Igloo's repair would be inadequate or futile, the non-binding decisions cited by Plaintiffs are distinguishable. *See In re Chevrolet Bolt EV Battery Litigation*, 633 F. Supp. 3d 921, 976 (E.D. Mich. 2022) (defendant car manufacturer acknowledged it was "unable to fix the allegedly defective cars"); *Benkle v. Ford Motor Co.*, No. SA CV 16-1569–DOC (JCGX), 2017 WL 9486154, at *12 (C.D. Cal. Dec. 22, 2017) (plaintiffs plausibly alleged that replacement car parts "substantially certain to fail again"); *Gertz v. Toyota Motor Corp.*, No. CV 10-1089 PSG VBKX, 2011 WL 3681647, at *3 (C.D. Cal. Aug. 22, 2011) (plaintiffs called defendant's dealership about allegedly defective fuel tanks within warranty period). Plaintiffs' express warranty claims are not adequately pleaded here.

* * *

In sum, the Court recommends that Igloo's motion to dismiss Plaintiffs' express warranty claims be dismissed for all Plaintiffs and their respective classes. The Court also recommends that Igloo's motion to dismiss Plaintiffs' implied warranty claims be granted as to all Plaintiffs and classes except named Plaintiffs Nguyen and Barragan and their respective class of California.

3. <u>Count V (Unjust Enrichment)</u>

Igloo argues that Plaintiffs' unjust enrichment claims should be dismissed because (1) Plaintiffs' express warranty claims cover the subject matter in question and provide an adequate remedy at law and (2) Plaintiffs failed to plausibly allege that Igloo unjustly retained any

benefits at provided at Plaintiffs' expense. (D.I. 63 at 27-29; D.I. 77 at 15). Plaintiffs argue Igloo unjustly retained benefits from Plaintiffs and that they do not have an adequate remedy at law because their unjust enrichment claim "falls outside the contract." (D.I. 75 at 27-29). The Court agrees with Igloo that Plaintiffs have an adequate remedy at law.[10]

Under California, Illinois, Massachusetts and Missouri law, unjust enrichment claims cannot be asserted when there is an adequate remedy at law.[11] Plaintiffs' unjust enrichment claims are not pleaded in the alternative and, more importantly, rely upon the same facts as their breach of express warranty claims – that is, Igloo's "selling defective and unsafe Rolling Coolers whose value was artificially inflated by Defendant's concealment of the Defects in the Roller Cooler" (D.I. 58 ¶ 207). (*Compare id.* ¶¶ 168-79, *with id.* ¶¶ 202-14). Thus, Plaintiffs' unjust enrichment claims are not "outside the contract," as Plaintiffs contend. (D.I. 75 at 27). Because an adequate remedy at law is already available under a theory of express warranty, Plaintiffs' claims of unjust enrichment fail. And the fact that Plaintiffs have "failed to adequately state such claims [for breach of express warranty] is immaterial." *Costa v. FCA US LLC*, 542 F. Supp. 3d 83, 105 (D. Mass. 2021); *see also In re Ford Tailgate Litig.*, No. 11-CV-2953-RS, 2014 WL 1007066, at *5 (N.D. Cal. Mar. 12, 2014) ("Should plaintiffs ultimately be unable to recover under either a contract or tort theory, it does not mean a legal remedy was unavailable (thereby justifying an equitable

---

[10] Because the Court agrees with Igloo that Plaintiffs have an adequate remedy at law and therefore cannot assert unjust enrichment claims, the Court does not reach Igloo's argument that Plaintiffs have failed to allege sufficient facts showing that Igloo received and unjustly retained a benefit at Plaintiffs' expense.

[11] *See Zapata Fonseca v. Goya Foods Inc.*, No. 16-CV-02559-LHK, 2016 WL 4698942, at *7 (N.D. Cal. Sept. 8, 2016); *Miller v. Lewis Univ.*, 533 F. Supp. 3d 678, 687 (N.D. Ill. 2021); *Barnia v. Kaur*, 646 F. Supp. 3d 154, 168 (D. Mass. 2022); *May v. Makita U.S.A., Inc.*, No. 1:22-CV-79-SNLJ, 2023 WL 417487, at *6 (E.D. Mo. Jan. 26, 2023).

remedy of unjust enrichment), but only that their claim lacks merit."). The Court therefore recommends that Igloo's motion to dismiss Plaintiffs' unjust enrichment claims be granted.

4. Punitive Damages

In Igloo's view, the request for punitive damages should be dismissed because Plaintiffs failed to sufficiently allege that Igloo was aware of the "probable dangerous consequences" of its conduct and that Igloo "willfully and deliberately failed to avoid those consequences." (D.I. 63 at 29-30 (quoting *Perez v. Auto Tech. Co.*, No. 13-06728 MMM (VBKX), 2014 WL 12591484, at *3 (C.D. Cal. Apr. 18, 2014))). Plaintiffs respond that the Complaint contains sufficient factual allegations for the Court to reasonably infer that Igloo knew of the allegedly dangerous defect before the named Plaintiffs purchased their Coolers, specifically highlighting the "dozens of serious injuries reported" and Igloo's "implementation of a re-designed tow handle in January 2024." (D.I. 75 at 29-30). The Court agrees with Plaintiffs.

Assuming that claims for punitive damages can be dismissed under Rule 12(b)(6),[12] the Complaint contains sufficient factual allegations for the Court to reasonably infer that Igloo was aware of the "probable dangerous consequences" of its conduct and that Igloo "willfully and deliberately failed to avoid those consequences." *Perez*, 2014 WL 12591484, at *3.[13] Because the latest date that any named Plaintiff purchased one of Igloo's Coolers was in September 2023, the Complaint must plausibly allege that Igloo knew of the allegedly dangerously defective tow

[12] As above in note 6 (*supra*), Igloo's motion to dismiss Plaintiffs' requested relief seems procedurally proper. *See Boring v. Google Inc.*, 362 F. App'x 273, 283 (3d Cir. 2010) (affirming dismissal of demand for punitive damages on motion to dismiss); *see also Gardner v. Barry*, No. 1:10-CV-0527, 2010 WL 4853885, at *10 (M.D. Pa. Nov. 23, 2010) ("Courts can and do address punitive damages claims at the motion to dismiss stage." (collecting cases)).

[13] Plaintiffs do not dispute Igloo's interpretation of California, Missouri, Illinois and Massachusetts law on punitive damages. (*See* D.I. 63 & n.23 (collecting cases)).

handles before that time. (D.I. 58 ¶ 21). Igloo "implemented a re-designed tow handle in January 2024" (*id.* ¶ 55), as evidenced by the Consumer Product Safety Commission's recall of all Coolers "manufactured prior to January 2024." *See* February 2025 Recall Notice. Plaintiffs further identify "consumer complaints to Igloo" as evidence that Igloo knew of the allegedly defective tow handles. (D.I. 58 ¶ 241).

Even ignoring Igloo's criticisms of the "undated and unidentified consumer complaints" (D.I. 63 at 19), Igloo's redesign of the tow handle by January 2024 provides the Court with a sufficient basis to reasonably infer that Igloo was aware of the design defect by September 2023. *Cf. Robinson v. Gen. Motors LLC*, C.A. No. 20-663-RGA-SRF, 2021 WL 3036353, at *6 (D. Del. July 19, 2021), ("[Technical Service Bulletins] issued post-sale can support an inference of the seller's pre-sale knowledge of a defect." (collecting cases)), *report and recommendation adopted*, 2021 WL 7209365 (D. Del. Nov. 30, 2021). The Court is unpersuaded by Igloo's attempt to distinguish cases dealing with post-sale Technical Service Bulletins in the car defect context. (D.I. 77 at 10 (contrasting the "complex combustion engines and other highly-technical components embedded with various electrical devices" involved in the car defect cases with the "simple plastic tow handle" in this action)). Viewed in the light most favorable to Plaintiffs, the allegations plausibly suggest that Igloo's redesign effort – requiring (1) identification of the defect, (2) design of the replacement tow handle and (3) implementation of the redesigned handle across its manufacturing facilities – could take several months if not longer. (D.I. 58 ¶¶ 17 & 55). Igloo's motion to dismiss as it relates to Plaintiffs' claims for punitive damages should be denied.

## IV. CONCLUSION

For the foregoing reasons, the Court recommends that Igloo's motion to dismiss (D.I. 62) be GRANTED-IN-PART and DENIED-IN-PART and Igloo's motion to strike (D.I. 64) be DENIED as MOOT.

The parties may file objections to this Report and Recommendation within fourteen (14) days after being served with a copy of the Report and Recommendation. *See* FED. R. CIV. P. 72(b)(2). Any responses to the objections shall be filed fourteen (14) days after the objections. Objections and responses are limited to ten (10) pages. The failure of a party to object may result in the loss of the right to review in the district court and the loss of certain appellate rights. *See Henderson v. Carlson*, 812 F.2d 874, 878-79 (3d Cir. 1987); *Equal Emp. Opportunity Comm'n v. City of Long Branch*, 866 F.3d 93, 99-100 (3d Cir. 2017).

This Report and Recommendation is filed pursuant to 28 U.S.C. § 636(b)(1)(B), Federal Rule of Civil Procedure 72(b)(1) and District of Delaware Local Rule 72.1. The parties are directed to the court's "Standing Order for Objections Filed Under Fed. R. Civ. P. 72," dated March 7, 2022, a copy of which is available on the court's website, https://www.ded.uscourts.gov.

Dated: September 24, 2026

UNITED STATES MAGISTRATE JUDGE