**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| IN RE IGLOO PRODUCTS COOLER RECALL LITIGATION | C.A. No. 1:25-cv-00298-JLH-EGT CONSOLIDATED |

**DEFENDANT'S LIMITED OBJECTION TO THE REPORT AND RECOMMENDATION ON DEFENDANT'S MOTION TO DISMISS**


**COZEN O'CONNOR**

Kaan Ekiner (#5607)
Hugh J. Marbury (#7427)
1201 North Market St., Ste. 1001
Wilmington, DE 19802
(302) 295-2046
KEkiner@Cozen.com
HMarbury@Cozen.com

Erica Rutner (*Pro Hac Vice*)
Michael Puretz (*Pro Hac Vice*)
501 E. Las Olas Blvd. Ste. 300
Fort Lauderdale, FL 33301
(561) 750-3850
ERutner@Cozen.com
MPuretz@Cozen.com

John A. Bertino (*Pro Hac Vice*)
2001 M Street NW, Ste. 500
Washington, D.C. 20036
(202) 912-4800
JBertino@Cozen.com

*Attorneys for Defendant*
*Igloo Products Corp.*


Dated: October 7, 2026

# TABLE OF CONTENTS

INTRODUCTION ........................................................ 1

LEGAL STANDARD ........................................................ 3

ARGUMENT ........................................................ 3

I. Igloo's Replacement Handle and Plaintiffs' Alleged Injury ........................................................ 3

II. Nationwide Authority Rejecting Standing in Substantially Similar Circumstances ...... 4

III. Igloo's Motion to Dismiss and the Magistrate Judge's Decision ........................................................ 6

IV. The Magistrate Judge's Misapplication of *Adam* ........................................................ 8

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Adam v. Barone*,
41 F.4th 230 (3d Cir. 2022) ........ *passim*

*Avalos v. Sig Sauer, Inc.*,
2026 WL 1431203 (E.D. Pa. May 21, 2026) ........ 5, 6, 10

*Clapper v. Amnesty Int'l USA*,
568 U.S. at 416 (2013) ........ *passim*

*Comes v. Harbor Freight Tools USA, Inc.*,
2021 WL 6618816 ........ 6, 10

*EEOC v. City of Long Branch*,
866 F.3d 93 (3d Cir. 2017) ........ 3

*Graham v. American Honda Motor Co., Inc.*,
2025 WL 2576748 (N.D. Ill. Sept. 4, 2025) ........ 10

*Hadley v. Chrysler Grp., LLC*,
624 F. App'x 374 (6th Cir. 2015) ........ 6, 7

*Hayes v. Wal-Mart Stores, Inc.*,
725 F.3d 349 (3d Cir. 2013) ........ 8, 9

*Huertas v. Bayer U.S., LLC*,
2022 WL 3572818 (D.N.J. Aug. 19, 2022) ........ 9

*Huertas v. Bayer US LLC*,
120 F.4th 1169 (3d Cir. 2024) ........ 7, 9

*Kommer v. Ford Motor Co.*,
2017 WL 3251598 (N.D.N.Y. July 28, 2017) ........ 6, 7

*Letson v. Ford Motor Co.*,
2024 WL 845844 (E.D. Mich. Feb. 28, 2024), *vacated on other grounds* ........ 6, 7

*Pacheco v. Ford Motor Co.*,
2023 WL 2603937 (E.D. Mich. Mar. 22, 2023) ........ 6

*Peckerar v. Gen. Motors, LLC*,
2020 WL 5289919 (C.D. Cal. May 27, 2020) ........ 5, 7

*Pub. Int. Legal Found. v. Sec'y Commonwealth of Pa.*,
136 F.4th 456 (3d Cir. 2025) ....................................................................................3

*Solak v. Ford Motor Co.*,
683 F. Supp. 3d 658 (E.D. Mich. 2023)........................................................................6

*Spokeo, Inc. v. Robins*,
578 U.S. 330 (2016)...............................................................................................4, 5

*Sugasawara v. Ford Motor Co.*,
2019 WL 3945105 (N.D. Cal. Aug. 21, 2019) ..........................................................5, 10

*TransUnion LLC v. Ramirez*,
594 U.S. 413 (2021)....................................................................................................4

*Ward-Richardson v. FCA US LLC*,
690 F. Supp. 3d 1372 (N.D. Ga. 2023) .........................................................................6

**Other Authorities**

Fed. R. Civ. P. 72(b)(3)...................................................................................................3

## INTRODUCTION

Igloo Products Corp. (“Igloo”) objects to one aspect of the Magistrate Judge’s Report and Recommendation (the “R&R”): the recommendation that the four physically uninjured Plaintiffs, Zannettino, Trainor, Castellano, and Riffle (“Plaintiffs”), have Article III standing to assert an overpayment injury. That recommendation rests on a clear error of law and should not be adopted.

This case involves an Igloo-brand cooler known as the Flip & Tow 90 Qt. Cooler (the “90 Qt. Cooler”). Igloo recalled certain of the 90 Qt. Coolers in February 2025 due to a remote risk of finger pinching at the tow handle, and it provided a free replacement handle to consumers that eliminates this potential risk (the “Replacement Handle”). Plaintiffs do not challenge the efficacy of the Replacement Handle. As such, based on the facts as pled, Igloo has provided consumers with the precise product for which they paid: a 90 Qt. Cooler that is safe to use and free of any potential defects. Despite this, Plaintiffs allege that they overpaid for their 90 Qt. Coolers because they chose not to obtain the free Replacement Handle and instead decided to leave the curable safety hazard in place. Based on this decision, Plaintiffs reason that their 90 Qt. Coolers still contain a defect that allows them to claim an overpayment injury.

In its Motion to Dismiss, Igloo argued that Plaintiffs did not suffer a cognizable injury because it had offered to repair the precise hazard that informed their claims of overpayment. The Magistrate Judge did not conclude otherwise on the facts. On the contrary, she expressly acknowledged that Plaintiffs “offered no factual allegations to plausibly suggest that the replacement tow handles are somehow inadequate.” R&R at 13. Nonetheless, citing *Adam v. Barone*, 41 F.4th 230 (3d Cir. 2022), the Magistrate Judge recommended that Plaintiffs could still claim an overpayment injury because they chose to reject the free Replacement Handle—an act that, according to the Magistrate Juge’s interpretation of *Adam*, obliged her to treat the situation

"as if no offer had ever been made." *Id.* at 7, 13.

That reading misapplies *Adam*, which only contemplated that the plaintiff could reject the defendant's offer because it did not provide her with the free products she was originally promised. Instead, the defendant had offered her something different—a refund of the money the defendant wrongfully forced her to pay for the products, conditioned on her return of the products. Because the plaintiff had not accepted the defendant's alternative offer, which effectively vitiated its original offer of free products, the plaintiff was free to reject it. That is not the case here. Igloo did not offer Plaintiffs a free 90 Qt. Cooler, subsequently charge Plaintiffs for said cooler, and then offer to refund Plaintiffs their money conditioned on the return of the cooler. Nor did Igloo simply offer to refund Plaintiffs the cost of their 90 Qt. Coolers in exchange for the return of the product. Rather, Igloo offered a free Replacement Handle that eliminates any potential safety hazard in the product. That provides Plaintiff with the exact thing they were promised and the exact thing for which they paid: a safe and non-defective product. Under Supreme Court precedent in *Clapper v. Amnesty Int'l USA*, Plaintiffs cannot manufacture standing by voluntarily inflicting themselves with the precise harm that underlies their claims of overpayment. *See* 568 U.S. 398, 416 (2013).

The Magistrate Judge did not acknowledge the material distinction between this case and *Adam*. Nor did she address *Clapper* or the multiple district courts that have relied on *Clapper's* principles to hold that a plaintiff cannot manufacture standing by rejecting an unchallenged recall remedy. When considering the material distinctions between this case and *Adam*—a distinction that *Adam* itself expressly acknowledged and discussed—it is clear that *Adam* does not apply. And when considering *Clapper's* principles, it is clear that Plaintiffs may not manufacture standing by rejecting Igloo's Replacement Handle. Accordingly, under the applicable *de novo* standard, the Court should find that Plaintiffs do not have standing under Article III.

## LEGAL STANDARD

When a party timely files specific objections to a magistrate judge's report and recommendation on a dispositive motion, the district court owes the recommendation no deference. *See generally EEOC v. City of Long Branch*, 866 F.3d 93, 99 (3d Cir. 2017). It "must 'make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made.'" *Id.* (quoting 28 U.S.C. § 636(b)(1)(C); *see also* Fed. R. Civ. P. 72(b)(3). This Court applies that standard as a matter of course. *See, e.g.*, *Immersion, Inc. v. Apple*, Inc. 819 F. Supp. 3d 338, 342 (D. Del. 2026).

A second independent principle also requires *de novo* review: Igloo's objection pertains to Plaintiffs' Article III standing and turns on a pure question of law: whether the Court must consider Igloo's Replacement Handle in assessing if Plaintiffs have suffered an injury-in-fact. *Pub. Int. Legal Found. v. Sec'y Commonwealth of Pa.*, 136 F.4th 456, 461 (3d Cir. 2025) ("Questions of law underlying a standing determination are reviewed *de novo*."). Accordingly, for this additional reason, the Court must undertake a fresh and independent review of the standing question.

## ARGUMENT

### I. <u>Igloo's Replacement Handle and Plaintiffs' Alleged Injury</u>

Igloo sells a cooler known as the Flip & Tow 90 Quart Rolling Cooler, which contains a unique type of flip-up tow handle (the "90 Qt. Coolers"). D.I. 58 ("CAC") at ¶¶ 3, 37. On February 13, 2025, after receiving only twelve consumer complaints of fingertip injuries associated with the tow handle, Igloo conducted an expansive recall of over one million 90 Qt. Coolers (the "Recall"). *Id.* at ¶¶ 5-6. As set forth in the Recall notice published by the Consumer Product Safety Commission ("CPSC"), the Recall was conducted due to the risk that the tow handle "can pinch consumers' fingertips against the cooler." *Id.* at ¶ 4.

To eliminate the risk of pinching, Igloo offered all consumers a free replacement handle that increases the "space near the hinge" and provides "enhanced plastic ribbing" (the "Replacement Handle"). *Id.* at ¶¶ 11, 51. Plaintiffs do not claim that the Replacement Handle fails to eliminate the safety risk identified in the Recall notice. Nor do they claim that any risk of pinching remains once the Replacement Handle is installed. On the contrary, Plaintiffs openly concede that they have no basis for challenging the efficacy of the Replacement Handle—claiming that it "*remains to be seen* whether the Replacement Handle Kit will fully remedy the defect." *Id.* at ¶ 12 (emphasis added); *see also id*. at ¶ 53 (alleging same). The Magistrate Judge acknowledged this in the R&R, noting that Plaintiffs "offered no factual allegations to plausibly suggest that the replacement tow handles are somehow inadequate." R&R at 13.

Notwithstanding the efficacy of the Replacement Handle, Plaintiffs filed this putative class action claiming that they suffered an economic loss from the purchase of their coolers "in the form of overpayment and diminution in value." CAC at ¶ 48. Outside of this alleged overpayment, Plaintiffs do not identify any economic loss attributed to their coolers. *Id*. at ¶¶ 59-100.

## II. <u>Nationwide Authority Rejecting Standing in Substantially Similar Circumstances</u>

Article III demands that a plaintiff "have a 'personal stake' in the case—in other words, standing." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021). Standing consists of three elements: "[t]he plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016). "[F]irst and foremost' of standing's three elements" is the injury in fact requirement. *Id.* If "the plaintiff does not claim to have suffered an injury that the defendant caused and the court can remedy, there is no case or controversy for the federal court to resolve." *TransUnion*, 594 U.S. at 423. To establish an injury in fact, a plaintiff must show that the injury is (a) concrete and particularized, and (b) actual or imminent, not

conjectural or hypothetical. *Spokeo*, 578 U.S. at 339. Moreover, "[t]hat a suit may be a class action ... adds nothing to the question of standing, for even named plaintiffs who represent a class 'must allege and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong.'" *Id.* at 338 n.6.

Applying these well-settled and universal Article III principles, courts across the country—including in the Third Circuit—have repeatedly held that a plaintiff does not have standing to assert an overpayment injury arising from an alleged product defect where the defendant has provided a remedy that eliminates the alleged defect. Most recently, in *Avalos v. Sig Sauer, Inc.* (issued after briefing was complete in this case but before the R&R was issued), the court concluded that the plaintiff could not establish standing in this scenario because "[w]hen defective products are fixed pursuant to a recall and 'perform as they would without the Defect, then it follows that the [product's] pre-defect values have likewise been restored.'" 2026 WL 1431203, at *4 (E.D. Pa. May 21, 2026). Accordingly, "'the plaintiff would have received her benefit of the bargain' through the recall repair." *Id.* While the plaintiff failed to participate in the recall or avail himself of the defendant's remedy, the court held that was not sufficient to bestow standing because the plaintiff's decision meant "the defect is no longer fairly traceable to the manufacturer of the defective product, but to the individual who failed to participate in the recall." *Id.* at *5.

Many other cases around the country—some of which *Avalos* cited to and relied upon—are squarely consistent with this holding, concluding that "as a matter of common sense … the economic loss injury based on [a product's] decreased value no longer exists if [the] [d]efendant has, through the recall, offered to remove the complained-of defect free of charge." *Peckerar v. Gen. Motors, LLC*, 2020 WL 5289919, at *2 (C.D. Cal. May 27, 2020); *see also Sugasawara v. Ford Motor Co.*, 2019 WL 3945105, at *6 (N.D. Cal. Aug. 21, 2019) ("If the post-recall remedy

Vehicles perform as they would without the Defect, then it follows that the Vehicles' pre-defect values have likewise been restored."); *Hadley v. Chrysler Grp., LLC*, 624 F. App'x 374, 378 (6th Cir. 2015) ("[T]he repair of the ORC Module that the plaintiffs received removed the defect upon which the plaintiffs' diminished-value injury claim is based."); *Pacheco v. Ford Motor Co.*, 2023 WL 2603937, at *5 (E.D. Mich. Mar. 22, 2023) ("[T]he recall, which remedies the Spontaneous Fire Risk defect, moots Plaintiffs' overpayment claim because it 'remove[s] the defect upon which the plaintiffs' diminished-value injury claim is based.'"); *Letson v. Ford Motor Co.*, 2024 WL 845844, at *3 (E.D. Mich. Feb. 28, 2024) ("But Ford's recall measures would remediate the very same 'defect upon which' the 'diminished-value injury claims are based,' thereby restoring their vehicle's values and eliminating plaintiffs' overpayment injuries."), *vacated on other grounds*.[1]

Each of the aforementioned cases warrant the same universal conclusion: that Plaintiffs fail to allege they have "suffered an economic injury fairly traceable to [Igloo] because [Igloo] has offered a recall that appears to fully repair the alleged defect and the Complaint fails to allege that the recall was insufficient to fully repair the Product." *Avalos*, 2026 WL 1431203 at *6.

## III. <u>Igloo's Motion to Dismiss and the Magistrate Judge's Decision</u>

With the exception of *Avalos*, which was decided after the Motion to Dismiss was fully briefed but before the R&R was issued, Igloo cited each of the cases identified above in its Motion to Dismiss and argued that the "Recall has restored any alleged loss in the Coolers' value and has thereby eliminated the alleged overpayment injury that forms the basis for the Uninjured Plaintiffs' professed economic harm." D.I. 63 at 10. Igloo also noted that Plaintiffs' decision to reject the

[1] *See also Solak v. Ford Motor Co.*, 683 F. Supp. 3d 658, 664 (E.D. Mich. 2023) (rejecting overpayment claims because "Ford's recall measures would remediate the very same 'defect upon which' the 'diminished-value injury claim[s] [are] based'"); *Ward-Richardson v. FCA US LLC*, 690 F. Supp. 3d 1372, 1379 (N.D. Ga. 2023) (same); *Comes v. Harbor Freight Tools USA, Inc.*, 2021 WL 6618816, at *5 (same); *Kommer v. Ford Motor Co*., 2017 WL 3251598, at *5 (N.D.N.Y. July 28, 2017) (same).

Replacement Handle could not bestow them with standing because "a plaintiff 'cannot manufacture standing merely by inflicting harm on themselves based on their fears of hypothetical future harm that is not certainly impending.'" *Id*. (quoting *Clapper*, 568 U.S. at 416); *see also* D.I. 77 at 4 (Reply in Support of Motion to Dismiss or the "Reply") (arguing that "the great weight of authority" provides "that a plaintiff cannot 'manufacture standing' by refusing to avail himself of a repair that eliminates a product defect," and citing cases).

In the R&R, the Magistrate Judge acknowledged only *Hadley* and *Peckerar* but then held that Third Circuit precedent warranted a different outcome. In particular, based on a single sentence in *Adam*, the Magistrate Judge concluded that "Plaintiffs' rejection of Igloo's offer 'leaves the matter as if no offer had ever been made.'" R&R at 7 (quoting *Adam*, 41 F. 4th at 235). Accordingly, the Magistrate Judge did "not consider Igloo's offer to replace the tow handles in determining whether the physically uninjured Plaintiffs suffered an injury-in-fact." *Id.* By virtue of this decision, which meant that Plaintiffs' 90 Qt. Coolers still contained an alleged defect that precluded their use, the Magistrate Judge found that Plaintiffs' 90 Qt. Coolers were "not worth the full price purchasers paid." *Id*. at 8 (citing *Huertas v. Bayer US LLC*, 120 F.4th 1169, 1175 (3d Cir. 2024)).[2] In reaching this decision, the Magistrate Judge did not cite to any decisions—either within this Circuit or elsewhere—that have allowed a plaintiff to manufacture standing by choosing to reject a recall remedy that eliminated a product defect which formed the basis for an alleged overpayment injury. Nor did she address *Clapper's* mandate that a plaintiff "cannot

[2] *Huertas* stands for the unremarkable proposition that "if a product contains a manufacturing flaw so severe that it cannot be used, it is not worth the full price purchasers paid with the understanding they would be able to use all of the product." *Id*. As *Huertas* noted, it is a simple matter of "logic," that an "unusable product is [not] worth the same as a usable one." *Id*. That is not the case here. The Replacement Handle eliminates any flaw in the product and enables Plaintiffs to use the product safely and as intended. This eliminates the overpayment injury that was present in *Huertas*.

manufacture standing merely by inflicting harm on themselves based on their fears of hypothetical future harm that is not certainly impending." 568 U.S. at 416.

## IV. <u>The Magistrate Judge's Misapplication of *Adam*</u>

The Magistrate Judge misapplied *Adam* because the principle of law that she cited and relied upon from *Adam* has no application to the circumstances at hand. In *Adam*, the defendant had promised the plaintiff free beauty products but then charged her for the products. 41 F.4th at 232. Rather than make the plaintiff whole by refunding her what she was charged and allowing her to keep the products, the defendant only agreed to refund her if and when she returned the products. *Id.* That was not the offer the defendant had originally made and that the plaintiff had accepted. In fact, this "alternative" offer entirely vitiated its original offer of free beauty products, and the plaintiff chose not to accept it. *Id.* at 234-35. As such, she "ha[d] not been made whole" by the defendant's offer. *Id*. That meant she was free the reject the offer and thereby "leave the matter as if no offer had ever been made.'" *Id.* at 235 (quoting *Campbell-Ewald Co. v. Gomez*, 577 U.S. 153, 162 (2016) (addressing a plaintiff's right to reject a Rule 68 offer of judgment).

In reaching this conclusion, *Adam* distinguished itself from *Hayes v. Wal-Mart Stores, Inc.*, 725 F.3d 349 (3d Cir. 2013), a Third Circuit case finding that the plaintiff's acceptance of defendant's offer to provide him with a new remote had mooted his claim that he suffered a financial harm associated with his purchase of a warranty for the remote. *Adam*, 41 F.4th at 234. The *Adam* court explained that this was different from the circumstances before it because the plaintiff in *Hayes* "received exactly what he was entitled to—a new television remote control as promised by the warranty he purchased.'" *Id.* at n. 3. Importantly, in raising this distinction, *Adam* also noted that "even had Hayes not accepted the new remote, the warranty context may be distinguishable from the case before us: whether someone is injured when they refuse the other

party's performance under a contract may be a *wholly different question* than whether somebody remains injured after being offered, but refusing, compensation for alleged wrongdoing." *Id.* (emphasis added). Ultimately, *Adam* declined to resolve this inapposite scenario.

The circumstances at hand are comparable to those in this later unresolved scenario, which is "a wholly different question" from the one at issue in *Adam*. *Id.* Under *Adam*, if a defendant offers to provide compensation for its alleged wrongdoing—an offer that necessarily deviates from its original promise—the plaintiff is free to reject that alternative offer. Thus, if Igloo had offered to compensate Plaintiffs for the alleged defect, Plaintiffs would be free to reject that offer and leave it as if no offer had been made.[3] But that is not what has transpired. Instead, Igloo has offered to provide Plaintiffs with precisely what they were promised—a cooler that is functional and safe to use. This is not an "alternative" offer as in *Adam*: it is the exact same offer it originally made. It is also the exact same offer Plaintiffs already accepted in purchasing and paying for their coolers. In other words, Igloo's offer does indeed make Plaintiffs whole. Thus, the principle espoused in *Adam* has no application to the present circumstances. Rather, the circumstances here are just like those that *Adam* expressly distinguished and declined to address: whether someone is injured when they refuse the other party's performance under a contract.

In these circumstances—ones that were not present in *Adam*—the Magistrate Judge's

---

[3] This is similar to the scenario that transpired in the district court's decision in *Huertas v. Bayer U.S., LLC*, 2022 WL 3572818 (D.N.J. Aug. 19, 2022), which the Magistrate Judge also relied upon. *See* R&R at 7. There, the plaintiffs sought recovery associated with their purchase of benzene-laced anti-fungal drugs. Although the defendant had offered consumers a refund as compensation for the defect, which was conditioned on the consumer providing proof of purchase and a picture of the product, the court reasoned that the plaintiffs could permissibly reject the defendant's "offer of a refund." *Id.* Here, by contrast, Igloo has not offered a refund. Rather, as in the numerous cases cited above, it has offered to provide a remedy that eliminates the alleged defect and provides Plaintiffs with exactly what they were promised—a functional and safe rolling cooler. The defendant in *Huertas* did not offer the plaintiffs a safe and functional anti-fungal drug.

standing decision conflicts with governing Supreme Court law. As set forth in *Clapper*, a plaintiff "cannot manufacture standing merely by inflicting harm on themselves based on their fears of hypothetical future harm that is not certainly impending." 568 U.S. at 416. Multiple district courts have applied this principle to hold that a plaintiff cannot "manufacture standing" by refusing to avail himself of a repair that eliminates a product defect. *Sugasawara,* 2019 WL 3945105, at *6; *see also Comes*, 2021 WL 6618816, at *5 (any injury in not obtaining the repair is due 'to [plaintiff's] own choice not to pursue the recall remedy'"); *Graham v. American Honda Motor Co., Inc.*, 2025 WL 2576748, at *11 (N.D. Ill. Sept. 4, 2025) ("'[W]hen consumers choose not to avail themselves of an adequate repair or replacement remedy, their economic injury… [is due] to the consumer's choice.'")). As the court articulated in *Avalos*, when a plaintiff chooses not to avail himself of a recall remedy that eliminates the alleged defect, "the defect is no longer fairly traceable to the manufacturer of the defective product, but to the individual who failed to participate in the recall." 2026 WL 1431203, at *5.

Despite the fact that Igloo cited *Clapper* and made this precise argument in both its Motion to Dismiss and Reply, it does not appear that the Magistrate Judge considered *Clapper* or whether it foreclosed the outcome she reached. Nor does it appear that she considered the factual scenario in *Adam* or the material distinction that *Adam* itself drew between the facts of the case before it and the fact of this case—where Igloo's offer makes Plaintiffs whole because it provides them with the precise thing they already accepted. Either of these omissions demonstrate that the Magistrate Judge erred in her conclusion. Taken together, it is clear that Plaintiffs *cannot* manufacture standing by choosing to reject the Replacement Handle and then acting "as if no offer had ever been made." *See* R&R at 7. *De novo* review therefore compels that the Court rejects the Magistrate Judge's recommendation on the issue of Plaintiffs' Article III standing.

Respectfully submitted,

**COZEN O'CONNOR**

*/s/ Hugh J. Marbury*

Kaan Ekiner (#5607)
Hugh J. Marbury (#7427)
1201 North Market St., Ste. 1001
Wilmington, DE 19802
(302) 295-2000
KEkiner@Cozen.com
HMarbury@Cozen.com

Erica Rutner (*Pro Hac Vice*)
Michael Puretz (*Pro Hac Vice*)
501 E. Las Olas Blvd. Ste. 300
Fort Lauderdale, FL 33301
(561) 750-3850
ERutner@Cozen.com
MPuretz@Cozen.com

John A. Bertino (*Pro Hac Vice*)
2001 M Street NW, Ste. 500
Washington, D.C. 20036
(202) 912-4800
JBertino@Cozen.com

*Attorneys for Defendant*
*Igloo Products Corp.*

Dated: October 7, 2026